## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KELVIN GRADDY, an individual, KAVELLE FIELDS, an individual, 4K COIN, LLC, a Georgia limited liability company, KVG INVESTMENTS LLC, a Utah limited liability company, and THE KD9 GROUP, LLC, a Georgia limited liability company, | ) ) ) ) ) ) ) ) | **CIVIL ACTION FILE NO.:** _____ |
| **Plaintiffs,** | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| CARNEGIE ACADEMY, LLC, d/b/a PROSOURCE TAX LIENS a/d/b/a TAX LIEN TOUR, a Utah limited liability company, SPROUT CF FUND, INC., a Utah corporation, SPROUT IRA, LLC, a Utah limited liability company, SPROUT FINANCIAL, LLC, d/b/a SPROUT ADVISORS a/d/b/a SPROUT ADVISERS, a/d/b/a SPROUT IRA, a Utah limited liability company, SPROUT INVESTMENT PARTNERS, LLC, a Utah limited liability company, SPROUT RESIDENTIAL FUND, LLC, a Utah limited liability company, SEED CONSULTING, LLC d/b/a SEED CAPITAL CORP., a Nevada limited liability company, JOSHUA CARR, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, EDWARD STEWART, individually and in his capacity as an | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

owner/member/executive/alter ego of REI )
HOLDINGS, LLC, and REI HOLDINGS, )
LLC, a Utah limited liability company, )
SLICKROCK, LLC, a Nevada limited )
liability company, SILVERSTRAND, LLC, )
d/b/a SAVILE CUSTOM CLOTHIERS, )
a/d/b/a SAVILE ROW, a/d/b/a SAVILE )
TAILORS, a Utah limited liability )
company, TONYA NEFF, individually and )
in her capacity as an )
owner/member/executive/alter ego of NEFF )
COMPANIES, INC., a Utah corporation, )
ZULU MARKETING d/b/a TAX LIEN )
BUYERS CLUB a/d/b/a TAX LIEN )
VAULT a/d/b/a MELTDOWN )
MILLIONAIRE a/d/b/a TAX LIEN )
OFFICE, a Utah limited liability company, )
SUPERSTAR LLC, d/b/a SUPERSTAR )
INC., a/d/b/a SUPERSTAR LLC, a Utah )
limited liability company, MAN MADE )
LLC, d/b/a NINES CLOTHING a/d/b/a )
CANVAS CLOTHING a/d/b/a CANVAS )
CLOTHIERS, a Utah limited liability )
company, and KEYSTONE )
INVESTMENT GROUP, LLC, a Georgia )
limited liability company, )
                                                )
        Defendants.                    )
_____ )

## <u>VERIFIED COMPLAINT</u>

COMES NOW, Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG

Investments LLC, and The KD9 Group LLC, (collectively the "Plaintiffs") by and

through its undersigned counsel, bring this Verified Complaint against defendants

Carnegie Academy LLC d/b/a ProSource Tax Liens, a/d/b/a, Tax Lien Tour, Sprout CF Fund Inc., Sprout IRA, LLC, Sprout Financial, LLC, d/b/a Sprout Advisors, a/d/b/a Sprout Advisers, a/d/b/a Sprout IRA, Sprout Investment Partners, LLC, Sprout Residential Fund, LLC, Seed Consulting LLC, d/b/a Seed Capital Corp., REI Holdings, LLC, d/b/a REI Holdings, f/k/a Neff Companies, LLC, Neff Companies Inc., Slickrock LLC, Silverstand, LLC, d/b/a Savile Custom Clothiers, a/d/b/a Savile Row, a/d/b/a Savile Tailors, Zulu Marketing, LLC, d/b/a Tax Lien Buyers Club, a/d/b/a Tax Lien Vault, a/d/b/a Meltdown Millionaire, a/d/b/a Tax Lien Office, Superstar LLC d/b/a Superstar Inc., a/d/b/a Superstar LLC, Man Made LLC, d/b/a Nines Clothing, a/d/b/a Canvas Clothing, a/d/b/a Canvas Clothiers, Keystone Investment Group, LLC, Joshua Carr, Edward Stewart, and Tonya Neff, alleges, upon personal knowledge as to its own actions, and upon information and belief as to all other matters, complain and allege as follows:

## PARTIES

1.     Plaintiff Kelvin Graddy (hereinafter referred to as "**Mr. Graddy**"), is an adult resident of the State of Georgia and is domiciled in Gwinnett County, Georgia, within this District.

2.     Plaintiff Kavelle Fields (hereinafter referred to as "**Ms. Fields**"), is an adult resident of the State of Georgia and is domiciled in Gwinnett County, Georgia, within this District.

3.     Plaintiff 4K Coin, LLC, (hereinafter referred to as "**4K**"), is a limited liability company formed under the laws of the State of Georgia.

4.     Plaintiff KVG Investments LLC, (hereinafter referred to as "**KVG**") is a limited liability company formed under the laws of the State of Utah.

5.     Plaintiff The KD9 Group LLC, (hereinafter referred to as "**KD9**") is a limited liability company formed under the laws of the State of Georgia.

6.     Defendant Carnegie Academy, LLC d/b/a ProSource Tax Liens, d/b/a Tax Lien Tour (hereinafter referred to as "**ProSource**"), is a Utah limited liability company that was administratively dissolved and whose principal office address is 881 West Traverse Parkway, Suite E 245, Lehi, Utah 84043. ProSource may be served through its registered agent in the State of Utah, NCS Partners, LLC, at 1881 West Traverse Parkway, Suite E 245, Lehi, Utah 84043. ProSource, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

7.     Defendant Sprout CF Fund, Inc. (hereinafter referred to as "**CF Fund**"), is a Utah for-profit corporation whose principal office address is 2912 West

Executive Parkway, Suite 120, Lehi, Utah 84043. CF Fund may be served through its registered agent in the State of Utah, Shumway Van LLC, at 8 East Broadway Street #550, Salt Lake City, Utah 84111. CF Fund, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

8.     Defendant Sprout IRA, LLC (hereinafter referred to as "**Sprout IRA**"), is a Utah limited liability company whose principal office address is 2912 Executive Parkway, Suite 120, Lehi, Utah 84043. Sprout IRA may be served through its registered agent in the State of Utah, Sprout RA Services, LLC, at 2912 Executive Parkway, Suite 120, Lehi, Utah 84043. Sprout IRA, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

9.     Defendant Sprout Financial, LLC, d/b/a Sprout Advisors, d/b/a Sprout Advisers, d/b/a Sprout IRA (hereinafter "**Sprout Financial**"), is a Utah limited liability company whose principal office address is 2912 Executive Parkway, Suite 120, Lehi, Utah 84043. Sprout Financial may be served through its registered agent in the State of Utah, Sprout RA Services, LLC, at 2912 Executive Parkway, Suite 120, Lehi, Utah 84043. Sprout Financial, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

10.     Defendant Sprout Investment Partners, LLC, (hereinafter "**Sprout Investment Partners**") is a Utah limited liability company whose principal office

address is 2912 Executive Parkway, Suite 120, Lehi, Utah 84043. Sprout Financial may be served through its registered agent in the State of Utah, Shumway Van LLC, at 8 East Broadway Street #550, Salt Lake City, Utah 84111. Sprout Investment Partners at all times material hereto, transacted substantial and continuous business in the State of Georgia.

11.     Defendant Sprout Residential Fund, LLC (hereinafter "**Sprout Residential**") is a Utah limited liability company whose principal office address is 2912 Executive Parkway, Suite 120, Lehi, Utah 84043. Sprout Financial may be served through its registered agent in the State of Utah, Shumway Van LLC, at 8 East Broadway Street #550, Salt Lake City, Utah 84111. Sprout Residential at all times material hereto, transacted substantial and continuous business in the State of Georgia.

12.     Defendant Seed Consulting LLC d/b/a Seed Capital Corp., (hereinafter referred to as "**Seed Capital**"), is a Nevada limited liability company whose principal office address is 1707 Village Center Circle, Suite 200-250, Las Vegas, Nevada 89134. Seed Capital may be served through its registered agent in the State of Nevada, Marquis Aurbach Coffing, at 10001 Park Run Drive, Las Vegas, Nevada 89145. Seed Capital, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

13.     Defendant REI Holdings, LLC d/b/a REI Holdings, f/k/a Neff Companies, LLC, (hereinafter "**REI**"), is a Utah limited liability company whose principal address is 2912 Executive Parkway, Suite 120, Lehi, Utah 84043. REI may be served through its registered agent in the State of Utah, Sprout RA Services, LLC, at 2912 Executive Parkway, Suite 120, Lehi, Utah 84043. REI, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

14.     Defendant Neff Companies Inc., (hereinafter "**Neff Inc.**") is a Utah for-profit corporation whose principal office address is 3291 Millville Street, South Jordan, Utah 84095. Neff Inc. may be served through its registered agent in the State of Utah, Sprout RA Services, LLC, at 2912 West Executive Parkway, Suite 120, Lehi, Utah 84043. Neff Inc. at all times material hereto, transacted substantial and continuous business in the State of Georgia.

15.     Defendant Joshua Carr is an executive/founder/owner/member for Defendants REI Holdings, LLC, Sprout Residential Fund LLC, Carnegie Academy LLC, and Zulu Marketing, LLC.  He may be served with a summons and a copy of the Complaint at 1155 W Park Meadows Drive, Mapleton, Utah 84664, or at his place of business located at 2912 Executive Parkway, Suite 120, Lehi, Utah 84043.

16.     Defendant Edward Stewart is an executive/founder/owner/member for Defendants Carnegie Academy, LLC, REI Holdings, LLC, Sprout Residential Fund,

LLC, Sprout Investment Partners, LLC, and Zulu Marketing. He may be served with a summons and copy of the Complaint at 2349 Commerce Street, Alpharetta, Georgia 30009, or at his place of business located at 2912 Executive Parkway, Suite 120, Lehi, Utah 84043.

17.    Defendant Tonya Neff is an executive/founder/owner/member for Sprout Investment Partners, LLC, Sprout Residential Fund, LLC, Sprout CF Fund, LLC. She may be served with a summons and copy of the Complaint at 3291 W Millville Street, South Jordan, Utah 84095, or at her place of business located at 2912 Executive Parkway, Suite 120, Lehi, Utah 84043.

18.    Defendant Slickrock LLC (hereinafter "**Slickrock**") is a Nevada limited liability company that was administratively dissolved and whose principal address is 2831 St. Rose Parkway, Suite 200, Henderson, Nevada 89052. Slickrock may be served through its registered agent in the State of Nevada, Registered Agents Inc., at 401 Ryland Street, Suite 200-A, Reno, Nevada 89502. Slickrock, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

19.    Defendant Silverstrand, LLC d/b/a Savile Custom Clothiers, d/b/a Savile Row, and d/b/a Savile Tailors (hereinafter "**Silverstrand**"), is a Utah limited liability company whose principal address is 1180 South 400 East Salt Lake City,

Utah 84111. Silverstrand may be served through its registered agent in the State of Utah, Edward Stewart, at 1180 South 400 East, Salt Lake City, Utah 84111. Silverstrand, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

20.     Defendant Zulu Marketing, LLC d/b/a Tax Lien Buyers Club, d/b/a Tax Lien Vault, d/b/a Meltdown Millionaire, and d/b/a Tax Lien Office (hereinafter "**Zulu**"), is a Utah limited liability company whose principal address is 654 North 800 East, Suite 322, Spanish Fork, Utah 84660. Zulu may be served through its registered agent in the State of Utah, Silverstrand, LLC, at 1180 South 400 East, Salt Lake City, Utah 84111. Zulu, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

21.     Defendant Superstar LLC d/b/a Superstar Inc., d/b/a Superstar LLC d/b/a (hereinafter "**Superstar**"), is a Utah limited liability company whose principal address is 1155 W Park Meadows Drive, Mapleton, Utah 84664. Superstar may be served through its registered agent in the State of Utah, Josh Carr, at 1155 Park Meadows Drive, Mapleton, Utah 84664. Superstar, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

22.     Defendant Man Made LLC d/b/a Nines Clothing, d/b/a Canvas Clothing d/b/a Canvas Clothiers (hereinafter "**Man Made**"), is a Utah limited

liability company that was administratively dissolved and whose principal office address is 1180 S 400 E Salt Lake City, Utah 84111. Man Made may be served through its registered agent in the State of Utah, Silverstrand, LLC, at 1180 S 400 E Salt Lake City, Utah 84111. Man Made, at all times material hereto, transacted substantial and continuous business in the State of Georgia.

23.    Defendant Keystone Investment Group, LLC (hereinafter "**Keystone**") is a domestic limited liability company registered under and subject to the laws of the state of Georgia. Defendant Keystone has its principal office and otherwise conducts business in Fulton County, Georgia. Defendant Keystone can be served with process through its Registered Agent, Edward Stewart, at 2349 Commerce Street, Alpharetta, Georgia 30009.

24.    At all times alleged herein, the above-named Defendants include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives, and any and all other persons acting on their behalf.

25.    All at times herein mentioned, each of the above-mentioned Defendants were the agents, servants, partners, predecessors in interest, and joint venturers of

each other, and were at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, joint enterprise, and/or joint venture.

## JURISDICTION

26.    This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331, as the claims asserted herein arise, *inter alia*, under and pursuant to 18 U.S.C. 1961, *et seq*; and 28 U.S.C. § 1367, which provides jurisdiction for Plaintiffs' supplemental state law claims.

27.    This action also contains counts originating in the common law of the State of Georgia concerning fraud and from the Defendants' violations of the Georgia Fair Business Practices Act (hereinafter "GFBPA") O.C.G.A. § 10-1-390 et seq.

28.    Personal jurisdiction comports with due process under the United States Constitution, the long-arm statute of Georgia, O.C.G.A. § 9-10-91, and the provisions of 18 U.S.C. § 1965(b) and (d).

29.    Without limiting the generality of the foregoing, each Defendant (directly or though agents who were at the time acting with actual and/or apparent authority and within the scope of such authority) has:

> (a) transacted business in Georgia;

> (b) contracted to supply products and services in Georgia;

(c) availed themselves intentionally of the benefits of doing business in Georgia;

(d) promoted, sold, marketed, and or/distributed their products and/or services in Georgia and, thereby, have purposefully profited from their access to markets in Georgia;

(e) caused tortious damage by act or omission in Georgia;

(f) caused tortious damage in Georgia by acts or omissions committed outside such jurisdiction while (i) regularly doing business or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(g) committed acts and omissions that Defendants knew or should have known would cause damage (and, in fact, did cause damage) in Georgia to Plaintiffs and Georgia consumers while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction, and/or (iii) deriving such substantial revenue from goods used or consumed or services rendered in such jurisdiction;

(h) engaged in a conspiracy with others doing business in Georgia that caused tortious damage in Georgia; and/or

(i) otherwise had the requisite minimum contacts with Georgia such that, under the circumstances, it is fair and reasonable to require Defendants to come to Court to defend this action.

## VENUE

30.     Venue is proper under 28 U.S.C. § 1391(b)(2), because, *inter alia*, a substantial part of the events or acts giving rise to the causes of action alleged in this Complaint arose in, among other places, this District, and the harmful effects of Defendants fraud and wrongful conspiracy were felt in, amount other places, this District. In addition, venue is proper under 18 U.S.C. § 1965 because all Plaintiffs reside in this District.

## FACTUAL BACKGROUND

31.     In early January of 2019, Mr. Graddy first learned of a tax lien presentation opportunity when he heard Carnegie's radio advertisement playing on either V-103.3 or V 107.5.

32.     The radio advertisement invited listeners interested in making active and passive income each month by flipping real estate tax liens to call the provided number.

33.     The advertisement provided that Carnegie had over one-hundred years of experience, and that Carnegie would teach listeners how to flip tax liens.

34.     Mr. Graddy called the number provided in the advertisement and signed up for an upcoming seminar on January 29, 2019.

35.     On January 29, 2019, Mr. Graddy and Ms. Fields attended the free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") for $597.00. This agreement was memorialized in a "Carnegie Prosource Tax Lien Program" order form. A true and correct copy of the order form is attached hereto and incorporated herein by this reference as Exhibit "A".

36.     On or about January 29, 2019, Mr. Graddy filled out a Sprout IRA questionnaire entitled "LLC Entity Setup Questionnaire" and a Self-Directed IRA setup form entitled "Self Directed IRA Setup Summary." A true and correct copy of the questionnaire and setup form are attached hereto and incorporated herein by this reference as Exhibit "B" and "C" respectively.

37.     On January 29, 2019, Mr. Graddy signed an agreement with Defendant Sprout IRA in which Sprout IRA agreed to create and register KVG Investments, LLC (the "IRA Agreement") in exchange for $949.10. KVG Investments, LLC was created as a self-directed IRA retirement account and to purchase tax lines. This

agreement was memorialized in a Sprout "IRA Setup Agreement" form. A true and correct copy of the form is attached hereto and incorporated herein by this reference as Exhibit "D".

38.    Between January 29, 2019 and February 6, 2019, Sprout IRA created the limited liability company KVG Investments, LLC on behalf of Mr. Graddy in the State of Utah. A true and correct copy of the Certificate of Organization is attached hereto and incorporated herein by this reference as Exhibit "E".

39.    Between January 29, 2019 and February 8, 2019, Mr. Graddy received an Admission Certificate for the Workshop. A true and correct copy of the Admission Certificate is attached hereto and incorporated herein by this reference as Exhibit "F".

40.    On February 8, 2019 through February 10, 2019, Mr. Graddy and Ms. Fields attended the Workshop provided by ProSource at the Atlanta Marriot Perimeter Center, 246 Perimeter Center Parkway Northeast, Atlanta, GA 30346.

41.    During the Workshop, ProSource speakers and representatives provided some tax lien education and then switched into its deceptive upsell practices, misrepresenting its products and services, by making it seem to attendees and Mr. Graddy and Ms. Fields that they were missing out on massive financial

opportunities unless they took advantage of its offers of additional training, products, and services.

42.     ProSource speakers and representatives made deceptive and misrepresentative statements to the Workshop attendees, claiming that ProSource would help them "make more money than they borrowed."

43.     ProSource provided recordings of the three-day seminar to Mr. Graddy and Ms. Fields through an emailed weblink, which has since been removed and is no longer available for viewing.

44.     ProSource representatives at the Workshop offered Mr. Graddy and Ms. Fields an opportunity to purchase one of its packages for additional training, products, and services. These representatives represented that ProSource would help them obtain a loan and/or financing with 0% interest for a year or longer that in effect would allow them to pay for the package and future tax liens to sell before any interest accrued.

45.     On February 10, 2019, Mr. Graddy and Ms. Fields, as business partners, agreed to purchase the Diamond Executive Package (hereinafter the "DEP") from ProSource for a sum of $39,994.00 and filled out the "Advanced Enrollment Form." A true and correct copy of the order form is attached hereto and incorporated herein by this reference as Exhibit "G".

46.     Mr. Graddy paid $30,000 dollars of the total purchase price, putting $15,000 on his personal VISA credit card and an additional $15,000 on his personal American Express credit card. The remaining balance of $9,994 was to be charged at a later date by Seed Capital.

47.     ProSource represented both orally and by the express written terms of the Advanced Enrollment Form that the DEP included the following:

i.      Six-Week Quick Start Webinar Course;

ii.     Three-Day Advanced Tax Lien Tour;

iii.    Two-Day Tax Lien Mastery Training;

iv.     Four-Day Real Estate Summit in San Diego; a Two-Day Wholesale Mastery Bootcamp;

v.      Two-Day Commercial, Cash Flow, and Multi-Unit Boot camp;

vi.     One-Day Asset Protection Bootcamp; Tax Lien and Real Estate Software: TaxLienClould.com and Property Edge Pro (1 year membership included);

vii.    On-Demand Online Tax Lien Training;

viii.   Turnkey Cash Flow Club Membership; and

ix.     Access to Tax Lien and Real Estate Hotline (2 years of live support).

48.     Following his purchase of the DEP and enrollment in the ProSource program, Mr. Graddy received a Commitment Guarantee Certificate. This certificate expressly provided that if after completing the online program, attending applicable workshops and training, following the recommendations of the ProSource instructors, Mr. Graddy had not completed one tax lien or tax deal, ProSource would continue to help Mr. Graddy until he earned "at least 100% of [his] investment in our program." A true and correct copy of the Commitment Guarantee Certificate is attached hereto and incorporated herein by this reference as Exhibit "H".

49.     Sometime between the conclusion of the three-day Workshop and February 13, 2019, Seed Capital Corp. Client Relations Manager Addison Doyon reached out to Mr. Graddy to assist him in financing his tax-lien training cost through Defendant Seed Capital's "innovative funding and credit building techniques" and to provide him with cash credit lines needed to launch his business.

50.     Addison Doyon told Mr. Graddy that these funding and credit building techniques were intended to help him achieve a distinct and sustainable competitive advantage and Seed Capitals service aimed to help him develop a "sound, scale-able business model" with "clear paths to revenue."

51.     Addison Doyon informed Graddy that in order to assist him with getting approved with various credit card companies to fund his training program and future

18

investments Seed Capital would need to see his credit report and to begin the process Mr. Graddy would need to sign up with Credit Nav.

52.    Addison Doyon provided Mr. Graddy with a special link to www.creditnav.com and Mr. Graddy provided the necessary information for new credit cards. After gaining access to Mr. Graddy's credit in Seed Capital began reaching out to credit card companies on behalf of Mr. Graddy.

53.    On February 14, 2019, Addison Doyon contacted Mr. Graddy via email and informed him that some of the card companies would need to speak with Mr. Graddy personally to verify his identity before they would approve the cards. In this email Mr. Graddy was instructed to "call the banks" and tell them that he "recently applied for a card" and that he "want[s] to check on the status." A true and correct copy of the email is attached hereto and incorporated herein by this reference as Exhibit "I".

54.    On February 14, 2019, Mr. Graddy contacted Addison Doyon via email to inform her that he had left her a voicemail regarding the calls he made to the following credit card companies: Bank of America Cash Reward, Barclay's Choice Rewards, and Chase Freedom Unlimited. A true and correct copy of the email is attached hereto and incorporated herein by this reference as Exhibit "J".

55.     On February 20, 2019, Addison Doyon emailed Mr. Graddy with an update on the Cash Credit Line Applications being worked on and a list of approved accounts and a confirmed line of credit totaling $65,700.  A true and correct copy of the email is attached hereto and incorporated herein by this reference as Exhibit "K".

56.     Addison Doyon stated that Mr. Graddy's approved accounts contained the following cards and effective rates:

    i.     Bank Truly Simple - $10,000 – 0% for 15 months on purchases and balance transfers;

    ii.    Bank of America Bank Americacard -$0 – 0% on purchases and balance transfers;

    iii.   Barclays Choice Rewards - $18,000 – 0% on purchases and balance transfers for 15 months;

    iv.    Citi Diamond Preferred - $8,600 – 0% for 18 months on balance transfers and purchases; and

    v.     Wells Fargo Propel Amex - $12,500 – 0% for 12 months on purchases and balance transfers.

57.     On February 22, 2019, Mr. Graddy was charged $2,997.00 by Seed Consulting, LLC, for its services in helping him obtain the aforementioned credit

cards. A true and correct copy of this transaction is attached hereto and incorporated herein by this reference as Exhibit "L".

58.     During March 15, 2019 and March 17, 2019, Mr. Graddy attended the first seminar in Orlando, Florida, where he met his assigned portfolio manager, Erin Bates.

59.     At the seminar, various speakers and presenters were present on behalf of Prosource including Eric Blackwell, an individual named and believed to be involved in a similar fraudulent real estate and tax lien scheme in Utah.[1]

60.     These speakers and presenters spoke briefly about investing in tax liens before switching and focusing on real estate investing and flipping houses.

61.     At the seminar, ProSource speakers and representatives made deceptive and misrepresentative statements by claiming that REI Holdings, LLC, had multiple "turn-key" properties available and displayed these properties in a series of binders. ProSource offered attendees additional training services to learn how to purchase these and many other properties to sell and flip for a profit. Attendees were not provided with their own individual copies of these binders and ProSource did not permit any attendee to keep any of the limited numbers of binders.

---

[1] *See Utah Div. of Consumer Prot. v. Stevens*, 398 F. Supp. 3d 1139 (D. Utah 2019).

62.     At the seminar, ProSource speakers and representatives made deceptive and misrepresentative statements about its Tax Lien Investing Program (hereinafter "TLIP"). ProSource offered the TLIP to attendees for an additional purchase price and depending on the specific purchase of the individual attendee was stated to include:

    i.    Jump to Action! Custom Investor Blueprint;

    ii.    Premier 1-on-1 Tax Lien Coaching (10 weeks/or sessions);

    iii.    Premier 1-on-1 Real Estate Coaching (14 weeks or/sessions);

    iv.    Assigned Senior Portfolio Advisor (Life Time Access)

    v.    Diamond Reserved Inventory (Life Time Access)

    vi.    Lifetime membership and access to Pro Source Tax Liens;

    vii.    Investment Tracking Software;

    viii.    Access to Client Success Team (Life Time Access)

    ix.    Access to Reserved Inventory (Life Time Access)

    x.    Reserved Spot at 4-Day Real Estate Summit;

    xi.    Reserved Spot at Tax Lien Buying Tour;

    xii.    [ _____ ] Tax Lien Portfolio Credit;

    xiii.    Inventory Manager (Life Time Access);

    xiv.    Asset Protection Bootcamp;

xv.        Advanced Wholesale Bootcamp; and

xvi.  Property Edge Pro Software.

63.     During March 2019, ProSource representatives also made sales pitches to provide additional services including the services of asset protection attorneys.

64.     On March 5, 2019, Silverstrand LLC charged Mr. Graddy $9,994.00 for the remaining balance owed for his purchase of the DEP. A true and correct copy of the email from support@taxlienoffice.com to Mr. Graddy showing the transaction information is attached hereto and incorporated herein by this reference as Exhibit "M".

65.     On March 15, 2019, Mr. Graddy and Ms. Fields agreed to purchase this additional training program for a total purchase price of $21,000 (hereinafter the "Enrollment Agreement). A true and correct copy of the Enrollment Agreement is attached hereto and incorporated herein by this reference as Exhibit "N".

66.     On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, agreeing to pay $2,244.84 for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC (hereinafter the "TLA"), relying upon representations made that if Plaintiff was not satisfied with the purchase of the tax liens, REI Holdings, LLC would buy the liens back at the full price paid.

67.     Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, acting as the authorized agent for REI Holdings, signed as the assignor. A true and correct copy of the Tax Lien Assignment Agreement is attached hereto and incorporated herein by this reference as Exhibit "O".

68.     In early April 2019, Mr. Graddy, acting under the training and information provided by ProSource, purchased multiple additional tax liens in Charlotte County, Florida for approximately $13,921.21. True and correct copies of the purchased tax liens are attached hereto and incorporated herein by this reference as Exhibit "P".

69.     Following the purchase of the Florida tax liens, Mr. Graddy discovered he would be unable to sell the properties as easily as ProSource had initially represented. Mr. Graddy learned despite his purchase of the tax liens, he would have to wait for the foreclosure process to be completed and then purchase the properties after a foreclosure auction was held.

70.     On June 19, 2019, Mr. Graddy was provided links via email to create accounts to file Tax Deed Applications for two properties in Florida by ProSource employee Karla Trejo. A true and correct copy of the email is attached hereto and incorporated herein by this reference as Exhibit "Q".

71.     On June 25, 2019, Mr. Graddy paid $7,217.40 to Charlotte County Deeds and Liens for the two aforementioned properties in Florida. A true and correct copy of the email is attached hereto and incorporated herein by this reference as Exhibit "R".

72.     In September 2019, Mr. Graddy discussed "TurnKey Properties" with his portfolio manager Erin Bates.

73.     On October 11, 2019, Mr. Graddy contacted Karla Trejo by email about the status of two Tax Deed Applications previously filed in Charlotte County, Florida. Ms. Karla Trejo subsequently informed Mr. Graddy that once the properties were ready to be put up for auction Charlotte County would contact him directly. The email also stated that to book an additional appointment with her, Mr. Graddy should                    go                    to http://outlook.office365.com/owa.calendar/StudentSuccess@zulumarketing.com/bookings. A true and correct copy of the email correspondence is attached hereto and incorporated herein by this reference as Exhibit "S".

74.     On November 8, 2019, Mr. Graddy received an email from Erin Bates providing two turnkey properties for review. A true and correct copy of the email is attached hereto and incorporated herein by this reference as Exhibit "T".

75.    On January 14, 2020, the Deputy Clerk of Charlotte County, Florida, Lori Lagios-Tuck notified 4K Coin LLC that its application for Tax Deed from the Tax Collector's office had been received for tax certificate numbers 2687-2013, and 3228-2013, and that a payment of $547.20 was due by January 27, 2020. A true and correct copy of applicant bill is attached hereto and incorporated herein by this reference as Exhibit "U".

76.    On January 23, 2020, 4K Coin LLC was provided Notice of Application for Tax Deeds 19-2036 and 19-2037. True and correct copies of the Notice of Applications for Tax Deeds are attached hereto and incorporated herein by this reference as Exhibits "V" and "W" respectively.

77.    Between February and April 2020, Mr. Graddy attempted to contact ProSource for additional help and information as the balance on his credit cards were coming due and he would incur substantial interest payments; however, Mr. Graddy was unsuccessful with making contact with ProSource despite his diligent efforts.

78.    During April 2020, Mr. Graddy discovered that the phone lines for ProSource's help lines were disconnected.

79.    April 14, 2020, Mr. Graddy attended the foreclosure auctions and was the successful bidder on parcels 402124232006 and 402203101003.

80.   On May 11, 2020, Mr. Graddy tendered total payments of $851.75 for the tax deeds to parcels 402124232006 and 402203101003. A true and correct copy of the payment and tax deeds are attached hereto and incorporated herein by this reference as Exhibits "X", "Y", and "Z" respectively.

81.   After 4K Coin, LLC obtained the tax deeds to the properties, Mr. Graddy subsequently discovered that he would be unable to sell the properties as he did not have a marketable title for either property. Pursuant to Florida law, Mr. Graddy would have to either bring an action to quiet title or wait a four-year period beginning on the date of the foreclosure sale in order for the title to be marketable.

## CAUSES OF ACTION

## COUNT I: NEGLIGENT MISREPRESENTATION

82.   Plaintiffs hereby reaffirm and reallege the allegations contain in Paragraphs 1 through 81 of this Verified Complaint as if set forth fully herein.

83.   During their dealings with Plaintiffs related to the sale of the DEP, TLIP, and the TLA, Defendants each negligently made affirmative representations regarding the DEP, TLIP, and TLA, the potential earnings representations and the value of the programs placed thereon, that were incorrected, improper, or false, negligently made misleading omissions of material fact and negligently gave improper and inaccurate information, advice, instructions, and opinions to Plaintiffs.

27

84.    Defendants either knew or reasonably should have known that their representations, information, advice, and instructions were improper, inaccurate, or wrong.

85.    Defendants either knew or reasonably should have known that their failures to disclose material information to Plaintiff were improper and wrong and would mislead Plaintiff.

86.    Defendants either knew or reasonably should have known that their representations, recommendations, advise, and instructions were improper, inaccurate, or wrong.

87.    Plaintiffs acted reasonably and in ignorance of the falsity of the Defendants' representations did in fact rely upon such misrepresentations as alleged herein, by among other things, purchasing the DEP, TLIP, and TLA.

88.    As a result of Defendants' negligent and grossly negligent misrepresentations and omissions, Plaintiffs have and will continue to incur substantial cost in the payment for the DEP, TLIP, and TLA to remedy the harm caused by Defendants.

89.    As a direct and proximate cause of Defendants negligence, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT II: THEFT BY DECEPTION

90.     Plaintiffs hereby reaffirm and reallege the allegations contain in Paragraphs 1 through 89 of this Verified Complaint as if set forth fully herein.

91.     Defendants obtained property, particularly Plaintiffs' money, by deceitful means or artful practice with the intent of depriving Plaintiffs of their money, when it promised to provide products and services without intent to fully perform.

92.     Defendants conduct in selling the DEP, TLIP, and TLA to Plaintiffs with the intent of not providing the products and services in full constitutes theft by deception.

93.     Defendants knowingly deceived Plaintiffs my marketing products and services which they did not intend to fully provide and perform.

94.     Defendants provided Plaintiffs with false information and created false impressions of fact, or attempted to create impressions of fact, which were false, and Defendants knew were false, and were pertinent to Plaintiffs' decision to purchase Defendants products and services.

95.     These falsehoods were made as to matters of pecuniary significance and Defendants conduct constituted intentional deception as defined by O.C.G.A. § 16-8-3(a), and/or attempted intentional deception.

96.     Defendants failed to correct the false impressions about the success of its programs and services, an impression that it previously created or attempted to create, constituting intentional deception as defined by O.C.G.A. § 16-8-3(2).

97.     Defendants also created the impression, or attempted to create the impression, that Plaintiffs would receive support and help until Plaintiffs earned at least their investment back. This assertion was made as to a matter of pecuniary significant. Defendants knew this assertion, made both orally and in writing directly to Plaintiffs, was false when it made. Defendants thus intentionally deceived or attempted to intentionally deceive Plaintiffs as defined by O.C.G.A. § 16-8-3(b)(1).

98.     Defendants failed to correct the false impression that Plaintiff would receive support and help until Plaintiffs earned their investment back, an impression which Defendants had previously created or confirmed. These acts or omissions also constituted intentional deception as defined by O.C.G.A. § 16-8-3(b)(2).

99.     Defendants acceptance and deposit of Plaintiffs' monies constituted theft by deception, as did the other acts described herein. Defendants obtained monies through deceitful means or artful practice with the intention of depriving Plaintiffs of property, including but not limited to their monies. Defendants conduct proximately caused Plaintiffs' damages.

## COUNT III: FRAUD

100.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 99 of this Verified Complaint as if set forth fully herein.

101.   During the three-day Workshop taking place February 8, 2019 through February 10, 2019 (the "February Workshop") Defendants, their employees, agents, and speakers acting on their behalf, made representations to Plaintiffs that by purchasing the products and services offered in the DEP, Plaintiffs would be able to "make more money than they borrowed" purchasing the DEP by purchasing and flipping tax liens.

102.   During the February Workshop the Defendants, their employees, agents, and speakers made oral and express representations of the products and services that would be provided and a Commitment Guarantee Certificate that expressly provided that Defendants would continue to help Plaintiffs until Plaintiffs received "at least 100% of [their] investment" in the program.

103.   During the February Workshop the Defendants, their employees, agents, and speakers represented that Defendants would help Plaintiffs obtain a loan and/or financing with 0% interest for a year, or longer, that would allow them to pay for the DEP and future tax liens which could be sold before any interest accrued.

104. During the February Workshop the Defendants, their employees, agents, and speakers represented to Plaintiffs that Plaintiffs would be able to foreclose tax liens and sell the subject property before interest on the credit cards became due, allowing them to "make more money than they borrowed."

105. The Defendants material misrepresentations made to the Plaintiffs during the February Workshop caused Plaintiffs to purchase the DEP.

106. Defendants never had any intention of providing the goods and performing the services pursuant to the DEP agreement at the time it was entered into by them on February 10, 2019.

107. Between March 15, 2019 and March 17, 2019, during the three-day seminar in Orlando, Florida (the "Florida Seminar") various speakers and presenters were present and spoke on behalf of Defendants, including Eric Blackwell, about investing in tax liens before switching and focusing on real estate and flipping houses.

108. During the Florida Seminar the speakers and Defendants agents and employees made deceptive statements and misrepresentations concerning "turn-key" properties that were available and displayed in binders for Plaintiff and other consumers to view.

109.   During the Florida Seminar, Defendants speakers, employees, and agents made deceptive and misrepresentative statements about the TLIP, and the contents and services included, and available for purchase at an additional cost. The material misrepresentations made by the Defendants caused Plaintiffs to agree to purchase the TLIP.

110.   On March 29, 2019, Plaintiffs entered into the TLA, agreeing to pay $2,244.84 for the assignment of three separate tax liens, relying on Defendants representations that if Plaintiffs were not satisfied with the purchased of the tax liens, the liens would be purchased back for the full price paid.

111.   On March 29, 2019, Defendants made material misrepresentation to Plaintiffs regarding the TLA, causing Plaintiff to agree and enter into the TLA with Defendants.

112.   The above-mentioned material misrepresentations made by the Defendants, their agents and employees to the Plaintiffs caused Plaintiffs to purchase products and services from Defendants, including tax liens on Properties which Defendant knew or should have known would have unmarketable titles, and would cause and did cause Plaintiffs to incur insurmountable interests on their purchases.

113.   Defendants purposely and continuously made material misrepresentations to Plaintiffs about the DEP, TLIP, and TLA agreements.

Defendants continued to make material misrepresentations after each subsequent agreement was entered into in order to induce Plaintiffs to continue to purchase more services and products and prevent Plaintiffs from taking action against the Defendants at an earlier date.to make material misrepresentations after the DEP, TLIP, and TLA agreements were signed in order to induce Plaintiffs to continue to purchase more services and products from them and prevent Plaintiffs from taking action against them at an earlier date.

114.    Upon information and belief, some of the funds paid by Plaintiffs have been used for purposes other than providing the products, services, and training related to the Contracts.

115.    Plaintiffs reasonably relied upon the material misrepresentations by Defendants by paying for Defendants' services.

116.    The actions by Defendants constitutes fraud.

117.    Plaintiffs have been damaged as a result of Defendants' fraud.

118.    Plaintiffs are entitled to judgment against Defendants' for fraud and punitive damages in an amount to determined at trial but not to exceed $250,000.

## COUNT IV: PUNITIVE DAMAGES

119.    Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 118 of this Verified Complaint as if set forth fully herein.

120.   Defendants' actions in engaging in a pattern of fraud and by intentionally misrepresenting its services, products, and training to the Plaintiffs show by clear and convincing evidence that the Defendants' misconducts were intentional, willful, wanton, oppressive, malicious, fraudulent, and reckless, and evidence such an entire want or lack of care as to raise the presumption of a conscious indifference to the consequences of their actions.

121.   Plaintiffs are entitled to a judgment against Defendants, in a bifurcated hearing following a specific jury finding pursuant to O.C.G.A. § 51-12-5.1 for punitive and exemplary damages, in an amount to be determined by the enlightened conscience of impartial jurors, but in an amount no less than $250,000, to punish and deter Defendants from repeating such conduct in the future.

## COUNT V: VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT, O.C.G.A. § 10-1-390, et seq.

122.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 121 of this Verified Complaint as if set forth fully herein.

123.   On February 10, 2019, Plaintiffs purchased from Defendants the DEP.

124.   On March 15, 2019, Plaintiffs purchased from Defendants the TLIP.

125.   On March 29, 2019, Plaintiffs purchased the TLA from Defendants.

126.   Plainitffs' purchases were all made pursuant to a series of transactions in which Defendants, their employees, agents, and representatives intentionally

misrepresented to Plaintiffs that Defendants would assist them in financing their training and products and services purchases through the help of its affiliate, Seed Capital, and help provide Plaintiffs with cash credit lines needed to launch their business.

127.   Defendants intentionally represented to Plaintiffs that its programs, training, support, and services would help Plaintiffs earn more money than they spent, when that was not the case.

128.   Defendants conduct is a violation of Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, et. seq. ("FBPA").

129.   The FBPA declares unlawful any "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." O.C.G.A. § 10-1-393.

130.   Plaintiff is a consumer as defined by O.C.G.A. § 10-1-392.

131.   Defendant's transaction with Plaintiff is a "consumer transaction," and constitutes "trade" and "commerce" as defined by O.C.G.A. § 10-1-392.

132.   The dispute involves "goods" within the meaning of O.C.G.A. § 10-1-390, et seq.

133.   Defendants engaged in unfair and deceptive trade practices by making untrue, deceptive, and false representations to Plaintiffs regarding the income

Plaintiffs could anticipate from purchasing its training, the true purpose of its seminars, the services provided by ProSource, and the access and availability it its products and other services.

134.   Defendants engaged in unfair and deceptive trade practices by making untrue, deceptive, and false representation to Plaintiffs regarding the ability to pay off the credit cards before incurring any interest.

135.   Defendants' conduct caused actual confusion and actual misunderstanding.

136.   Defendants' misleadingly, falsely, unconscionably and/or deceptively misrepresented and/or omitted material facts regarding its training, services, and products as described herein. Defendants' conduct violated the Consumer Protection Act and caused Plaintiff an ascertainable loss.

137.   Had Plaintiffs known the Defendants' statements were false or misleading, they would not have engaged in the consumer transaction with Defendants.

138.   As a proximate consequence of Defendant's improper conduct, the Plaintiff was injured.

139.   Pursuant to O.C.G.A. § 10-1-339, on December 1, 2020, prior to filing this complaint, Plaintiffs sent a demand for relief to Defendants. Copies of the

Plaintiffs' December 1, 2020 Demand Letters are attached hereto and incorporated herein by this reference as Exhibit "AA."

140.   More than thirty (30) days have elapsed since Plaintiffs sent their demand letter and Defendants have failed to respond with the necessary tender of settlement.

141.   Defendants have taken advantage of Plaintiffs' professional courtesy, acted in bad faith, extended litigation through their bad faith delay, and needlessly caused Plaintiffs' unnecessary trouble and expense.

142.   Defendants are therefore liable to Plaintiff for their actual damages in an amount to be determined at trial, reasonable attorneys' fees in an amount to be determined at trial, as well as exemplary damages for the Defendants intentional conduct.

## COUNT VI: FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

143.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 142 of this Verified Complaint as if set forth fully herein.

144.   This count sets forth a claim for damages resulting from the Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq.

145.   Plaintiffs are "persons" within the meaning of 18 U.S.C. § 1964(c).

146.   At all times relevant hereto, each of Plaintiffs and the Defendants were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

147.   An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associate in fact although not a legal entity."

148.   In this case, the enterprise ("Enterprise") for RICO purposes consists of ProSource, CF Fund, Sprout IRA, Sprout Financial, Sprout Investment Partners, Sprout Residential, Seed Capital, REI, Neff Inc., Slickrock, Silverstand, Zulu, Superstar, Man Made, and Keystone and all other persons, including Joshua Carr, Edward Stewart, and Tonya Neff, and entities that associated to solicit persons to participate in the Tax Lien and Real Estate seminars and Tax Lien Assignments for the purpose of generating and sharing fees generated from the sale of the DEP, TLIP, and TLA and the goods and services purported to be provided.

149.   These individuals and entities individual and through their employees and agents represented to their victims, who are often inexperienced in real estate matters, that they can make substantial profits investing in real estate and tax liens if they purchase expensive training packages consisting of personal mentoring, software, and one on one mentoring. In reality, the training packages sold to Plaintiffs and unsophisticated consumers was nothing more than an elaborate "bait

and switch operation" which Plaintiff and other consumers paid for by borrowing the maximum amount possible from credit cards.

150. Defendants did not educate consumers about either tax liens or real estate flipping strategies, nor did Defendants provide Plaintiffs and other consumers with the products and services advertised, marketed, and promised. Instead, the Defendants designed, implemented, promoted, and sold an elaborate scheme devised solely to facilitate the generation of large sums of money from Plaintiffs and other consumers, leaving Plaintiffs and other consumers with damaged credit scores and unmanageable debts.

151. Defendants sought out as customers those persons, like Plaintiffs, that were inexperienced and unsophisticated investors to participate in the real estate and tax lien workshops; the Defendants then capitalized on the consumers and Plaintiffs' inexperience and unsophistication, convincing them to purchase the products and services, for the primary purpose of providing significant revenue for the Defendants and unbeknownst to consumers and Plaintiffs.

152. The Defendants engaged in a common and mutual plan, transaction, and course of conduct described herein in connection with the design, implementation, promotion, and sale of the real estate and tax lien workshops.

153.   The Defendants knowingly or recklessly engaged in acts, transactions, practices and a course of business that operated as a fraud upon the Plaintiffs and other consumers, the primary purpose and effect of which was to generate huge fees by fraudulently selling a series of transactions under the guise of providing services and products.

154.   In connection with the tax lien and real estate workshops, the Defendants shared a purpose, relationships, and longevity sufficient to pursue the Enterprise's purpose. Specifically, the purpose of the Enterprise was for the Defendants to generate and share fees gained from the real estate and tax lien workshops. They accomplished this purpose by, among other things, rendering a sufficient amount of products and services to induce Plaintiffs into purchasing the products and services advertised and promoted real estate and tax line workshops, guaranteeing the Plaintiffs and consumers they would make money from the products and services they purchased, without fully providing these products and services.

155.   The Defendants relationship between and among one another enabled the Defendants to, amount other things, (1) promote the real estate and tax lien workshops to new consumers, (2) organize and operate the various corporations and LLC entities necessary to implement the tax lien and real estate workshops, (3)

inform Plaintiffs and consumers how to maximize the amount of credits and loans, and (4) sell the real estate and tax lien products and services to the Plaintiffs and other consumers.

156.   The Enterprise also has longevity, as it has been in operation since late 2018 or early 2019, if not early, continuously morphing into a new business arrangement, initially starting out as the "Real Estate Workshop" before joining forces with ProSource Tax Liens, dba Carnegie Academy, LLC, but continuing the same conduct and during which time the Enterprise committed, among other things the predicate acts mentioned herein.

157.   While the Defendants participated in the Enterprise and were apart of it, the Defendants also had an existence separate and distinct from the Enterprise.

158.   Defendants maintained an interest in and control of the Enterprise and also conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.

159.   Defendants control and participation in the Enterprise were necessary for the successful operation of Defendants' fraudulent scheme. The Enterprise had an ascertainable structure separate and apart from the pattern of racketeering activity in which Defendants engaged.

160.   The real estate and tax lien workshops caught the attention of inexperienced and unsophisticated buyers by promising consumers that the Defendants products and services would provide consumers with an opportunity to change their daily lives, earn passive and active income, and allow for them to quickly buy and sell properties for massive profits.

161.   Despite the representations and advertisements of the Defendants, the real estate and tax lien workshops and the products and services were not as advertised, as set out in detail herein. Defendants had no difficulty in convincing consumers of the success and validity of the programs, products and services, using fraudulent means to persuade and mislead consumers and the Plaintiffs to agree to purchase Defendants products and services.

162.   The Defendants convinced the Plaintiffs and other consumers of the validity of its products and services by hosting seminars, hiring guests speakers to tout the success of the program, products and services, and showing videos of purchasers of the program stating their goals and expectations of the program as if they had already happened.

163.   Each of the Defendants were vital to the implementation of the real estate and tax lien workshops, played an important role in the success of the

Enterprise, and either controlled the Enterprise or knowingly implemented the decisions of others in the Enterprise.

164.   Defendants have engaged in predicate acts that are defined to constitute "racketeering activity" under the Federal RICO statute. §18 U.S.C. § 1961(1).

165.   Specifically, Defendants engaged in mail fraud (18 U.S.C § 1341) and wire fraud (18 U.S.C. § 1343). Defendants engaged in mail and wire fraud by perpetrating a scheme to defraud Plaintiffs and other consumers by, among other things, misleading Plaintiffs about the products, services, and training offered by the Defendants. Defendants directly participated in that scheme to defraud, with the specific intent to defraud the Plaintiffs and others, and the United States mails and wires were used in furtherance of that scheme.

166.   Defendants communicated with Plaintiffs and others by United States mail or the interstate wires, and caused Plaintiffs and others to enter into agreements with and wire payments to Defendants using the interstate wires, constituting a separate predicate act of mail fraud or wire fraud, as the case may be, because Defendants in each instance either communicated a misrepresentation to Plaintiffs, or otherwise failed to correct a false impression of an existing fact that Defendants had previously created or confirmed.

167.   Moreover, Defendants engaged in mail fraud by sending, or directing others to send, fraudulent information to the Plaintiffs.

168.   Each such act of racketeering activity committed by Defendants were related, had similar purposes, involved the same or similar participants, and methods of commission, and had similar results impacting upon similar victims, including Plaintiffs.

169.   The multiple acts of racketeering activity committed and/or conspired to by Defendants and their co-conspirators, as described herein, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

170.   Defendants Joshua Carr, Edward Stewart, and Tonya Neff constituted an "association in fact" enterprise under 18 U.S.C. § 1961(4), because they were a group of individuals associated in fact, although not a legal entity. As an "association in fact" enterprise, Joshua Carr, Edward Stewart, and Tonya Neff had (a) a purpose – to perpetrate fraud on Plaintiffs and other consumers; (b) relationships among those associated with the enterprise – each of the three exercising a position of authority; and (c) longevity sufficient to permit Joshua Carr, Edward Stewart, and Tonya Neff to pursue the enterprises purpose.

171.   In violation of 18 U.S.C. § 1962(b), Joshua Carr, Edward Stewart, and Tonya Neff, through a pattern of racketeering activity, acquired or maintained, directly or indirectly, an interest in or control of enterprises engaged in interstate commerce.

172.   In violation of 18 U.S.C. § 1962(c), Joshua Carr, Edward Stewart, and Tonya Neff, who were employed by distinct enterprises engaged in interstate commerce, and otherwise associated with enterprises engaged in interstate commerce, have conducted or participated, directly or indirectly, in the conduct of such enterprises' affairs through a pattern of racketeering activity.

173.   In violation of 18 U.S.C. § 1962(d), Joshua Carr, Edward Stewart, and Tonya Neff conspired to violate the provisions of 18 U.S.C. § 1962(b) and 18 U.S.C. § 1962(c).

174.   Joshua Carr, Edward Stewart, and Tonya Neff have harmed Plaintiffs by perpetrating a scheme to defraud Plaintiffs and others.

175.   Plaintiffs have suffered financial injury by reasons of Defendants and Joshua Carr, Edward Stewart, and Tonya Neff's violations of 18 U.S.C. § 1962, and is entitled to judgement against Joshua Carr, Edward Stewart, and Tonya Neff for all resulting damages. Among other injuries, Plaintiff has suffered injury by, as a proximate result of Joshua Carr, Edward Stewart, and Tonya Neff's scheme to

defraud. Therefore, pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover treble damages.

176.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to the reasonable attorneys' fees and cost incurred by Plaintiffs to prosecute this lawsuit.

### COUNT VII: VIOLATIONS OF THE GEORGIA RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT

177.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 176 of this Verified Complaint as if set forth fully herein.

178.   The scheme and conduct of Defendants evidence the establishment of an enterprise through a pattern of racketeering activity that is unlawful under the Georgia Racketeer Influenced and Corrupt Organization Act, O.C.G.A. §§ 16-14-1 *et seq*.

179.   Defendants committed, attempted to commit, aided and abetted, solicited, or engaged in at least two interrelated predicate incidents or acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that had the same or similar intent, results, accomplices, victims, methods of commission, or are otherwise interrelated by, distinguishing characteristics and are not isolated incidents which proximately caused injury to the Plaintiffs. The incidents or acts of racketeering activity that form the pattern of racketeering activity engaged in by Defendants occurred within the Relevant Period

and include fraud. The acts of racketeering activity extended over a substantial period of time and were sufficiently continuous to form a pattern of racketeering activity.

180.   Defendants Joshua Carr, Edward Stewart, and/or Tonya Neff, willfully conducted and/or participated directly or indirectly in the conduct of the affairs of the corporate entities and engaged in a pattern of racketeering activity and for the unlawful purpose of defrauding others.

181.   The racketeering activities of the enterprises have resulted in Plaintiffs suffering losses, including the funds paid to Defendants ProSource, Slickrock, Seed Consulting, and REI Holdings, LLC, which funds have been disbursed wrongfully.

182.   Defendants with the intent of defrauding Plaintiffs and others by obtaining money by fraudulent pretenses, engaged in an elaborate series of transactions by and between themselves and others, intended to confuse and cover the actual activity of theft by deception, mail fraud, and wire fraud.

### *THE PREDICATE ACTS*

### A. Theft by Deception

183.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 182 Verified Complaint as if set forth fully herein.

184.   Theft by deception constitutes a predicate act pursuant to Georgia RICO Act.

## B. Mail Fraud

185.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 184 of this Verified Complaint as if set forth fully herein.

186.   Mail fraud pursuant to 18 U.S.C.§ 1961(1), constitutes a predicate act of racketeering activity pursuant to O.C.G.A. § 16-14-3(5)(C).

187.   Defendants used mail, in furtherance of the scheme and in the course of defrauding Plaintiffs into purchasing Defendants products and services.

188.   Defendants did so with intent to defraud.

189.   It was reasonably foreseeable that mail would be used in the scheme.

## C. Wire Fraud

190.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 189 of this Verified Complaint as if set forth fully herein.

191.   Wire fraud pursuant to 18 U.S.C.§ 1961(1), constitutes a predicate act of racketeering activity pursuant to O.C.G.A. § 16-14-3(5)(C).

192.   Defendants, by and through their agents, employees, and representatives, have engaged in more than one act of wire fraud in violation of 18

U.S.C. § 1343 in furtherance of the scheme and in the course of defrauding Plaintiffs into purchasing Defendants products and services.

193.   Defendants did so with intent to defraud.

194.   It was reasonably foreseeable that wire fraud would be used in the scheme.

### *Interrelationship Between Acts of Racketeering Activity*

195.   The acts of racketeering activity committed by Defendants are interrelated and not isolated incidents in that they all involve numerous transactions or purported transactions and involve the same or similar intents, the same or similar results, the same or similar victims, the same or similar methods of commissions, the same or similar benefits to Defendants, and the same or similar efforts to conceal Defendants' misconduct.

196.   The incidents or acts of racketeering activity committed by Defendants have the same or similar intents in that they sought to obtain property, including by not limited to, money for Defendants through illegal means.

197.   The incidents or acts of racketeering activity committed by the Defendants have the same or similar results.

198.   The incidents of racketeering activity committed by the Defendants have the same or similar methods of commission.

***Injuries to Plaintiffs Proximately Caused by Defendants RICO Violations***

199.   The conduct of Defendants, as set forth herein, had no legitimate business purpose or activity. Defendants have misrepresented their activities, not only to Plaintiffs, but to others, and directly targeted unsophisticated buyers, including Plaintiffs, in furtherance of the pattern of racketeering of the enterprise.

200.   Plaintiffs' injuries flow directly and proximately from Defendants' incidents or acts of racketeering activity, which constitute part of the pattern of racketeering activity.

201.   Plaintiffs have been injured by reason of Defendants violation of O.C.G.A. § 16-14-4(c) and are entitled to recover three times the actual damages sustained.

202.   Pursuant to O.C.G.A. § 16-14-6(c), Plaintiffs are also entitled to recover their reasonable attorneys' fees.

## COUNT VIII: CONSPIRACY TO VIOLATE O.C.G.A. § 16-14-1, et seq.

203.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 202 of this Verified Complaint as if set forth fully herein.

204.   In concert with their co-conspirators, Defendants have been able to exert greater influence, have been able to successfully engage in the unlaw activities detail herein and have had a greater ability to conceal their unlawful activities.

205.   The object of the conspiracy was to engage in the real estate and tax lien investment workshops scheme through racketeering activity.

206.   Defendants, together with their employees and agents have been joined in conspiracies to violate O.C.G.A. § 16-14-1.

207.   As detailed herein, Defendants and their co-conspirators have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy including systemic fraudulent practices designed to defraud Plaintiffs of money and other interests.

208.   The nature of Defendants' unlawful conduct give rise to an inference that Defendants not only agreed to the objective to conspire to violate, but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity intended to financially benefit Defendants and their co-conspirators.

209.   Defendants have sought to and have engaged in the commission of and continue to commit overt acts and unlawful racketeering predicate acts that have and continue to generate financial gain for Defendants from such pattern of racketeering activity through an ongoing scheme intended to defraud Plaintiffs and other Georgia consumers.

210.   As a direct and proximate cause of Defendants unlawful conspiracy, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT IX: DISREGARD OF CORPORATE ENTITY/PIERCING THE CORPORATE VEIL (Against All Defendants)

211.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 210 of this Verified Complaint as if set forth fully herein.

212.   Upon information and belief, Defendants ProSource, CF Fund, Sprout IRA, Sprout Financial, Sprout Investment Partners, Sprout Residential, Seed Capital, REI, Neff Inc., Slickrock, Silverstand, Zulu, Superstar, Man Made, and Keystone are the "alter egos," "agents," and/or instrumentalities" of Defendants Joshua Carr, Edward Stewart, and/or Tonya Neff.

213.   Upon information and belief, Defendants Joshua Carr, Edward Stewart, and Tonya Neff have disregarded the corporate entities and are utilizing the Defendant entities to evade their contractual responsibilities to the Plaintiffs.

214.   Defendants Joshua Carr, Edward Stewart, and Tonya Neff used the corporate form to perpetuate fraud and evade contractual responsibility and therefore the corporate veil is due to be pierced.

## COUNT X: UNJUST ENRICHMENT

215.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 214 of this Verified Complaint as if set forth fully herein.

216.   Plaintiffs conferred a benefit on the Defendants by paying for the products services, and training offered by the Defendants.

217.   Defendants have knowledge of the benefit conferred by Plaintiffs.

218.   Defendants have appreciated, accepted and/or retained the benefit conferred by Plaintiffs by virtue of Defendants fraudulent schemes.

219.   Under the circumstances, it would be unjust and inequitable to allow Defendants to retain this benefit, as it was obtained through deceptive representations.

220.   The Defendants have been unjustly enriched by the retention of the benefits paid by Plaintiffs.

221.   Plaintiffs have suffered damages as a result of Defendants unjust enrichment.

## COUNT XII: ATTORNEY'S FEES PER O.C.G.A. § 13-6-11

222.   Plaintiffs reaffirm and reallege the allegations contained in Paragraphs 1 through 221 of this Verified Complaint as if set forth fully herein.

223.   Defendants have needless extended litigation by acting in bad faith and needlessly extending litigation in their bad faith delay.

224.   Pursuant to O.C.G.A. § 10-1-339, on December 1, 2020, prior to filing this complaint, Plaintiffs sent a demand for relief to Defendants. *See Exhibit AA*.

225.   More than thirty (30) days have elapsed since Plaintiffs sent their demand letter.

226.   Defendant Seed Consulting, LLC responded on December 17, 2020 to Plaintiffs letter, but the letter did not contain a "tender of settlement". A true and accurate copy of Defendants December 17, 2020 letter is attached hereto and incorporated herein by this reference as Exhibit "BB".

227.   Defendants responded on December 23, 2020 to Plaintiffs letter, but the letter did not contain a "tender of settlement". A true and accurate copy of Defendants December 23, 2020 letter is attached hereto and incorporated herein by this reference as Exhibit "CC".

228.   On January 25, 2021, Plaintiffs' counsel sent a response to Defendants December 23, 2020 letter via email and certified mail. A true and accurate copy of the January 25, 2021 email is attached hereto and incorporated herein by this reference as Exhibit "DD".

229.   On January 27, 2021, Defendants counsel asked for an extension of time to respond, indicating Defendants were "working to compile some information that [counsel] feel would be dispositive to the potential claims [Plaintiffs] intend to assert and would help provide a better perspective for any settlement discussions." Plaintiffs agreed to extend its deadline until 5:00 PM on Monday, February 8, 2021.

A true and accurate copy of the January 27, 2021 email correspondence is attached hereto as Exhibit "EE".

230.   On Monday, February 8, 2021, at 4:09 PM, Defendants counsel informed Plaintiffs that Defendants have engaged local counsel, Attorney Scott Hoopes, to take over the matter.

231.   Defendants have taken advantage of Plaintiffs professional courtesy, acted in bad faith, extended litigation through their bad faith delay, and needlessly caused Plaintiffs unnecessary trouble and expense.

232.   Defendants and their counsel have acted in bad faith, have been stubbornly litigious, or have caused Plaintiffs unnecessary trouble and expense as defined and contemplated by O.C.G.A. § 13-6-11. Accordingly, the Plaintiffs are entitled to judgement against the Defendants for its cost and reasonable attorney's fees actually incurred in connection with this action.

**NOW WHEREFORE**, Plaintiffs pray for the following relief:

   a.  That service and process issue as provided by law;

   b.  Judgment against Defendants and an award of monetary damages in an amount to be determined at trial for Plaintiffs' claims for negligent misrepresentation, theft by deception, fraud, and punitive damages; violation of Georgia Far Business Practices Act; violations of Federal

Racketeer Influence and Corrupt Organizations Act, violations of the Georgia Racketeer Influence and Corrupt Organizations Act, conspiracy to violate the Georgia Racketeer Influenced and Corrupt Organizations Act, disregard of corporate entity/piercing the corporate veil, and unjust enrichment;

c.  An award of punitive damages for Plaintiffs' claims for fraud, theft by deception, and violations of the Federal and Georgia Racketeer Influence and Corrupt Organizations Act;

d.  Prejudgment interest as allowed by law;

e.  An award of reasonable attorneys' fees and costs of litigation on all Counts in this Complaint pursuant to O.C.G.A. §13-6-11; and

f.  All other and further relief as the Court deems just and proper.

**This** 12th day of February, 2021.

Respectfully submitted,

/s/ Devin Phillips
Devin Phillips
Georgia Bar No. 189782
*Attorney for Plaintiffs*

**WEENER NATHAN PHILLIPS LLP**
5887 Glenridge Drive, NE, Suite 275
Atlanta, GA  30328
Tel. (770) 392-9004
Fax (770)522-9004
Email: dphillips@wnpllp.com

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KELVIN GRADDY, an individual, KAVELLE FIELDS, an individual, 4K COIN, LLC, a Georgia limited liability company, KVG INVESTMENTS LLC, a Utah limited liability company, and THE KD9 GROUP, LLC, a Georgia limited liability company, | ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) ) ) |
| CARNEGIE ACADEMY, LLC, d/b/a PROSOURCE TAX LIENS a/d/b/a TAX LIEN TOUR, a Utah limited liability company, SPROUT CF FUND, INC., a Utah corporation, SPROUT IRA, LLC, a Utah limited liability company, SPROUT FINANCIAL, LLC, d/b/a SPROUT ADVISORS a/d/b/a/ SPROUT ADVISERS, a/d/b/a SPROUT IRA, a Utah limited liability company, SPROUT INVESTMENT PARTNERS, LLC, a Utah limited liability company, SPROUT RESIDENTIAL FUND, LLC, a Utah limited liability company, SEED CONSULTING, LLC d/b/a SEED CAPITAL CORP., a Nevada limited liability company, JOSHUA CARR, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, EDWARD STEWART, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, and REI HOLDINGS, LLC, a Utah limited liability company, SLICKROCK, LLC, a Nevada limited liability company, SILVERSTRAND, LLC, d/b/a SAVILE CUSTOM CLOTHIERS, a/d/b/a SAVILE ROW, a/d/b/a SAVILE TAILORS, a Utah limited liability company, TONYA NEFF, individually and in her capacity as an owner/member/executive/alter ego of NEFF COMPANIES, INC., a Utah corporation, ZULU MARKETING d/b/a TAX LIEN BUYERS CLUB a/d/b/a TAX LIEN VAULT a/d/b/a MELTDOWN MILLIONAIRE a/d/b/a TAX LIEN | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION FILE NO.:

_____

JURY TRIAL DEMANDED

OFFICE, a Utah limited liability company,  )
SUPERSTAR LLC, d/b/a SUPERSTAR INC.,  )
a/d/b/a SUPERSTAR LLC, a Utah limited liability  )
company, MAN MADE LLC, d/b/a NINES  )
CLOTHING a/d/b/a CANVAS CLOTHING  )
a/d/b/a CANVAS CLOTHIERS, a Utah limited  )
liability company, and KEYSTONE  )
INVESTMENT GROUP, LLC, a Georgia limited  )
liability company,  )
  )
     Defendants.  )
_____  )

## VERIFICATION

     PERSONALLY APPEARED before the undersigned officer duly authorized to administer

and receive oaths, 4K COIN, LLC, by and through Kelvin Graddy, its Manager, who, after being

duly sworn, state that all of the allegations in the foregoing *Verified Complaint*, are true and correct

to the best of my knowledge, information, and belief.

                   **4K COIN, LLC**

                  By: _____
                     Kelvin Graddy, its Manager

Sworn to and subscribed before me this
____ day of February, 2021.

_____
Notary Public

My commission expires: _01/02/2022_

     [Notary Seal]

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KELVIN GRADDY, an individual, KAVELLE FIELDS, an individual, 4K COIN, LLC, a Georgia limited liability company, KVG INVESTMENTS LLC, a Utah limited liability company, and THE KD9 GROUP, LLC, a Georgia limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>CARNEGIE ACADEMY, LLC, d/b/a PROSOURCE TAX LIENS a/d/b/a TAX LIEN TOUR, a Utah limited liability company, SPROUT CF FUND, INC., a Utah corporation, SPROUT IRA, LLC, a Utah limited liability company, SPROUT FINANCIAL, LLC, d/b/a SPROUT ADVISORS a/d/b/a/ SPROUT ADVISERS, a/d/b/a SPROUT IRA, a Utah limited liability company, SPROUT INVESTMENT PARTNERS, LLC, a Utah limited liability company, SPROUT RESIDENTIAL FUND, LLC, a Utah limited liability company, SEED CONSULTING, LLC d/b/a SEED CAPITAL CORP., a Nevada limited liability company, JOSHUA CARR, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, EDWARD STEWART, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, and REI HOLDINGS, LLC, a Utah limited liability company, SLICKROCK, LLC, a Nevada limited liability company, SILVERSTRAND, LLC, d/b/a SAVILE CUSTOM CLOTHIERS, a/d/b/a SAVILE ROW, a/d/b/a SAVILE TAILORS, a Utah limited liability company, TONYA NEFF, individually and in her capacity as an owner/member/executive/alter ego of NEFF COMPANIES, INC., a Utah corporation, ZULU MARKETING d/b/a TAX LIEN BUYERS CLUB a/d/b/a TAX LIEN VAULT a/d/b/a MELTDOWN MILLIONAIRE a/d/b/a TAX LIEN | CIVIL ACTION FILE NO.:<br><br>_____<br><br>JURY TRIAL DEMANDED |

OFFICE, a Utah limited liability company,                )
SUPERSTAR LLC, d/b/a SUPERSTAR INC.,                     )
a/d/b/a SUPERSTAR LLC, a Utah limited liability          )
company, MAN MADE LLC, d/b/a NINES                       )
CLOTHING a/d/b/a CANVAS CLOTHING                         )
a/d/b/a CANVAS CLOTHIERS, a Utah limited                 )
liability company, and KEYSTONE                          )
INVESTMENT GROUP, LLC, a Georgia limited                 )
liability company,                                       )
                                                         )
        Defendants.                                      )
_____             )

## VERIFICATION

PERSONALLY APPEARED before the undersigned officer duly authorized to administer and receive oaths, KVG INVESTMENTS LLC, by and through KELVIN GRADDY, its Manager, who, after being duly sworn, state that all of the allegations in the foregoing *Verified Complaint*, are true and correct to the best of my knowledge, information, and belief.

                              KVG INVESTMENTS LLC

                              By: _____
                                  Kelvin Graddy, its Manager

Sworn to and subscribed before me this
_____ day of February, 2021.

_____
Notary Public

My commission expires: _01/02/2022_

     [Notary Seal]

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KELVIN GRADDY, an individual, KAVELLE FIELDS, an individual, 4K COIN, LLC, a Georgia limited liability company, KVG INVESTMENTS LLC, a Utah limited liability company, and THE KD9 GROUP, LLC, a Georgia limited liability company,<br><br>    Plaintiffs,<br><br>v.<br><br>CARNEGIE ACADEMY, LLC, d/b/a PROSOURCE TAX LIENS a/d/b/a TAX LIEN TOUR, a Utah limited liability company, SPROUT CF FUND, INC., a Utah corporation, SPROUT IRA, LLC, a Utah limited liability company, SPROUT FINANCIAL, LLC, d/b/a SPROUT ADVISORS a/d/b/a/ SPROUT ADVISERS, a/d/b/a SPROUT IRA, a Utah limited liability company, SPROUT INVESTMENT PARTNERS, LLC, a Utah limited liability company, SPROUT RESIDENTIAL FUND, LLC, a Utah limited liability company, SEED CONSULTING, LLC d/b/a SEED CAPITAL CORP., a Nevada limited liability company, JOSHUA CARR, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, EDWARD STEWART, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, and REI HOLDINGS, LLC, a Utah limited liability company, SLICKROCK, LLC, a Nevada limited liability company, SILVERSTRAND, LLC, d/b/a SAVILE CUSTOM CLOTHIERS, a/d/b/a SAVILE ROW, a/d/b/a SAVILE TAILORS, a Utah limited liability company, TONYA NEFF, individually and in her capacity as an owner/member/executive/alter ego of NEFF COMPANIES, INC., a Utah corporation, ZULU MARKETING d/b/a TAX LIEN BUYERS CLUB a/d/b/a TAX LIEN VAULT a/d/b/a MELTDOWN MILLIONAIRE a/d/b/a TAX LIEN | CIVIL ACTION FILE NO.:<br><br>_____<br><br>JURY TRIAL DEMANDED |

OFFICE, a Utah limited liability company,                )
SUPERSTAR LLC, d/b/a SUPERSTAR INC.,                     )
a/d/b/a SUPERSTAR LLC, a Utah limited liability          )
company, MAN MADE LLC, d/b/a NINES                       )
CLOTHING a/d/b/a CANVAS CLOTHING                         )
a/d/b/a CANVAS CLOTHIERS, a Utah limited                 )
liability company, and KEYSTONE                          )
INVESTMENT GROUP, LLC, a Georgia limited                 )
liability company,                                       )
                                                         )
        Defendants.                                      )
                                                         )

## VERIFICATION

PERSONALLY APPEARED before the undersigned officer duly authorized to administer

and receive oaths, KELVIN GRADDY, who, after being duly sworn, state that all of the allegations

in the foregoing *Verified Complaint*, are true and correct to the best of my knowledge, information,

and belief.

_____(SEAL)

Kelvin Graddy

Sworn to and subscribed before me this

_____ 11 _____ day of February, 2021.

_____
Notary Public

My commission expires: 01/02/2022

        [Notary Seal]

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KELVIN GRADDY, an individual, KAVELLE FIELDS, an individual, 4K COIN, LLC, a Georgia limited liability company, KVG INVESTMENTS LLC, a Utah limited liability company, and THE KD9 GROUP, LLC, a Georgia limited liability company, | ) ) ) ) ) ) ) | CIVIL ACTION FILE NO.: |
| Plaintiffs, | ) ) | _____ JURY TRIAL DEMANDED |
| v. | ) ) ) | |
| CARNEGIE ACADEMY, LLC, d/b/a PROSOURCE TAX LIENS a/d/b/a TAX LIEN TOUR, a Utah limited liability company, SPROUT CF FUND, INC., a Utah corporation, SPROUT IRA, LLC, a Utah limited liability company, SPROUT FINANCIAL, LLC, d/b/a SPROUT ADVISORS a/d/b/a/ SPROUT ADVISERS, a/d/b/a SPROUT IRA, a Utah limited liability company, SPROUT INVESTMENT PARTNERS, LLC, a Utah limited liability company, SPROUT RESIDENTIAL FUND, LLC, a Utah limited liability company, SEED CONSULTING, LLC d/b/a SEED CAPITAL CORP., a Nevada limited liability company, JOSHUA CARR, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, EDWARD STEWART, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, and REI HOLDINGS, LLC, a Utah limited liability company, SLICKROCK, LLC, a Nevada limited liability company, SILVERSTRAND, LLC, d/b/a SAVILE CUSTOM CLOTHIERS, a/d/b/a SAVILE ROW, a/d/b/a SAVILE TAILORS, a Utah limited liability company, TONYA NEFF, individually and in her capacity as an owner/member/executive/alter ego of NEFF COMPANIES, INC., a Utah corporation, ZULU MARKETING d/b/a TAX LIEN BUYERS CLUB a/d/b/a TAX LIEN VAULT a/d/b/a MELTDOWN MILLIONAIRE a/d/b/a TAX LIEN | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

| OFFICE, a Utah limited liability company, | ) |
| SUPERSTAR LLC, d/b/a SUPERSTAR INC., | ) |
| a/d/b/a SUPERSTAR LLC, a Utah limited liability | ) |
| company, MAN MADE LLC, d/b/a NINES | ) |
| CLOTHING a/d/b/a CANVAS CLOTHING | ) |
| a/d/b/a CANVAS CLOTHIERS, a Utah limited | ) |
| liability company, and KEYSTONE | ) |
| INVESTMENT GROUP, LLC, a Georgia limited | ) |
| liability company, | ) |
| | ) |
| Defendants. | ) |

## VERIFICATION

PERSONALLY APPEARED before the undersigned officer duly authorized to administer and receive oaths, KAVELLE FIELDS, who, after being duly sworn, state that all of the allegations in the foregoing *Verified Complaint*, are true and correct to the best of my knowledge, information, and belief.

_____(SEAL)
Kavelle Fields

Sworn to and subscribed before me this
____ day of February, 2021.

_____
Notary Public

My commission expires: 02-07-25

[Notary Seal]

PRUTHVI PATEL
NOTARY
EXPIRES
GEORGIA
02-07-2025
PUBLIC
HALL COUNTY

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KELVIN GRADDY, an individual, KAVELLE FIELDS, an individual, 4K COIN, LLC, a Georgia limited liability company, KVG INVESTMENTS LLC, a Utah limited liability company, and THE KD9 GROUP, LLC, a Georgia limited liability company, | ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) ) |
| v. | ) ) ) |
| CARNEGIE ACADEMY, LLC, d/b/a PROSOURCE TAX LIENS a/d/b/a TAX LIEN TOUR, a Utah limited liability company, SPROUT CF FUND, INC., a Utah corporation, SPROUT IRA, LLC, a Utah limited liability company, SPROUT FINANCIAL, LLC, d/b/a SPROUT ADVISORS a/d/b/a/ SPROUT ADVISERS, a/d/b/a SPROUT IRA, a Utah limited liability company, SPROUT INVESTMENT PARTNERS, LLC, a Utah limited liability company, SPROUT RESIDENTIAL FUND, LLC, a Utah limited liability company, SEED CONSULTING, LLC d/b/a SEED CAPITAL CORP., a Nevada limited liability company, JOSHUA CARR, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, EDWARD STEWART, individually and in his capacity as an owner/member/executive/alter ego of REI HOLDINGS, LLC, and REI HOLDINGS, LLC, a Utah limited liability company, SLICKROCK, LLC, a Nevada limited liability company, SILVERSTRAND, LLC, d/b/a SAVILE CUSTOM CLOTHIERS, a/d/b/a SAVILE ROW, a/d/b/a SAVILE TAILORS, a Utah limited liability company, TONYA NEFF, individually and in her capacity as an owner/member/executive/alter ego of NEFF COMPANIES, INC., a Utah corporation, ZULU MARKETING d/b/a TAX LIEN BUYERS CLUB a/d/b/a TAX LIEN VAULT a/d/b/a MELTDOWN MILLIONAIRE a/d/b/a TAX LIEN | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION FILE NO.:

_____

JURY TRIAL DEMANDED

OFFICE, a Utah limited liability company,                    )
SUPERSTAR LLC, d/b/a SUPERSTAR INC.,                        )
a/d/b/a SUPERSTAR LLC, a Utah limited liability            )
company, MAN MADE LLC, d/b/a NINES                          )
CLOTHING a/d/b/a CANVAS CLOTHING                            )
a/d/b/a CANVAS CLOTHIERS, a Utah limited                    )
liability company, and KEYSTONE                             )
INVESTMENT GROUP, LLC, a Georgia limited                    )
liability company,                                         )
                                                           )
        Defendants.                                        )
_____            )

## VERIFICATION

PERSONALLY APPEARED before the undersigned officer duly authorized to administer

and receive oaths, THE KD9 GROUP, LLC, by and through Kavelle Fields, its Manager, who,

after being duly sworn, state that all of the allegations in the foregoing *Verified Complaint*, are true

and correct to the best of my knowledge, information, and belief.

THE KD9 GROUP, LLC

By: _____
Kavelle Fields, its Manager

Sworn to and subscribed before me this
_11_ day of February, 2021.

_____
Notary Public

My commission expires: _02-07-25_

        [Notary Seal]



# EXHIBIT "A"



# CARNEGIE

| DATE | 1 · · 19 |
| ORDER NO | 0120A |
| CLIENT ID NO | |

## PROSOURCE TAX LIEN PROGRAM

(Please write legibly and clearly)

**CLIENT NAME:** Kelvin V Brady

**STREET ADDRESS:** 1530 River Man CT   **CITY:** Lawrenceville   **STATE:** GA   **ZIP:** 30046

**EMAIL ADDRESS:** KelvinGBrady3l@gmail.com

**MOBILE PHONE:** 404 503 8089

**PARTNER NAME:** Kavelle Fields

**PARTNER STREET ADDRESS:** 726 Summer Drive   **CITY:** Sandy Springs   **STATE:** GA   **ZIP:** 30328

**PARTNER EMAIL ADDRESS:** Kavellenkfields@gmail.com

**PARTNER MOBILE PHONE:** 404 . . . . .

| PRODUCT DESCRIPTION | RETAIL PRICE |
|---|---|
| **TAX LIEN INVESTING EDUCATION COURSE** | $1,997.95 |
|   - **3-Day Tax Lien Workshop** | included |
|     - Three crucial days of training on tax lien and real estate investing fundamentals from a professional.  *You can't miss it!* | included |
|   - **Access to ProSourceTaxLiens.com** | included |
|     - Training Videos, Secondary Market Training, Bonus Downloads, Digital Kit, Investor Forum, State Resource Guides, | included |
|     Finance Network, Tax Deed Evaluator, County Auction Calendar, County Auction Lists, Online Resource Links, and more. | |
|   - **Access Tax Lien Hotline Team and Support Staff**  **(844-292-2156)** | included |
|     - Get answers to your questions about the fundamentals of tax lien and deed investing from our qualified staff. | included |
|   - **Tax Lien Quick Start Kit** | included |
|     - Quickly gain the necessary foundational information to become a tax lien investor. | included |
|   - **Online Auction Center** | included |
|     - Participate in daily practice auctions, and live online auctions to invest from the comfort of your home. | included |
| **TOTAL** | **~~$1,997.95~~** |
| | 597- |

Amex

MAY NEED NEW DATES!

**PAYMENT TYPE:** (CREDIT CARD)   CHECK   CASH

**PAYMENT INFO:** (LAST FOUR DIGITS ONLY)

**APPROVAL CODE:** 4498381381   209186

**CLIENT SIGNATURE:** [signature]

NOTE / COMMENTS

**Customer Service:** If you have any questions about this product, please feel free to contact our Customer Service Department at 844-292-2156.

By signing above, I hereby authorize the processing of my tuition payment in exchange for the products and services stated above. I also acknowledge that I have received the physical materials referenced above and that I have read and agree to the terms and conditions described in the on the Fulfillment, Return, Non-Sufficient Funds, Guarantees & Representations, Website Access, and Dispute Resolution on the reverse side of this Purchase Order. You may cancel this transaction at any time prior to three (3) business days after purchase.

## THANK YOU FOR YOUR BUSINESS!

# EXHIBIT "B"

 **Sprout**

**LLC ENTITY SETUP QUESTIONNAIRE**

**Name:** Kelvin V Graddy

**Email Address:** work:kelvingraddy31@gmail.com

**Phone Number:** work:404-503-8089

**Type of Entity:** Single-Member Limited Liability Company

**State of Registration:** Utah   Holding OA

**Business Name:** KVG Investments LLC

**Purpose of the Business:** Self-Directed Individual Retirement Account Management

**Name of Registered Agent:** Sprout RA Services, LLC

**Address of Registered Agent:** 2912 W Executive Parkway Suite 120, Lehi, Utah 84043

**Name of Single Member:** IRA Services Trust Company, Custodian, FBO Kelvin V Graddy      , IRA

**Address of Single Member:** PO Box 7080, San Carlos, CA 94070-7080

**Ownership Percentage of Member:**      100%

**Telephone Number:**   work:404-503-8089

**Social Security Number (to obtain Tax ID Number):** 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

**Manager Signature:** _____

**Printed Name:** Kelvin V Graddy

The documents prepared for you are "form" documents akin to those of online entity preparation services or other computer software programs designed to create such documents. Any information given to you about Utah entities is general in nature only and not intended to be legal advice for your specific circumstances. We make no representation or warranty regarding the use of your entity. If you need specific advice to create more than a "standard" entity, please consult with an attorney in your state.

BY providing your SSN, you grant us authority as your attorney "in fact" to attempt to obtain and EIN as if you were making such effort yourself.

 **Sprout**      2912 Executive Parkway Suite 120      Lehi, Utah 84043

# EXHIBIT "C"

 **Sprout**

**Self Directed IRA Setup Summary**

## Type of Self Direct IRA Account

☐ **Traditional IRA Account**

☑ **Roth IRA Account**

Would you like your new IRA account to have checkbook control?

Yes ☑     No ☐

## What You Receive

☑ **Entity Setup (Required for Checkbook Control Accounts)\***

✔ Articles of Organization
✔ Employment Identification Number (EIN)
✔ Operating Agreement
✔ Registered Agent Service\*\*

☑ **Self Directed IRA Setup**

✔ Sprout IRA will facilitate IRS compliant transition of accounts from current trustee to IRA Services and/or TD Ameritrade.
✔ Access to Online Account Management Portal
✔ Election of Traditional or Roth IRA
✔ IRA Check writing ability (Checkbook Control)\*\*\*
✔ Access to Special Advisor to IRA†

*\*Additional fees may be required for setup*
*\*\*Only available if entity is registered in the State of Utah; first year included in cost, additional fee upon annual renewal of entity*
*\*\*\*You must comply with all state and federal laws, rules and regulations governing Prohibited Transactions, as defined by the Internal Revenue Code.*
*†Custodian may require a Special Advisor. You may select your own Special Advisor if you wish. Special Advisor may assess additional fees for services performed.*
*Please refer to agreements for additional terms and conditions of this transaction.*

SIGNATURE _____     DATE 2019-01-29

**Sprout**     2912 Executive Parkway Suite 120     Lehi, Utah 84043

# EXHIBIT "D"



**IRA SETUP AGREEMENT**

By signing this IRA SETUP AGREEMENT ("Agreement"), <u>Kelvin V Graddy</u> ("Client") has retained Sprout IRA, LLC ("Sprout") to provide the requested services on the terms and conditions set forth in this agreement.

1. **Services.** Sprout agrees to provide the following services (the "Services") to Client:
   a. Assist client to complete and provide appropriate documentation to establish a valid Self-Directed IRA ("SDIRA") in compliance with state and federal laws.
   b. Refer client to a Custodian of the SDIRA.
   c. Using information provided by client, prepare necessary documents for Client to establish a business entity for the SDIRA, including State registration filings, operating agreement and business employment identification number (EIN). Client is responsible for paying all state filing fees and any registered agent fees associated with the business entity.

2. **Payment.** As consideration for the Services, Client shall pay to Sprout, in advance, the amounts corresponding to applicable products and prices listed on Exhibit A (the "Payment"). Sprout has no obligation to provide the Services to Client until Payment is received and funds are cleared. Payment may be made through ACH, wire transfer, or credit card.

3. **Additional Work.** Client understands and acknowledges that additional work beyond the scope of this Agreement must be negotiated separately and will require a separate Agreement.

4. **Client Responsibilities.** Client understands and acknowledges that Sprout is not an employee of Client and that this will be a collaborative, professional relationship where mutual professional respect, courtesy and consideration are expected. Client understands the importance of communication and agrees to respond to questions, emails, requests for information and other communications from Sprout in a timely manner. Client may be required to sign Federal, State or municipal forms as part of its SDIRA and agrees to do so and return such forms to Sprout for processing in a timely fashion. Client shall remit any necessary payments required to the appropriate agency or entity, prior to the deadline for making such payments.

5. **No Representations.** Sprout makes no representations that:
   a. Sprout will provide services beyond the scope of this Agreement;
   b. Client is more likely to realize a profit or gain on any investment(s) made through the SDIRA and/or its associated business entity as a result of the Services Sprout provides.

6. **Indemnification.** Client shall indemnify, defend and hold Sprout harmless from any and all suits, costs, damages, or proceedings resulting from (i) inaccurate information provided to Sprout by Client; (ii) failure to maintain the business entity in accordance with State and local laws in which the entity is registered; (iii) otherwise failing to comply with Client's responsibilities described in this Agreement. Sprout will not be held liable for incidental, consequential or indirect damages to Client, including without limitation damages for loss of profits, or loss of information.

7. **Termination; Refund.** If you desire to cancel your agreement with Sprout, you may request a refund of your payment, subject to the terms and conditions herein, by emailing Sprout at support@sproutIRA.com within ten (10) business days of your purchase. Notice of cancellation and refund requests will not be considered if not received at the foregoing email address. If your account has not been created with your IRA Custodian or your account has been created, but your entity setup has **not** been submitted for processing with the relevant state prior to receiving your notice of cancellation, then you will be given a full refund. If your account has been created and your entity setup has already been submitted for processing with the relevant state prior to receiving your notice of cancellation, you will receive a refund of one-half of your purchase price, after deducting



2912 Executive Parkway Suite 120                    Lehi, Utah 84043



**IRA SETUP AGREEMENT**

any filing fees paid to the state on your behalf. If your account has been created and your entity has been created and funded, you are not eligible for a refund regardless of when the refund request is made.

Notwithstanding the foregoing, regardless of when a refund request is received, Sprout is not responsible to refund any amounts paid toward fees charged by an IRA custodian for its services. It is your responsibility to contact the IRA custodian to cancel any agreements with the custodian and request refunds for amounts paid. You are responsible for any and all fees charged by the custodian to transfer your funds to a new custodian or account.

Sprout is not responsible for contacting the IRS regarding any EINs obtained prior to notice of cancellation and is not responsible to file any tax returns related to any entity, regardless of notice of cancellation. Any approved refunds will be credited back to the account or card from which payment was received and will be processed within ten (10) business days from the date of the receipt of notice of cancellation.

Sprout reserves the right to deny all refund requests received ten (10) business days after purchase.

8. **Miscellaneous.** This obligations of the Parties under this Agreement is separate and distinct from any obligations of the Parties under any other agreement entered into. Client is not relying on any representations to enter into this Agreement except those made explicitly herein. This Agreement shall be governed and construed according to the laws of the state of Utah. Any suit or action relating to this Agreement shall be instituted and commenced exclusively in Utah County, State of Utah and the Parties submit themselves to the jurisdiction of the State of Utah. The prevailing party shall be entitled to its reasonable costs and attorney's fees.

9. **Disclosure of Information.** Client herby authorizes Sprout IRA, LLC to release any and all personal information gathered by Sprout IRA, LLC, to Sprout Financial, LLC to assist in the process of establishing an investment management agreement and/or advisor relationship with Sprout Financial, LLC. Client may, at any time, revoke this authorization by written instruction to any member of Sprout, IRA, LLC.

**Client Information:**
Kelvin V Graddy
30046
Lawrenceville      Georgia 30046
Sprout IRA, LLC
2912 Executive Parkway, Suite 120
Lehi, Utah 84043

IN WITNESS WHEREOF, the parties have caused their authorized agents to execute this Agreement, effective as of

**Client Signature:**

*Kelvin V Graddy*

Kelvin V Graddy
Client Name





**IRA SETUP AGREEMENT**

## EXHIBIT A

Fee Schedule and Payment Authorization

| Service | Price |
|---|---|
| Self-Directed IRA Account Setup | $390.00 |
| Entity Setup and Document Preparation (LLC) | $375.00 |
| Limited Liability Kit | $112.00 |
| State Filing Fees (Utah) | $72.10 |
| Registered Agent Services (Utah)* | $0.00 |
| *free for one year - $99 annually thereafter | |
| Total | $949.10 |

I Kelvin V Graddy authorize Sprout IRA, LLC to charge my credit card for $949.10 relating to the document preparation of my Self-Directed IRA.

'Visa ending in 2687' attached

Signature: _____    Date: 2019-01-29

*I understand that this authorization is valid and enforceable. If the actual attempt to charge falls on a weekend or holiday, I understand that the payment may be processed on the next business day. In the case of a Transaction being rejected for any reason, I understand that Sprout IRA, LLC may at its discretion attempt to process the charge again within 30 days, and agree to an additional $25 charge for each declined attempt which may be initiated as a separate transaction. I certify that I am an authorized user of this credit card and will not dispute this transaction with my credit card company; so long as the transactions correspond to the terms indicated in this authorization form.*



# EXHIBIT "E"

File Number: 11163109

# LLC

## Certificate of Organization
## OF
## KVG Investments, LLC

**The undersigned person(s) do hereby adopt the following Certificate of Organization for the purpose of forming a Utah Limited Liability Company.**

### Article I
**The name of the limited liability company is to be** KVG Investments, LLC

### Article II
**The purpose or purposes for which the company is organized is to engage in:**
To manage self-directed individual retirement account funds

**The Company shall further have unlimited power to engage in or to perform any and all lawful acts pertaining to the management of any lawful business as well as to engage in and to do any lawful act concerning any and all lawful business for which a Limited Liability Company may be organized under the Utah Limited Liability Company Act and any amendments thereto.**

### Article III
**The Company shall continuously maintain an agent in the State of Utah for service of process who is an individual residing in said state. The name and address of the initial registered agent shall be:**

*(Registered Agent Name & Address)*
SPROUT RA SERVICES, LLC
2912 Executive Parkway Suite #120
Lehi, UT, 84043



State of Utah
Department of Commerce
Division of Corporations & Commercial Code

This certifies that this registration has been filed and approved on 6, February 2019 in the office of the Division and hereby issues this Certification thereof.

JASON STERZER
Division Director

## Article IV

*Name, Street address & Signature of all members/managers*

Manager #1
Kelvin Graddy
1530 River Main Court
Lawrenceville, GA 30046
Kelvin Graddy
Signature

**DATED** 6  February, 2019.

## Article V

Management statement
This limited liability company will be managed by its Managers

## Article VI

**Records required to be kept at the principal office include, but are not limited to the following:**

### Article VI.1

A current list in alphabetical order of the full name
and address of each member and each manager.

### Article VI.2

A copy of the stamped certificate of Organization
and all  *certificates of amendments thereto.*

### Article VI.3

Copies of all tax returns and financial statements
of the company for the three most recent years.

### Article VI.4

A copy of the company's operating agreement and minutes of each meeting of members.

## Article VII

**The street address of the principal place of business is:**

1530 River Main Court
Lawrenceville, GA 30046

## Article VIII

**The duration of the company shall be  perpetual**

Under GRAMA {63-2-201}, all registration information maintained by the Division is classified as public record. For confidentiality purposes, the business entity physical address may be provided rather than the residential or private address of any individual affiliated with the entity.

# EXHIBIT "F"



## TAX LIEN WORKSHOP

# ADMISSION CERTIFICATE

Friday, Saturday, and Sunday
February 8th, 9th, & 10th, 2019
Atlanta Marriott Perimeter Center
246 Perimeter Center Parkway Northeast
Atlanta, GA 30346
**Congratulations! Success starts here!**

It's crucial that you attend this workshop to begin your new investing journey.
Arrive at 8:30am to check in. We will start promptly at 9:00am.

**PROSOURCE TAX LIENS**

CERTIFICATE

PRESIDENT

# EXHIBIT "G"

# PROSOURCE
## Tax Liens

DATE **FEB 10, 2019**

## ADVANCED ENROLLMENT FORM

(Please write legibly and clearly)

**CLIENT NAME:** Kelvin Graddy

**ADDRESS:** 1570 Rwen paint CT   **CITY:** Lawrenceville **ST:** GA **30046**

**EMAIL ADDRESS:** Kelvingraddy310@gmail.com

**MOBILE PHONE:** 404 428 803 8089

**PARTNER NAME:** Kavelle Fields

**PARTNER ADDRESS:**   **CITY:**   **ST:**

**PARTNER EMAIL ADDRESS:**

**PARTNER MOBILE PHONE:** 678-622-2625

| PRODUCT DESCRIPTION | RETAIL PRICE |
|---|---|
| - Six-Week Quick Start Webinar Course  *(Six sessions)* | included |
| - Three-Day Advanced Tax Lien Tour | included |
| - Two-Day Tax Lien Mastery Training | included |
| - Four-Day Real Estate Summit *(San Diego)* | included |
| - Two-Day Wholesale Mastery Bootcamp | included |
| - Two-Day Commercial, Cash Flow, and Multi-Unit Bootcamp | included |
| - One-Day Asset Protection Bootcamp | included |
| - Tax Lien & Real Estate Software: TaxLienCloud.com & Property Edge Pro  *(1 year membership included)* | included |
| - Access Tax Lien and Deed Inventory Listing | included |
| - On-Demand Online Tax Lien Training | included |
| - Turnkey Cash Flow Club Membership | included |
| - Access to Tax Lien & Real Estate Hotline  *(2 years of live support)* | included |
| TODAY'S DISCOUNTED PRICE | $49,994 |

*DIAMOND EXECUTIVE*

| PRODUCT DESCRIPTION | RETAIL PRICE |
|---|---|
| - Six-Week Quick Start Webinar Course  *(Six sessions)* | included |
| - Four-Day Real Estate Summit *(San Diego)* | included |
| - Choose One: Three-Day Advanced Tax Lien Tour OR Two-Day Tax Lien Mastery Training | included |
| - Two-Day Wholesale Mastery Bootcamp | included |
| - Tax Lien & Real Estate Software: TaxLienCloud.com & Property Edge Pro  *(1 year membership included)* | included |
| - Access Tax Lien and Deed Inventory Listing | included |
| - On-Demand Online Tax Lien Training | included |
| - Access to Tax Lien & Real Estate Hotline  *(1 year of live support)* | included |
| TODAY'S DISCOUNTED PRICE | $37,994 |

*PLATINUM EXECUTIVE*

- Balance from seed. AS-IS

| PAYMENT TYPE: | CREDIT CARD    CHECK    CASH | TOTAL PRICE: 39,994.00 |
|---|---|---|
| PAYMENT INFO: | AMOUNT: | AMOUNT PAID: |
| CLIENT SIGNATURE: | | AMOUNT DUE: |
| ADDITIONAL CARDS: | | |
| PAYMENT INFO: Visa 2369  *(LAST FOUR CHECK NUMBER, ETC.)* | AMOUNT: 15,000 | |
| PAYMENT INFO: AX 92004  *(LAST FOUR CHECK NUMBER, ETC.)* | AMOUNT: 15,000 | |
| PAYMENT INFO:  *(LAST FOUR CHECK NUMBER, ETC.)* | AMOUNT: | |
| PAYMENT INFO:  *(LAST FOUR CHECK NUMBER, ETC.)* | AMOUNT: | |

NOTES / COMMENTS  BH2

**Customer Service:** If you have any questions about this product, please feel free to contact our Customer Service Department at 844-292-2156.

*By signing above, I hereby authorize the processing of my tuition payment in exchange for the products and services stated above. I also acknowledge that I have received the physical materials referenced above and that I have read and agree to the Terms and Conditions described on the reverse side of this Purchase Order Form. I understand that I can cancel this transaction at any time prior to midnight three (3) business days from today's date. I also understand that my personal success from this program will be a result of my own efforts.*

| PROSOURCE  TAX  LIENS  |  2831  ST.  ROSE  PARKWAY  |  SUITE  200  |  HENDERSON  |  NEVADA  |  (844)  292-2156  |  SUPPORT@PROSOURCETAXLIENS.COM

# EXHIBIT "H"



**PROSOURCE**
**Tax Liens**

# COMMITMENT
## *GUARANTEE*

### WE COMMIT TO WORK WITH YOU UNTIL YOU SUCCEED.

IF AFTER COMPLETING THE ONLINE PROGRAM, ATTENDING THE
APPLICABLE WORKSHOPS AND TRAININGS, FOLLOWING THE RECOMMENDATIONS
OF THE PROSOURCE INSTRUCTORS, YOU HAVE NOT COMPLETED ONE TAX LIEN
OR TAX DEED DEAL, WE WILL CONTINUE TO HELP YOU UNTIL YOU HAVE EARNED
AT LEAST 100% OF YOUR INVESTMENT IN OUR PROGRAM.

COMMITTED

_____
AUTHORIZED SIGNATURE

_____
CLIENT NAME

_____
DATE

# EXHIBIT "I"

---------- Forwarded message ---------
From: **kelvin graddy** <kelvingraddy31@gmail.com>
Date: Thu, Feb 14, 2019, 3:24 PM
Subject: Re: Seed Capital Pending Applications
To: Addison Doyon <addison@seedcapital.com>


Hey Addison,

I left you a voice mail about the calls I made today.

Bank of America Cash Reward - 888-231-6262 -Application ID:  4084313657 - Application Date = 02/13/19 - application is being move forward released 24hrs for response

Barclays Choice Rewards - 866-408-4064 -  - Application Date = 02/12/19 - approved for 11,000 dollars
Chase Freedom Unlimited (New) - 888-609-7805 -  - Application Date = 02/13/19 - application is moving forward should get response btw 7 to 14 days.

On Thu, Feb 14, 2019, 1:27 PM Addison Doyon <addison@seedcapital.com wrote:
 Dear Kelvin,

 I hope you are having a great day today!

 A few of the banks want to speak with you to verify identity before they approve the cards.  Please call the banks below, say you recently applied for a card, and want to check on the status.  The e-mail used on the applications was kelvingraddy32@gmail.com (one we created to track the applications) and the income was $78,000. They may request more documentation such as a utility bill, SS card, State Issued ID, etc.

 **ACCOUNTS IN REVIEW**

 Bank of America Cash Reward - 888-231-6262 -Application ID:  4084313657 - Application Date = 02/13/19

 Barclays Choice Rewards - 866-408-4064 -  - Application Date = 02/12/19

 Chase Freedom Unlimited (New) - 888-609-7805 -  - Application Date = 02/13/19

 Please let me know the outcome of each call. Thank you.

1

Sincerely,

Addison Doyon
*Client Relations Manager*
**Seed Capital Corp**
P: 866-988-7333 Ext. 114
Text Only:  702-721-9805
E: addison@seedcapital.com
www.seedcapital.com

1707 Village Center Cir. Suite 200, Summerlin, NV 89134

# EXHIBIT "J"

---------- Forwarded message ---------
From: **kelvin graddy** <kelvingraddy31@gmail.com>
Date: Thu, Feb 14, 2019, 3:24 PM
Subject: Re: Seed Capital Pending Applications
To: Addison Doyon <addison@seedcapital.com>

Hey Addison,

I left you a voice mail about the calls I made today.

Bank of America Cash Reward - 888-231-6262 -Application ID:  4084313657 - Application Date = 02/13/19 - application is being move forward released 24hrs for response

Barclays Choice Rewards - 866-408-4064 -  - Application Date = 02/12/19 - approved for 11,000 dollars
Chase Freedom Unlimited (New) - 888-609-7805 -  - Application Date = 02/13/19 - application is moving forward should get response btw 7 to 14 days.

On Thu, Feb 14, 2019, 1:27 PM Addison Doyon <addison@seedcapital.com wrote:
 Dear Kelvin,

 I hope you are having a great day today!

 A few of the banks want to speak with you to verify identity before they approve the cards.  Please call the banks below, say you recently applied for a card, and want to check on the status.  The e-mail used on the applications was kelvingraddy32@gmail.com (one we created to track the applications) and the income was $78,000. They may request more documentation such as a utility bill, SS card, State Issued ID, etc.

**ACCOUNTS IN REVIEW**

Bank of America Cash Reward - 888-231-6262 -Application ID:  4084313657 - Application Date = 02/13/19

Barclays Choice Rewards - 866-408-4064 -  - Application Date = 02/12/19

Chase Freedom Unlimited (New) - 888-609-7805 -  - Application Date = 02/13/19

Please let me know the outcome of each call. Thank you.

Sincerely,

Addison Doyon
*Client Relations Manager*
**Seed Capital Corp**
P: 866-988-7333 Ext. 114
Text Only:  702-721-9805
E: addison@seedcapital.com
www.seedcapital.com

1707 Village Center Cir. Suite 200, Summerlin, NV 89134

# EXHIBIT "K"

---------- Forwarded message ---------
From: <addison@seedcapital.com>
Date: Wed, Feb 20, 2019, 6:27 PM
Subject: Seed Capital Credit Total Update - 02/20/19
To: <kelvingraddy31@gmail.com>


Seed Capital Email Update - 02/20/19

Hello Kelvin,

Here is an update on the Cash Credit Line Applications that we are working on as of today.

APPROVED ACCOUNTS - Total Lines Confirmed So Far = $65,700

5/3 Bank Truly Simple - $10,000 - 0% for 15 months on Purchases and BTs - 800-972-3030 -
Bank of America BankAmericard - $0 - 0% on Purch and BTs for 15 months, BT must be done within 60 days, $0 BT fees in the first 60 days - 888-231-6262 - 4084401949
Bank of America Cash Reward - $8,000 - 0% on Purchases and BTs for 12 months, BTs must be done within 60 days of account opening - 888-231-6262 - 4084313657
Barclays Choice Rewards - $18,000 - 0% on BTs for 15 months, BT must be done in first 45 days - DO NOT USE FOR PURCHASES - 866-408-4064 - Verified KH inc from 11k
Citi Diamond Preferred - $8,600 - 0% for 18 months on BTs and Purchases - 888-201-4523 -
Citi Rewards - $8,600 - 0% for 12 months on BTs and Purchases - 888-201-4523 -
Wells Fargo Propel Amex - $12,500 - 12 months 0% on Purchases and BTs - 800-932-6736 - 20190441003786


Congratulations, some of your applications have been accepted and credit lines granted.
If there is a $0 amount specified next to the Bank name it is because Bank underwriting has not confirmed a credit line amount yet. Please call the number listed for the bank above to obtain these credit limits.
We ask that you DO NOT USE any of these cards until you consult with us.

------------------------------------------------------------------------

ACCOUNTS IN REVIEW

GM BuyPower (Capital One) - 877-860-2113 - - Application Date = 02/12/19
Chase Freedom Unlimited (New) - 888-609-7805 - 2/14 pending - Application Date = 02/13/19


These accounts are still being evaluated by the bank. They may request more documentation such as a utility bill, SS card, State Issued ID, etc. Please call the numbers listed above as soon as possible to help expedite the approval process. Many banks will issue an approval on the spot once you call in to get the application out of review status.

---------------------------------------------------------------------------

DECLINED Applications

AMEX Cash Magnet - 1-866-314-0237 -

Even with the best preparation declines do happen. Please keep in mind that Banks have their own internal client scoring systems, and if you have ever carried high balances for longer periods of time, filled BK against them, or had late payments (even if less than 30 days) it could result in a decline.

We will continue to update you as additional applications are submitted and more information becomes available.

Thanks!

Addison Doyon

addison@seedcapital.com
www.SeedCapital.com

2

# EXHIBIT "L"

2/22/2019

# Merchant: SEED CONSULTING LLC

1707 Village Center Circle
Suite 200
Las Vegas, NV 89134
US

866-988-7333

Order Information

Description:
Order Number:
Customer ID:        230495

P.O. Number:
Invoice Number:        230495

**Billing Information**

Kelvin Graddy
1530 River Main Ct
Lawrenceville, GA 30046
US

**Shipping Information**

| | |
|---|---|
| Shipping: | 0.00 |
| Tax: | USD 299.70 |
| **Total:** | **USD 2,997.00** |

Payment Information

| | |
|---|---|
| Date/Time: | 22-Feb-2019 12:02:22 PST |
| Transaction ID: | 61575209660 |
| Transaction Type: | Authorization w/ Auto Capture |
| Transaction Status: | Captured/Pending Settlement |
| Authorization Code: | 75686B |
| Payment Method: | MasterCard XXXX2166 |

# EXHIBIT "M"

**Graddy, Kelvin V**

| | |
|---|---|
| **From:** | kelvin graddy <kelvingraddy31@gmail.com> |
| **Sent:** | Tuesday, March 05, 2019 6:17 PM |
| **To:** | Graddy, Kelvin V |
| **Subject:** | [EXTERNAL] Fwd: Silverstrand LLC Transaction Receipt |

---------- Forwarded message ---------
From: <support@taxlienoffice.com>
Date: Tue, Mar 5, 2019, 6:13 PM
Subject: Silverstrand LLC Transaction Receipt
To: <kelvingraddy31@gmail.com>

-------------------------------------
General Information
-------------------------------------
Merchant Account: Silverstrand LLC
Date/Time : 03/05/2019 4:13:17 PM MST

-------------------------------------
Transaction Information
-------------------------------------
Transaction Amount : $9,994.00
Transaction ID : 4566797363
Authorization Code : 09552Z
Transaction Type : Card Sale
Response : Approved
AVS Results : Address match only
CSC Results : CVV2/CVC2 Match

-------------------------------------
Customer Billing Information
-------------------------------------
First Name : Kelvin
Last Name : Graddy
Address :
City :
State :
Zip Code : 30046,
Country : US
Phone :
Email : kelvingraddy31@gmail.com

-------------------------------------
Customer Shipping Information
-------------------------------------
First Name :
Last Name :

# EXHIBIT "N"



# ENROLLMENT
# AGREEMENT

Doc ID: f8ce42fbab58ea2d23f2b2258fc6d29b8f95133d

# Enrollment Agreement

*This enrollment agreement is between Pro Source Tax Liens or its nominee ("PSTL" or "We")*
*and* Kelvin Graddy & Kavelle Fields _____ *("YOU") and is dated* 3/15/2019 _____ .

### 1. PURCHASE AND ENROLLMENT PACKAGE
   #### a. You have selected enrollment in the following program(s):

   ☑ Jump to Action! Custom Investor Blueprint

   ☑ Premier 1-on-1 Tax Lien Coaching (10 __ weeks/or sessions)

   ☑ Premier 1-on-1 Real Estate Coaching (14 __ weeks/or sessions)

   ☑ Assigned Senior Portfolio Advisor (Life Time Access)

   ☑ Diamond Reserved Inventory (Life Time Access)

   ☑ Lifetime membership  and access to Pro Source Tax Liens

   ☑ Investment Tracking Software

   ☑ Access to Client Success Team (Life Time Access)

   ☑ Access  to  Reserved Inventory (Life Time Access)

   ☐ Reserved Spot at 4-Day Real Estate Summit

   ☐ Reserved Spot at Tax Lien Buying Tour

   ☐ _____ Tax Lien Portfolio Credit

   ☑ Inventory Manager (Life Time Access)

   ☐ Asset Protection Bootcamp

   ☐ Advanced Wholesale Bootcamp

   ☐ Property Edge Pro Software

**TOTAL PURCHASE PRICE** $21,000.00 _____

Doc ID: f8ce42fbab58ea2d23f2b2258fc6d29b8f95133d

**II.      Acknowledgments.** Because you have been accepted into our program, you acknowledge the following:

- Any communications with PSTL or its affiliates may be monitored or recorded. To the best of your knowledge, there are no circumstances that would inhibit or prevent you from participating in this program. You understand and agree that PSTL or its affiliates may contact you via phone, email, or text messaging. If you do not want to receive any of these forms of communication, you must send your request in writing to support@taxlienoffice.com.
- You understand the financial commitment you are making today by entering into this enrollment agreement and confirm those obligations.
- You were comfortable with your conversations with PSTL and agree that you are voluntarily entering into this agreement.
- You understand that this is an educational coaching program and not a specific business opportunity of any kind.
- You understand that you will be offered additional services as part of the program that you can accept or deny at your own will.
- You agree that no claims of future earnings have been presented to you by any representative of PSTL, and that we do not represent you will earn any specific amount of money.



**III. Verification of Information.** By initialing below, you verify that the following account information we have on file for you is accurate:

Kelvin Graddy & Kavelle Fields          1530 River Main Ct, Lawrenceville, GA 30046

404-503-8089                                        kelvingraddy31@gmail.com

**IV.  Right of Rescission**

a.   Your investment today is being purchased under and is governed by the laws of the State of Utah. **In addition to any right to otherwise revoke an offer, you the purchaser may cancel this sale up to midnight of the third business day after the receipt of the merchandise or premium, whichever is later. All requests to rescind must be made in writing to one of the following:**

> **Mail:** Pro Source Tax Liens
>
> 2912 W Executive Pkwy, Ste 120
> Lehi, UT 84043
> **Email:** lacie@taxlienoffice.com

b.   Due to the investments of time, resources, services, and products that we will make on your behalf to help you succeed and that cannot be recouped by PSTL, all cancellation requests made after this three-day period will not be eligible for a refund of any kind whatsoever.

c.   You understand and agree that the value you will derive from our products and/or services will be a function of the level of effort you put forth, your level of comprehension, market conditions, individual monetary investments, business experience, expertise, and your level of desire and willingness to take action on the information provided. We have not, cannot and will not make any guarantee of success, income, profit, or revenue of any kind, whether explicit or implied. You acknowledge that you have not relied on any such representation or guarantee in entering into this Agreement.

Doc ID: f8ce42fbab58ea2d23f2b2258fc6d29b8f95133d

a.   **Use of Products**

All material you receive from PSTL is proprietary to PSTL and/or the affiliates it works with to fulfill the education, resources, services, and products included in your package. You are purchasing these products and/or services for your own use and not for distributions or resale, which is expressly prohibited.

b.   **Payment Terms**

You agree to pay PSTL according to the information outlined under this section titled, "Payment Terms". Your payment to PSTL today will be made as follows:

**Payment type:**

☑Credit Card ☐ ACH

Card Type: Visa

Last 4 Digits: 2209

Name on Card: Kelvin Graddy

Amount to be processed: $ $6,000.00

☑ Credit Card ☐ ACH

Card Type: Mastercard

Last 4 Digits: 0393

Name on Card: Kelvin Graddy

Amount to be processed: $ $7,500.00

☑ Credit Card ☐ ACH

Card Type: Mastercard

Last 4 Digits: 2311

Name on Card: Kelvin Graddy

Amount to be processed: $ $7,500.00

Bank: _____

Name on Account: _____

Last 4 Digits: _____

Amount to be processed: $ _____

In the event that any balance remains unpaid and requires financing:

Financed Amount: $ _____

*Note when paying by credit card: because of our accounting procedures, your credit card statements may show multiple transactions.*

Date: 3/15/2019

**Rights and Responsibilities.**

a.  In the event of a claim or dispute, you will first negotiate with us in good faith. If a resolution cannot be achieved, you agree that any court proceedings will take place in Utah County, State of Utah and you agree to jurisdiction of that State. This Agreement is governed by the laws of the State of Utah without regard to principles of conflicts of law.

b.  As a user of our programs and materials, you will be invited to provide success stories, testimonials or other opinions about your experiences. You agree to be honest, truthful and complete in your statements and representations of success you provide. By providing such opinions, you hereby grant PSTL and its affiliates the right to use your testimonials and opinions, or any segment thereof, in whole or in part (with minor editions for clarity if necessary), for promotional purposes without compensation to you. Your authorization to use success stories and testimonials includes your permission to use such statements and information in all mediums including newsletters, web pages, and promotional materials. This authorization includes the right for PSTL to use your name, voice, image, film, video, audio recordings or statements, or any derivative work, in all media, and you waive any right to inspect or approve such use. PSTL may contact you at a later date for additional information and clarification regarding your experiences and successes.

c.  We invest substantial amounts of time and funds in the research and development of our technologies, educational materials, systems, and coaches, which are for the use and benefit of its students. PSTL may suggest third-party products or services creates a relationship be-tween you and the third-party provider, and PSTL disclaims any responsibility for the purchase or the relationship, even if PSTL receives value for suggesting such third-party prod-ucts or services.

d.  We value your privacy. Any personally identifiable or financial information you provide us will only be used for the purposes for which it was obtained.



**V.  Program Terms and Conditions**

a.  You were brought aboard because you committed to the following key commitments:

   - You will commit 3-5 hours per week to this program, and use the coaching hotline as directed by your Senior Portfolio Advisor.
   - You will have scheduled appointments with your Senior Portfolio Advisor. Any rescheduling of your appointments will be mutually agreed upon by you and your coach. Please provide a minimum of twenty-four (24) hours' notice of any need to reschedule.
   - You will take action on principles you learn, including doing all assignments, and report back to your coach as directed.

b.  Helping you succeed is our top priority. Our program is educational in nature. We cannot guarantee or represent that you will earn any specific amount of money. If we have not met or exceeded your expectations in the program, we will continue to work with you at our own expense until those expectations are met.

c.  Your education will include both one-on-one telephone education sessions along with online recorded education sessions. One-on-one education sessions with your Senior Portfolio Adviser will typically be scheduled at least once a week. Your trainer will call you for your one-on-one session at the times agreed to and scheduled by you. If you ever need to reschedule a one-on-one

personal education session, please do so at least 48 hours in advance. To reschedule a ses-sion, please call the scheduling department (at our education office) at 1-801-855-5771. Because the Senior Portfolio Adviser's time is valuable, attempting to reschedule a personal one-on-one session within the 48-hour period, or missing a scheduled session, may result in a lost session.

d.  If this enrollment package includes a tax lien portfolio credit, this credit shall only be valid to-wards the purchase of tax liens and tax deeds from REI Holdings, LLC. This credit is non-re-fundable and will expire if a tax lien or tax deed portfolio is not purchased within ninety (90) days from the date of execution of this Agreement.

e.  If you have any general questions, please contact student care by calling 1-801-855-5771.

This enrollment agreement is governed by the laws of the state of Utah. By signing below, the user indicates that they agree to the terms of this agreement, specifically the payment terms and cancelation / refund policy. Note that your digital signature is equivalent to a handwritten signature (as provided in the Federal E-Sign Act, and the Utah Electronic Signature Act).

Date: 3/15/2019

# EXHIBIT "O"

# Tax Lien Assignment Agreement

This Agreement (the "Agreement") is made and entered by and between REI Holdings or its affiliates and subsidiaries ("Assignor") and **4K COIN LLC** ("Assignee"), for and in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

1. Payment of Purchase Price: Assignee hereby agrees to purchase, and Assignor agrees to assign the "Tax Liens" (as identified in the attached Exhibit "A"), for "Purchase Price" equal to **$2,244.84** for the tax lien(s). The full Purchase Price is to be paid in full in good funds within three (3) business days of the date of this Agreement. Upon receipt of the full Purchase Price in good funds, Assignor shall transfer and assign to Assignee any and all of Assignor's right, interests in and to, including without limitation, any and all redemption proceeds, recoveries, real property interests, rights relating thereto or resulting therefrom the "Tax Liens." After that three-day period all sales are final and will not be cancelled, voided, or refunded. If Assignee fails to make the payment required in Section 1 of this Agreement, Assignor shall terminate any and all of Assignor's obligations, including, but without limitation, transfer or assignment of the Tax Liens, which shall remain Assignor's property. In the event it is determined that the interest in a Tax Lien cannot be assigned to Assignee, Assignor reserves the right to replace said Tax Lien with another of reasonably equivalent value, with the difference in value to be paid by the appropriate Party.

2. The Assignee acknowledges that Assignor has not authorized any employee, agent, representative, broker, third party or other party to make, and to the extent so made, specifically negate and disclaim, any representations, warranties, promises, covenants, agreements or guarantees of any kind or character whatsoever, whether expressed or implied, oral or written, past, present or future, or as to, concerning, or with respect to the Tax Liens. Assignor further specifically makes no representation or warranty to Assignee or any of Assignee's successors and assigns as to the collectability of any Tax Lien. Assignee acknowledges and agrees that (I) it is solely responsible for determining the advisability and suitability of and entering into any transaction and hereby assumes all risks related thereto, and (II) Assignor assumes no responsibility for such decisions or determinations or the results, returns or losses related to any investment decision made or transaction entered into by Assignee. As an independent, self-directed party, Assignee assumes full responsibility for entering into each and every transaction and Assignee represents that it has conducted its own due diligence, evaluations, analyses, assessments and decisions related to the Tax Liens or the real property encumbered by the Tax Liens hereto prior to entering into this Agreement. Assignee acknowledges and agrees that Assignor shall not have any liability whatsoever for the results or returns of any of the foregoing or any losses incurred by Assignee related thereto. The Assignee acknowledges and agrees that the tax liens are being sold "as is", "where is" "with all faults", and without any representation or warranty of any kind or nature, express, implied, or limited, and without any recourse against Assignor. Assignee is solely responsible for taking necessary and required action to perfect Assignee's Tax Liens and/or to seek redemption thereof. Assignee is solely responsible for any and all fees charged by the municipality that issued Assignee's Tax Liens. In any instance where an attorney a foreclosure action has been or is filed against the property subject to a Tax Lien, Assignee agrees and acknowledges that Assignee is solely responsible to pay all legal costs and attorney's fees associated therewith and incurred after the date of this Agreement and to hold Assignor harmless from the same. **Assignee understands and acknowledges that Assignee may take title to property, whether before or after the Tax Lien is transferred into Assignee's name and such property may be in need of repair to comply with local laws, codes and ordinances. Assignee is solely responsible to make any repairs required by the municipalities in which the property is situated. Assignor makes no representation or warranty regarding the condition of such property.**



3. If you are not satisfied with your purchase of the tax liens or tax deeds outlined in this contract, REI Holdings will purchase your portfolio back from you under the following conditions: (1) If the tax deed and/or tax lien have been transferred into your name, we require that they be transferred back to REI Holdings' name before a refund can be issued; (2) All refund requests must be made in writing to support@rei-holdings.com within thirty (30) days of your execution of the contract, after which all sales are final; and (3) All buy-backs of tax liens and tax deeds are subject to a fifteen percent (15%) restocking fee. In the event that it is determined after your purchase that the rights to a tax lien you have purchased cannot be or was not properly transferred to you then you are entitled to a refund as follows: (i) if such a determination is made within one (1) year following your purchase, you are only entitled to a complete refund of your purchase price and all fees associated with the deficient tax lien; (ii) if such a determination is made more than one (1) year following your purchase, you are entitled to your purchase price and all fees associated with the deficient tax lien, plus interest on the refund amount in the amount of the Federal postjudgment interest rate, however in no case no more than five percent (5%) per annum, beginning one (1) year from the date of your purchase of the deficient tax lien.

4. Assignee acknowledges that (i) there is presently no public market for tax liens; (ii) investment in tax liens and transactions involves a degree of risk; (iii) Assignee's financial condition is such that it can handle the risks associated with such an investment. In the event of a dispute, the Parties submit to the jurisdiction of the State of Utah, waiving any jurisdiction in the State in which the property subject to the Tax Liens is located, and the venue of any proceedings shall be Utah County, State of Utah. The parties agree that Utah law shall govern this Agreement without regard for the principle of conflicts of law. The prevailing Party shall be entitled to recovery of its costs and reasonable attorney's fees.

5. Assignee agrees to the terms and conditions of the website www.rei-holdings.com ("Website"), which are incorporated into this Agreement by reference in their entirety. In the event of a direct conflict between this Agreement and the terms and conditions of the Website, this Agreement shall control.

**Assignee:**

4K COIN LLC
1530 RIVER MAIN CT
LAWRENCEVILLE, GA 30046

**Assignor:**

REI Holdings, LLC
2912 W Executive Parkway
Suite 120, Lehi UT 84663

*IN WITNESS WHEREOF,* the parties have caused their authorized agents to execute this Agreement, effective as of

03/29/2019

**Assignee:**

Kelvin Graddy

**Assignor:**

Edward Stewart
Manager

*For list of tax lien certificate(s), please see attached certificate list (Exhibit A).*

## Exhibit A: Tax Lien Schedule

| PARCEL ID NUMBER | PROPERTY TYPE | COUNTY | CERTIFICATE YEAR | FACE AMOUNT | REDEMPTIVE VALUE | INTEREST RATE |
|---|---|---|---|---|---|---|
| 402119109002 | Vacant Residential | Charlotte County | 2013-06-01 | $322.81 | $668.01 | 18.00% |
| 402124232006 | Vacant Residential | Charlotte County | 2013-06-01 | $357.63 | $739.39 | 18.00% |
| 402203101003 | Vacant Residential | Charlotte County | 2013-06-01 | $375.00 | $775.00 | 18.00% |

| DESCRIPTION | AMOUNT |
|---|---|
| PURCHASE PRICE FOR TAX LIENS | $2,182.40 |
| TRANSACTION FEES | |
| MUNICIPAL TRANSFER FEES | $6.75 |
| SERVICING FEE | $32.74 |
| ADMINISTRATION FEE | $22.95 |
| CREDIT | $0.00 |
| TOTAL | $2,244.84 |

# EXHIBIT "P"



*Charlotte County Tax Collector*
*Vickie L. Potts, CFC*

Accuracy of the information provided on this web site is not guaranteed for legal purposes. Changes may occur daily and to get the most current information, please contact The Tax Collector's Office.

**\*NOTE\* An additional 2.5% convenience fee or a minimum transaction fee of $2.50 will be incurred for Visa, MasterCard, Discover, and American Express.**



## Bill History — Real Estate Account At 21019 HILLSBOROUGH BLVD, PORT CHARLOTTE

[Print this page]

| Real Estate Account #402203101003 | | | | Parcel details | Latest bill | Full bill history |

**Get Bills by Email**

**Pay all: $4,840.58**

*Amounts as of 04/05/2019*

| Bill | Balance | | Status | Action |
|------|---------|---|--------|--------|
| 2018 Annual Bill | $349.10 | | | Pay this bill: $349.10 |
| | | | | Print (PDF) |
| 2017 Annual Bill | $465.48 | | | Pay this bill: $465.48 |
| | | | | Print (PDF) |
| Issued certificate #3914 | Face $394.19 Rate 18% | 06/01/2018 05/01/2018 | Certificate issued Advertisement file created | |
| 2016 Annual Bill | $495.72 | | | Pay this bill: $495.72 |
| | | | | Print (PDF) |
| Issued certificate #3898 | Face $381.59 Rate 14.75% | 06/01/2017 05/02/2017 | Certificate issued Advertisement file created | |
| 2015 Annual Bill | $581.30 | | | Pay this bill: $581.30 |
| | | | | Print (PDF) |
| Issued certificate #3930 | Face $377.08 Rate 18% | 06/01/2016 05/02/2016 | Certificate issued Advertisement file created | |
| 2014 Annual Bill | $642.71 | | | Pay this bill: $642.71 |
| | | | | Print (PDF) |
| Issued certificate #3635 | Face $373.29 Rate 18% | 06/01/2015 04/29/2015 | Certificate issued Advertisement file created | |
| 2013 Annual Bill | $684.36 | | | Pay this bill: $684.36 |
| | | | | Print (PDF) |
| Issued certificate #3665 | Face $359.74 Rate 18% | 06/01/2014 05/01/2014 | Certificate issued Advertisement file created | |
| Total Balance | $4,840.58 | | | Pay all: $4,840.58 |

Case 1:21-cv-00639-SDG   Document 1   Filed 02/12/21   Page 112 of 234

| Bill | Balance | Status | | Action |
|------|---------|--------|--|--------|
| 2012 Annual Bill | $780.63 | | | |
| | | | | **Pay this bill: $780.63** |
| | | | | Print (PDF) |
| Issued certificate #3828 | Face $375.00 Rate 18% | 06/01/2013 | Certificate issued | |
| | | 05/01/2013 | Advertisement file created | |
| 2011 Annual Bill | $841.28 | | | |
| | | | | **Pay this bill: $841.28** |
| | | | | Print (PDF) |
| Issued certificate #4093 | Face $371.95 Rate 18% | 05/31/2012 | Certificate issued | |
| | | 05/01/2012 | Advertisement file created | |
| 2010 Annual Bill | $0.00 | | | Print (PDF) |
| Expired certificate #4037 | Face $405.13 Rate 18% | 05/31/2011 | Certificate issued | |
| | | 05/03/2011 | Advertisement file created | |
| 2009 Annual Bill | $0.00 | | | Print (PDF) |
| Expired certificate #4064 | Face $495.67 Rate 18% | 06/01/2010 | Certificate issued | |
| | | 05/01/2010 | Advertisement file created | |
| 2008 Annual Bill | $0.00 | | | Print (PDF) |
| Expired certificate #4001 | Face $502.06 Rate 18% | 06/01/2009 | Certificate issued | |
| | | 05/01/2009 | Advertisement file created | |
| 2007 Annual Bill | | 10/22/2008 | Paid $651.33 Receipt #2008-7001329 | Print (PDF) |
| Tax Deed Application #81027 | | 10/22/2008 | Deed sale | |
| | | 04/30/2008 | Deed applied | |
| 2006 Annual Bill | | 10/22/2008 | Paid $689.38 Receipt #2008-7001329 | Print (PDF) |
| Tax Deed Application #81027 | | 10/22/2008 | Deed sale | |
| | | 04/30/2008 | Deed applied | |
| 2005 Annual Bill | $0.00 | 10/22/2008 | Paid $627.97 Receipt #2008-7001329 | Print (PDF) |
| Tax Deed Application #81027 | | 10/22/2008 | Deed sale | |
| | | 04/30/2008 | Deed applied | |
| 2004 Annual Bill | | 07/11/2005 | Paid $259.36 Receipt #2004-7030352 | Print (PDF) |
| Tax Deed Application #50211 | | 09/13/2005 | Deed sale | |
| | | 06/23/2005 | Deed applied | |
| 2003 Annual Bill | | 07/11/2005 | Paid $188.07 Receipt #2004-7030352 | Print (PDF) |
| Tax Deed Application #50211 | | 09/13/2005 | Deed sale | |
| | | 06/23/2005 | Deed applied | |
| 2002 Annual Bill | | 07/11/2005 | Paid $248.47 Receipt #2004-7030352 | Print (PDF) |
| Tax Deed Application #50211 | | 09/13/2005 | Deed sale | |
| | | 06/23/2005 | Deed applied | |
| 2001 Annual Bill | $0.00 | 11/26/2001 | Paid $145.29 Receipt #2001-9134761 | Print (PDF) |
| 2000 Annual Bill | $0.00 | 12/04/2000 Effective 11/30/2000 | Paid $126.14 Receipt #2000-9055477 | Print (PDF) |
| 1999 Annual Bill | | 07/11/2005 | Paid $330.72 Receipt #2004-7030352 | Print (PDF) |
| Tax Deed Application #50211 | | 09/13/2005 | Deed sale | |
| | | 06/23/2005 | Deed applied | |
| 1998 Annual Bill | | 07/11/2005 | Paid $317.77 Receipt #2004-7030352 | Print (PDF) |
| Tax Deed Application #50211 | | 09/13/2005 | Deed sale | |
| | | 06/23/2005 | Deed applied | |
| **Total Balance** | **$4,840.58** | | | |
| | | | | **Pay all: $4,840.58** |



| Bill | Balance | | Status | Action |
|------|---------|-----|--------|--------|
| 📄 **1997 Annual Bill** | $0.00 | 07/11/2005 | Paid $485.97 Receipt #2004-7030352 | 📄 **Print (PDF)** |
| 📄 **Tax Deed Application #50211** | | 09/13/2005 | Deed sale | |
| | | 06/23/2005 | Deed applied | |
| **Total Balance** | **$4,840.58** | | | |

**Pay all: $4,840.58**

© 1997–2019, Grant Street Group. All rights reserved.    Help - Contact us - Terms of service - Tax Collector home



*Charlotte County Tax Collector*
*Vickie L. Potts, CFC*

Accuracy of the information provided on this web site is not guaranteed for legal purposes. Changes may occur daily and to get the most current information, please contact The Tax Collector's Office.

**\*NOTE\* An additional 2.5% convenience fee or a minimum transaction fee of $2.50 will be incurred for Visa, MasterCard, Discover, and American Express.**



## Bill History — Real Estate Account At 12101 KELLER AVE, PORT CHARLOTTE    🖨 Print this page

Real Estate Account #402119109002          📄 **Parcel details**   ⎯ **Latest bill**   ⌐ **Full bill history**

📩 **Get Bills by Email**

**Pay all: $4,381.01**

*Amounts as of 04/05/2019*

| Bill | Balance | | Status | Action |
|---|---|---|---|---|
| 📄 **2018 Annual Bill** | $319.21 | | | **Pay this bill: $319.21** |
| | | | | 📄 Print (PDF) |
| 📄 **2017 Annual Bill** | $447.98 | | | **Pay this bill: $447.98** |
| | | | | 📄 Print (PDF) |
| 🔍 **Issued certificate #2786** | Face $399.76 Rate 18% | 06/01/2018 | Certificate issued | |
| | | 05/01/2018 | Advertisement file created | |
| 📄 **2016 Annual Bill** | $463.59 | | | **Pay this bill: $463.59** |
| | | | | 📄 Print (PDF) |
| 🔍 **Issued certificate #2674** | Face $356.54 Rate 14.75% | 06/01/2017 | Certificate issued | |
| | | 05/02/2017 | Advertisement file created | |
| 📄 **2015 Annual Bill** | $550.89 | | | **Pay this bill: $550.89** |
| | | | | 📄 Print (PDF) |
| 🔍 **Issued certificate #2662** | Face $492.89 Rate 18% | 06/01/2016 | Certificate issued | |
| | | 05/02/2016 | Advertisement file created | |
| 📄 **2014 Annual Bill** | $572.46 | | | **Pay this bill: $572.46** |
| | | | | 📄 Print (PDF) |
| 🔍 **Issued certificate #2413** | Face $332.09 Rate 18% | 06/01/2015 | Certificate issued | |
| | | 04/29/2015 | Advertisement file created | |
| 📄 **2013 Annual Bill** | $623.81 | | | **Pay this bill: $623.81** |
| | | | | 📄 Print (PDF) |
| 🔍 **Issued certificate #2362** | Face $327.62 Rate 18% | 06/01/2014 | Certificate issued | |
| | | 05/01/2014 | Advertisement file created | |
| **Total Balance** | **$4,381.01** | | | **Pay all: $4,381.01** |

| Bill | Balance | | Status | Action |
|---|---|---|---|---|
| 2012 Annual Bill | $672.85 | | | **Pay this bill: $672.85** |
| | | | | Print (PDF) |
| Issued certificate #2391 | Face $322.81 Rate 18% | 06/01/2013 05/01/2013 | Certificate issued Advertisement file created | |
| 2011 Annual Bill | $730.22 | | | **Pay this bill: $730.22** |
| | | | | Print (PDF) |
| Issued certificate #2645 | Face $322.48 Rate 18% | 05/31/2012 05/01/2012 | Certificate issued Advertisement file created | |
| 2010 Annual Bill | $0.00 | | | Print (PDF) |
| Expired certificate #2674 | Face $321.51 Rate 18% | 05/31/2011 05/03/2011 | Certificate issued Advertisement file created | |
| 2009 Annual Bill | $0.00 | | | Print (PDF) |
| Expired certificate #2701 | Face $320.88 Rate 18% | 06/01/2010 05/01/2010 | Certificate issued Advertisement file created | |
| 2008 Annual Bill | $0.00 | 05/26/2009 | Paid $321.06 Receipt #2008-7022817 | Print (PDF) |
| 2007 Annual Bill | $0.00 | 02/11/2008 | Paid $327.43 Receipt #2007-9091455 | Print (PDF) |
| 2006 Annual Bill | $0.00 | 11/09/2006 | Paid $350.33 Receipt #2006-9012270 | Print (PDF) |
| 2005 Annual Bill | $0.00 | 11/21/2005 | Paid $222.46 Receipt #2005-9028302 | Print (PDF) |
| 2004 Annual Bill | $0.00 | 12/21/2004 | Paid $120.11 Receipt #2004-9084413 | Print (PDF) |
| 2003 Annual Bill | $0.00 | 02/21/2007 | Paid $150.01 Receipt #2006-2017284 | Print (PDF) |
| Redeemed certificate #5200 | Face $126.38 Rate 5% | 02/21/2007 06/01/2004 05/01/2004 | Certificate redeemed Certificate issued Advertisement file created | |
| 2002 Annual Bill | $0.00 | 02/25/2003 | Paid $86.38 Receipt #2002-2017610 | Print (PDF) |
| 2001 Annual Bill | $0.00 | 11/30/2001 | Paid $99.39 Receipt #2001-2008562 | Print (PDF) |
| 2000 Annual Bill | $0.00 | 04/02/2001 Effective 03/31/2001 | Paid $106.50 Receipt #2000-9089924 | Print (PDF) |
| **Total Balance** | **$4,381.01** | | | **Pay all: $4,381.01** |

VISA   MasterCard   AMERICAN EXPRESS Cards   DISCOVER NETWORK   e-check

© 1997–2019, Grant Street Group. All rights reserved.          Help - Contact us - Terms of service - Tax Collector home



*Charlotte County Tax Collector*
Vickie L. Potts, CFC

Accuracy of the information provided on this web site is not guaranteed for legal purposes. Changes may occur daily and to get the most current information, please contact The Tax Collector's Office.

**\*NOTE\* An additional 2.5% convenience fee or a minimum transaction fee of $2.50 will be incurred for Visa, MasterCard, Discover, and American Express.**

## Bill History — Real Estate Account At 3112 BRECKINRIDGE ST, PORT CHARLOTTE    📇 Print this page

| Real Estate Account #402124232006 | | 📘 Parcel details   🗐 Latest bill    Full bill history |

🖂 **Get Bills by Email**

**Pay all: $4,699.62**

*Amounts as of 04/05/2019*

| Bill | Balance | Status | Action |
|------|---------|--------|--------|
| 📄 2018 Annual Bill | $341.09 | | Pay this bill: $341.09<br><br>📄 Print (PDF) |
| 📄 2017 Annual Bill | $456.93 | | Pay this bill: $456.93<br><br>📄 Print (PDF) |
| 🔍 Issued certificate #3017 | Face $386.85<br>Rate 18% | 06/01/2018   Certificate issued<br>05/01/2018   Advertisement file created | |
| 📄 2016 Annual Bill | $489.20 | | Pay this bill: $489.20<br><br>📄 Print (PDF) |
| 🔍 Issued certificate #2924 | Face $376.51<br>Rate 14.75% | 06/01/2017   Certificate issued<br>05/02/2017   Advertisement file created | |
| 📄 2015 Annual Bill | $563.35 | | Pay this bill: $563.35<br><br>📄 Print (PDF) |
| 🔍 Issued certificate #2923 | Face $365.31<br>Rate 18% | 06/01/2016   Certificate issued<br>05/02/2016   Advertisement file created | |
| 📄 2014 Annual Bill | $618.35 | | Pay this bill: $618.35<br><br>📄 Print (PDF) |
| 🔍 Issued certificate #2670 | Face $359.00<br>Rate 18% | 06/01/2015   Certificate issued<br>04/29/2015   Advertisement file created | |
| 📄 2013 Annual Bill | $675.01 | | Pay this bill: $675.01<br><br>📄 Print (PDF) |
| 🔍 Issued certificate #2620 | Face $354.78<br>Rate 18% | 06/01/2014   Certificate issued<br>05/01/2014   Advertisement file created | |
| **Total Balance** | **$4,699.62** | | **Pay all: $4,699.62** |

| Bill | Balance | | Status | Action |
|------|---------|--|--------|--------|
| 🖵 2012 Annual Bill | $744.76 | | | |
| | | | | **Pay this bill: $744.76** |
| | | | | 📄 Print (PDF) |
| 🔍 Issued certificate #2687 | Face $357.63 Rate 18% | 06/01/2013 | Certificate issued | |
| | | 05/01/2013 | Advertisement file created | |
| 🖵 2011 Annual Bill | $810.93 | | | |
| | | | | **Pay this bill: $810.93** |
| | | | | 📄 Print (PDF) |
| 🔍 Issued certificate #2927 | Face $358.43 Rate 18% | 05/31/2012 | Certificate issued | |
| | | 05/01/2012 | Advertisement file created | |
| 🖵 2010 Annual Bill | $0.00 | | | 📄 Print (PDF) |
| 🔍 Expired certificate #2916 | Face $368.76 Rate 18% | 05/31/2011 | Certificate issued | |
| | | 05/03/2011 | Advertisement file created | |
| 🖵 2009 Annual Bill | $0.00 | | | 📄 Print (PDF) |
| 🔍 Expired certificate #2939 | Face $467.57 Rate 18% | 06/01/2010 | Certificate issued | |
| | | 05/01/2010 | Advertisement file created | |
| 🖵 2008 Annual Bill | $0.00 | | | 📄 Print (PDF) |
| 🔍 Expired certificate #2866 | Face $595.45 Rate 18% | 06/01/2009 | Certificate issued | |
| | | 05/01/2009 | Advertisement file created | |
| 🖵 2007 Annual Bill | $0.00 | 05/17/2010 | **Paid $774.39 Receipt #2009-7016774** | 📄 Print (PDF) |
| 🔍 Redeemed certificate #2914 | Face $571.11 Rate 17.25% | 05/17/2010 | Certificate redeemed | |
| | | 06/01/2008 | Certificate issued | |
| | | 05/01/2008 | Advertisement file created | |
| 🖵 2006 Annual Bill | $0.00 | 03/27/2009 | **Paid $566.38 Receipt #2008-7018893** | 📄 Print (PDF) |
| 🔍 Redeemed certificate #2324 | Face $533.46 Rate 0.25% | 03/27/2009 | Certificate redeemed | |
| | | 06/01/2007 | Certificate issued | |
| | | 05/01/2007 | Advertisement file created | |
| 🖵 2005 Annual Bill | $0.00 | 10/18/2006 | **Paid $398.76 Receipt #2006-7000358** | 📄 Print (PDF) |
| 🔍 Redeemed certificate #1659 | Face $373.82 Rate 0.25% | 10/18/2006 | Certificate redeemed | |
| | | 06/01/2006 | Certificate issued | |
| | | 05/01/2006 | Advertisement file created | |
| 🖵 2004 Annual Bill | $0.00 | 07/18/2005 | **Paid $221.48 Receipt #2004-7030589** | 📄 Print (PDF) |
| 🔍 Redeemed certificate #1605 | Face $204.98 Rate 0.25% | 07/18/2005 | Certificate redeemed | |
| | | 06/01/2005 | Certificate issued | |
| | | 05/01/2005 | Advertisement file created | |
| 🖵 2003 Annual Bill | $0.00 | 06/17/2004 | **Paid $188.10 Receipt #2003-7038451** | 📄 Print (PDF) |
| 🔍 Redeemed certificate #2255 | Face $173.19 Rate 0.25% | 06/17/2004 | Certificate redeemed | |
| | | 06/01/2004 | Certificate issued | |
| | | 05/01/2004 | Advertisement file created | |
| 🖵 2002 Annual Bill | $0.00 | 06/17/2004 | **Paid $195.98 Receipt #2003-7038451** | 📄 Print (PDF) |
| 🔍 Redeemed certificate #3181 | Face $158.77 Rate 18% | 06/17/2004 | Certificate redeemed | |
| | | 06/01/2003 | Certificate issued | |
| | | 05/01/2003 | Advertisement file created | |
| 🖵 2001 Annual Bill | $0.00 | 06/17/2004 | **Paid $220.10 Receipt #2003-7038451** | 📄 Print (PDF) |
| 🔍 Redeemed certificate #3259 | Face $183.56 Rate 18% | 06/17/2004 | Certificate redeemed | |
| | | 06/01/2002 | Certificate issued | |
| | | 05/01/2002 | Advertisement file created | |
| 🖵 2000 Annual Bill | $0.00 | 06/17/2004 | **Paid $208.48 Receipt #2003-7038451** | 📄 Print (PDF) |
| **Total Balance** | **$4,699.62** | | | |
| | | | | **Pay all: $4,699.62** |

| Bill | Balance | | Status | Action |
|------|---------|------------|----------------------------|--------|
| 🔖 Redeemed certificate #3123 | Face $173.59 | 06/17/2004 | Certificate redeemed | |
| | Rate 18% | 06/01/2001 | Certificate issued | |
| | | 05/01/2001 | Advertisement file created | |
| **Total Balance** | **$4,699.62** | | | |
| | | | | **Pay all: $4,699.62** |



© 1997–2019, **Grant Street Group.** All rights reserved.     Help - **Contact us** - **Terms of service** - **Tax Collector home**

# EXHIBIT "Q"

---------- Forwarded message ---------
From: **Karla Trejo (Student Success)** <support@studentsuccess.zendesk.com>
Date: Wed, Jun 19, 2019, 4:54 PM
Subject: [Request received] Account setup for TDA's
To: kelvin <kelvingraddy31@gmail.com>

Your request (65957) has been received and is being reviewed by our support staff.

To add additional comments, reply to this email.

 **Karla Trejo** (Student Success)

Hello Kelvin,

It was great speaking with you! Here are the links to create your accounts to file TDA's on your liens. Please remember when you schedule an appointment with me please have your ACH information on hand.

To filed TDA's for Charlotte County liens:
https://lienhub.com/user/register

To filed TDA's for Polk County liens:
https://www.realtda.com/index.cfm?zmethod=register

Speak to you soon!

Any questions or concerns please schedule an appointment with me: Click here to schedule an appointment

Any questions or concerns please contact me:

Client Success: 844-406-7434
Email: Karla.trejo@taxlienoffice.com
Click here to schedule an appointment

Thank you,

Karla

Client Success
Tax Lien Transfers
2912 Executive Parkway Suite 120
Lehi, UT 84043

Any questions or concerns please contact me:

Client Success: 844-406-7434

Email: Karla.trejo@taxlienoffice.com

Zendesk

Erin

CONFIDENTIAL NOTICE: This message is intended only for the individual or entity to which it is addressed, and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If the reader of this message is not the

intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.

--
**Kavelle Fields**
The KD9 Group LLC
kavellefields1@gmail.com
678-622-2625

# EXHIBIT "R"

 Gmail

**kelvin graddy <kelvingraddy31@gmail.com>**

## Charlotte County Tax Collector: Payment Confirmation

**no-reply@payment-express.net** <no-reply@payment-express.net>
To: kelvingraddy31@gmail.com

Tue, Jun 25, 2019 at 4:40 PM

Thank you for your payment.

**Vickie L. Potts**
*Charlotte County Tax Collector*
18500 Murdock Circle, Port Charlotte, FL 33948

### Confirmation # 28181273848

### Transaction Details

**Payment Date:** 6/25/2019 4:40 PM EDT
**Transaction #:** 75C79D3C-9789-11E9-9E60-4DD443567BA8
**Recipient:** Charlotte County Deeds and Liens
**Location:** DeedExpress
**Received Via:** Online

### Items Paid

**Items**

| Item | Description | Amount |
|------|-------------|--------|
| Tax Deed Application | DeedExpress Payment | $ 7,217.40 |

**Payments**

| Payment | Account | Paid |
|---------|---------|------|
| e-check | UNITED COMMUNITY BANK,INC ***9479 | $ 7,217.40 |
| **Total Charged:** | | **$ 7,217.40** |

### Paid By

*4K Coin LLC*
kelvingraddy31@gmail.com

Your payment still needs to be cleared by your bank. Your bank should inform us of an unsuccessful e-check within three business days.

For more information on payments handled by the tax collector, please visit our web site at http://www.cctaxcol.com/.

# EXHIBIT "S"

---------- Forwarded message ---------
From: **Karla Trejo** <karla.trejo@taxlienoffice.com>
Date: Fri, Oct 11, 2019, 12:40 PM
Subject: Re: TDA process
To: kelvin graddy <kelvingraddy31@gmail.com>

Good Morning Kelvin,

Thank you for reaching out! The county will be the one getting in contact with you once the properties are ready to be put up for auction. If you would like to know where you currently stand please contact: 941-743-1350

If you have any questions or concerns feel free to contact me.

Thank you,

To book an appointment with me please go
to: https://outlook.office365.com/owa/calendar/StudentSuccess@zulumarketing.com/bookings/

Karla
Client Success Advocate
Tax Lien Buyers Club
844-406-7434

**From:** kelvin graddy <kelvingraddy31@gmail.com>
**Sent:** Friday, October 11, 2019 3:51 AM
**To:** Karla Trejo <karla.trejo@taxlienoffice.com>
**Subject:** TDA process

Hey Karla,

I just wanted check with you on the status of the 2 TDA that were filled in FL

CONFIDENTIAL NOTICE: This message is intended only for the individual or entity to which it is addressed, and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.
CONFIDENTIAL NOTICE: This message is intended only for the individual or entity to which it is addressed, and may contain information that is privileged, confidential, or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended

1

recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.

# EXHIBIT "T"

---------- Forwarded message ---------
From: **Erin Bates** <erin.bates@taxlienoffice.com>
Date: Fri, Nov 8, 2019 at 4:43 PM
Subject: TurnKey Properties
To: kelvin graddy <kelvingraddy31@gmail.com>, kavellefields1@gmail.com <kavellefields1@gmail.com>

Hello Kelvin and Kavelle,

It was nice catching up with you.

Here are all the documents we'd provide you for the turnkey properties. I've attached 2 for you to review.

Purchase price of Stockton Ave $72,810

Purchase price for $2208 3rd st NE $63,408

Have a great weekend

# EXHIBIT "U"

**ROGER D. EATON**
**CHARLOTTE COUNTY CLERK OF THE CIRCUIT COURT**
**350 E. MARION AVE**
**PUNTA GORDA, FLORIDA 33950**

**APPLICANT BILL**

01/14/2020

4K COIN LLC
1530 RIVER MAIN COURT
LAWRENCEVILLE, GA 30046

**RE: TAX DEED APPLICATION**

SEE ATTACHED SUPPLEMENT FOR LIST OF CERTIFICATES

We received your application for Tax Deed from the Tax Collector's Office.  Therefore it will be necessary for you to send a cashier's check or personal check in the amount of **547.20** payable to: **CLERK OF THE CIRCUIT COURT** by **January 27, 2020**.

**These Fees are separate from what you have already paid the Tax Collector.**

You can mail this to: Clerk of Circuit Court, **Attn.: Tax Deed Department,** 350 East Marion Avenue, Punta Gorda, FL 33950.

If you have any questions, please do not hesitate to contact my office at (941) 637-2349.

Sincerely,

Roger D. Eaton
Clerk of the Circuit Court



By: *Lori Lagios Tuck*
_____

Lori Lagios-Tuck, Deputy Clerk

**Holder:** 4K COIN LLC

**No. of Certificates: 2**

**Sale Date:** Apr-14-2020

| Tax Cert No. | Case Number | Sheriff Fee | Postage Fee | Clerk Fee | Recording Fee | Auction Fee | Advertising | Total |
|---|---|---|---|---|---|---|---|---|
| 2687-2013 | 19-2036 | $0.00 | $53.65 | $60.00 | $10.00 | $59.00 | $59.40 | **$242.05** |
| 3828-2013 | 19-2037 | $80.00 | $36.75 | $60.00 | $10.00 | $59.00 | $59.40 | **$305.15** |
| | | **$80.00** | **$90.40** | **$120.00** | **$20.00** | **$118.00** | **$118.80** | **$547.20** |

**ROGER D. EATON**
## CHARLOTTE COUNTY CLERK OF THE CIRCUIT COURT
### 350 E. MARION AVE
### PUNTA GORDA, FLORIDA 33950

Thank You

| Receipt #: | 2020000348 | Name: | 4K COIN LLC |
| Cashier Date: | January 21, 2020 | | 1530 RIVER MAIN COURT |
| | | | LAWRENCEVILLE, GA 30046 |
| Cashier By: | lorit | Payment For: | Applicant Bill |

### Fees

| File Number | Certificate Number | Clerk | Advertising | Sheriff | Postage | Recording Fee | Auction | Sub Total |
|---|---|---|---|---|---|---|---|---|
| 19-2036 | 2687-2013 | $ 60.00 | $ 59.40 | | $ 53.65 | $ 10.00 | $ 59.00 | $242.05 |
| 19-2037 | 3828-2013 | $ 60.00 | $ 59.40 | $ 80.00 | $ 36.75 | $ 10.00 | $ 59.00 | $305.15 |

**Payment Information**

CASHIERS CHEC     $547.20

**Grand Total Payments:    547.20**

# EXHIBIT "V"

**ROGER D. EATON**
**CHARLOTTE COUNTY CLERK OF THE CIRCUIT COURT**
**350 E. MARION AVE**
**PUNTA GORDA, FLORIDA 33950**

NOTICE OF APPLICATION FOR TAX DEED 19-2036
SEC. 197.512 F.S.

**NOTICE IS HEREBY GIVEN**, that 4K COIN LLC the holder of the following certificate has filed the said certificate for a tax deed to be issued thereon.  The certificate number and year of issuance, the description of the property, and the names in which it was assessed are as follows:

Certificate No.: 2687-2013        Year of Issuance: Jun-01-2013       Tax ID:   402124232006

Description of Property:
PCH 031 2686 0006 PORT CHARLOTTE SEC 31 BLK 2686 LT 6

Name in which assessed:

   GASSER, MARIA T.; LAINO, JAMES

All of said property being in the County of Charlotte, State of Florida.  Unless the said certificate shall be redeemed according to the law, the property described in such certificate shall be sold to the highest bidder at www.charlotte.realforeclose.com in accordance with Chapter 45, Florida Statutes at 9:00 A.M., or thereafter on 14th day of April, 2020.

Dated this 23rd day of January, 2020

Roger D. Eaton
Clerk of the Circuit Court

By:        *Lori Lagios Tuck*
        _____
          Lori Lagios-Tuck, Deputy Clerk

PUBLISH: 02/10/2020, 02/17/2020, 02/24/2020, 03/02/2020
BASE BID AMOUNT: 5,245.79
REDEMPTION AMOUNT: $5,252.04
P.O. NO.: 1902036

## WARNING!

THERE ARE UNPAID TAXES ON THE PROPERTY WHICH YOU OWN OR HAVE A LEGAL INTEREST.  THE PROPERTY WILL BE SOLD AT PUBLIC AUCTION ON Apr-14-2020 UNLESS BACK TAXES ARE PAID.  WHEN REDEEMING PROPERTY PLEASE BE ADVISED THAT WE CANNOT ACCEPT PERSONAL CHECKS.  PLEASE REMIT A MONEY ORDER OR CASHIER'S CHECK FOR TOTAL AMOUNT TO BE REDEEMED.
MAKE PAYABLE TO:    CHARLOTTE COUNTY TAX COLLECTOR
MAIL TO:        DELINQUENT TAX DEPARTMENT
            18500 MURDOCK CIRCLE
            PORT CHARLOTTE, FL 33948-1075

FOR FURTHER INFORMATION CONCERNING THE SALE, PLEASE CONTACT THE TAX COLLECTOR AT 941-743-1350 ; QUESTIONS REGARDING DETAILS ON THE SALE CONTACT THE CLERK OF COURT AT 941-637-2349.

# EXHIBIT "W"

# ROGER D. EATON
## CHARLOTTE COUNTY CLERK OF THE CIRCUIT COURT
### 350 E. MARION AVE
### PUNTA GORDA, FLORIDA 33950

## NOTICE OF APPLICATION FOR TAX DEED 19-2037
### SEC. 197.512 F.S.

**NOTICE IS HEREBY GIVEN**, that 4K COIN LLC the holder of the following certificate has filed the said certificate for a tax deed to be issued thereon. The certificate number and year of issuance, the description of the property, and the names in which it was assessed are as follows:

Certificate No.: 3828-2013          Year of Issuance: Jun-01-2013          Tax ID:   402203101003

Description of Property:
PCH 034 0870 0028 PORT CHARLOTTE SEC 34 BLK 870 LT 28

Name in which assessed:

  CORFU HOMES, INC., A FLORIDA CORPORATION; CORFU HOMES INC

All of said property being in the County of Charlotte, State of Florida. Unless the said certificate shall be redeemed according to the law, the property described in such certificate shall be sold to the highest bidder at www.charlotte.realforeclose.com in accordance with Chapter 45, Florida Statutes at 9:00 A.M., or thereafter on 14th day of April, 2020.

Dated this 23rd day of January, 2020

Roger D. Eaton
Clerk of the Circuit Court

By:   _Lori Lagios Tuck_
        Lori Lagios-Tuck, Deputy Clerk


PUBLISH: 02/10/2020, 02/17/2020, 02/24/2020, 03/02/2020
BASE BID AMOUNT: 5,448.58
REDEMPTION AMOUNT: $5,454.83
P.O. NO.: 1902037


## WARNING!

THERE ARE UNPAID TAXES ON THE PROPERTY WHICH YOU OWN OR HAVE A LEGAL INTEREST. THE PROPERTY WILL BE SOLD AT PUBLIC AUCTION ON Apr-14-2020 UNLESS BACK TAXES ARE PAID. WHEN REDEEMING PROPERTY PLEASE BE ADVISED THAT WE CANNOT ACCEPT PERSONAL CHECKS. PLEASE REMIT A MONEY ORDER OR CASHIER'S CHECK FOR TOTAL AMOUNT TO BE REDEEMED.

MAKE PAYABLE TO:   CHARLOTTE COUNTY TAX COLLECTOR
MAIL TO:                    DELINQUENT TAX DEPARTMENT
                                   18500 MURDOCK CIRCLE
                                   PORT CHARLOTTE, FL 33948-1075

FOR FURTHER INFORMATION CONCERNING THE SALE, PLEASE CONTACT THE TAX COLLECTOR AT 941-743-1350 ; QUESTIONS REGARDING DETAILS ON THE SALE CONTACT THE CLERK OF COURT AT 941-637-2349.

# EXHIBIT "X"

**ROGER D. EATON**
**CHARLOTTE COUNTY CLERK OF THE CIRCUIT COURT**
**350 E. MARION AVE**
**PUNTA GORDA, FLORIDA 33950**

| | | | |
|---|---|---|---|
| **Receipt #:** | 2020000936 | **Name:** | 4K COIN LLC |
| **Cashier Date:** | May 11, 2020 | | 1530 RIVER MAIN COURT |
| **Cashier By:** | veronicat | | LAWRENCEVILLE, GA 30046 |
| | | **Payment For:** Struck to Applicant | |

| **Clerk TDA #:** | 19-2036 | **Tax Certificate #:** | 2687-2013 |
|---|---|---|---|
| **Parcel ID:** | 402124232006 | **Certificate Holder:** | 4K COIN LLC |
| **Sale Date:** | April 14, 2020 | | |

| **Clerk TDA #:** | 19-2037 | **Tax Certificate #:** | 3828-2013 |
|---|---|---|---|
| **Parcel ID:** | 402203101003 | **Certificate Holder:** | 4K COIN LLC |
| **Sale Date:** | April 14, 2020 | | |

**Payment Information**

| CHECK | $851.75 | | **Grand Total Payments:** | 851.75 |
|---|---|---|---|---|

# EXHIBIT "Y"

Prepared By & Returned to:
Veronica C Torres
Tax Deeds #83
350 East Marion Avenue
Punta Gorda, FL 33950

**Tax Deed File No.**     19-2036
**Property Identification No.**     402124232006

# TAX DEED

**State of Florida**
**County Of Charlotte**

The following Tax Sale Certificate Numbered 2687-2013 issued on 1st day of June, 2013, was filed in the office of the Tax Collector of this County and application made for the issuance of a tax deed, the applicant having paid or redeemed all other taxes or tax sale certificates on the land described as required by law to be paid or redeemed, and the costs and expenses of this sale, and due notice of sale having been published as required by law, and no person entitled to do so having appeared to redeem said land; such land was sold on the 14th day of April, 2020, offered for sale as required by law for cash to the highest bidder and was sold to: 4K COIN LLC

**ADDRESS**
1530 RIVER MAIN COURT
LAWRENCEVILLE, GA 30046

being the highest bidder and having paid the sum of the bid as required by the Laws of Florida.

NOW, on 14th day of April, 2020, in the County of Charlotte, State of Florida, in consideration of the sum of  5,589.22 five thousand five hundred eighty-nine dollars and twenty-two cents only being the amount paid pursuant to the Laws of Florida does hereby sell the following lands, including any hereditaments, buildings, fixtures and improvements of any kind and description, situated in the County and State aforesaid and described as follows:
PCH 031 2686 0006 PORT CHARLOTTE SEC 31 BLK 2686 LT 6

Original Owners of Record:
GASSER, MARIA T.
LAINO, JAMES

**Roger D. Eaton**
Clerk of the Circuit Court

**Witness:**

Karen Brese

Theresa Anderson

By: _____
Veronica C Torres, Deputy Clerk

**State of Florida**
**County Of Charlotte**

On the 11th day of May, 2020, before me Lori Lagios-Tuck personally appeared Veronica C Torres a Deputy Clerk for Clerk of the Circuit Court in and for the State and this County known to me to be the person described in, and who executed the foregoing instrument, and acknowledged the execution of this instrument to be his/her own free act and deed for the use and purposes therein mentioned, who is personally known to me and who did not take an oath.

Witness my hand and office seal date aforesaid.

Notary Public State of Florida

Lori Lagios-Tuck

Lori Lagios-Tuck

LORI LAGIOS-TUCK
MY COMMISSION # GG 356476
EXPIRES: September 23, 2023
Bonded Thru Notary Public Underwriters

CHARLOTTE COUNTY CLERK OF CIRCUIT COURT
OR BOOK  4573 PAGE 1366 PAGE  1 OF  4
INSTR # 2810464 Doc Type  TXD
Recorded: 5/11/2020 at 10:10 AM
Rec. Fee: RECORDING $35.50 D DOCTAX PD $39.20
Cashier By: VERONICAT

# EXHIBIT "Z"

Prepared By & Return To:
Veronica C Torres
Tax Deeds #83
350 East Marion Avenue
Punta Gorda, FL 33950

**Tax Deed File No.**      19-2037
**Property Identification No.**      402203101003

# TAX DEED

**State of Florida**
**County Of Charlotte**

The following Tax Sale Certificate Numbered 3828-2013 issued on 1st day of June, 2013, was filed in the office of the Tax Collector of this County and application made for the issuance of a tax deed, the applicant having paid or redeemed all other taxes or tax sale certificates on the land described as required by law to be paid or redeemed, and the costs and expenses of this sale, and due notice of sale having been published as required by law, and no person entitled to do so having appeared to redeem said land; such land was sold on the 14th day of April, 2020, offered for sale as required by law for cash to the highest bidder and was sold to:
4K COIN LLC

**ADDRESS**
1530 RIVER MAIN COURT
LAWRENCEVILLE, GA 30046

being the highest bidder and having paid the sum of the bid as required by the Laws of Florida.

NOW, on 14th day of April, 2020, in the County of Charlotte, State of Florida, in consideration of the sum of 5,805.40 five thousand eight hundred five dollars and forty cents only being the amount paid pursuant to the Laws of Florida does hereby sell the following lands, including any hereditaments, buildings, fixtures and improvements of any kind and description, situated in the County and State aforesaid and described as follows:
PCH 034 0870 0028 PORT CHARLOTTE SEC 34 BLK 870 LT 28

Original Owners of Record:
CORFU HOMES, INC., A FLORIDA CORPORATION
CORFU HOMES INC

**Roger D. Eaton**
Clerk of the Circuit Court

**Witness:**

Karen Brese

Theresa Anderson

By: _____
Veronica C Torres, Deputy Clerk

**State of Florida**
**County Of Charlotte**

On the 11th day of May, 2020, before me Lori Lagios-Tuck personally appeared Veronica C Torres a Deputy Clerk for Clerk of the Circuit Court in and for the State and this County known to me to be the person described in, and who executed the foregoing instrument, and acknowledged the execution of this instrument to be his/her own free act and deed for the use and purposes therein mentioned, who is personally known to me and who did not take an oath.

Witness my hand and office seal date aforesaid.

Notary Public State of Florida

Lori Lagios-Tuck



LORI LAGIOS-TUCK
MY COMMISSION # GG 356476
EXPIRES: September 23, 2023
Bonded Thru Notary Public Underwriters

CHARLOTTE COUNTY CLERK OF CIRCUIT COURT
OR BOOK  4573 PAGE 1370 PAGE: 1 OF 4
INSTR # 2810465 Doc Type: TXD
Recorded 5/11/2020 at 10 11 AM
Rec. Fee: RECORDING $35.50 D DOCTAX PD $41.30
Cashier By: VERONICAT

# EXHIBIT "AA"

**WEENER NATHAN PHILLIPS** LLP

ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips

dphillips@wnpllp.com

December 1, 2020

***Via Certified Mail No.:*** *7019 2970 0002 1071 4828*
***Return Receipt Requested***

Carnegie Academy, LLC
Attn: NCS Partners, LLC
1881 W Traverse Parkway
Suite E 245
Lehi, Utah, 84043

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an

**WEENER NATHAN PHILLIPS**

Carnegie Academy, LLC
December 1, 2020
Page 2

agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable

Carnegie Academy, LLC
December 1, 2020
Page 3

to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

Carnegie Academy, LLC
December 1, 2020
Page 4

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing, fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:     Client.

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                  dphillips@wnpllp.com

December 1, 2020

***Via Certified Mail No.:*** ***7019 2970 0002 1071 4736***
***Return Receipt Requested***

Mr. Edward Stewart
2349 Commerce Street
Alpharetta, GA, 30009

> **Re:    Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

Dear Mr. Stewart

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

# WEENER NATHAN PHILLIPS

Mr. Edward Stewart
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Mr. Edward Stewart
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Mr. Edward Stewart
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:     Client.

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                    dphillips@wnpllp.com

December 1, 2020

**_Via Certified Mail No.:_** **_7020 2450 0001 8957 0934_**
**_Return Receipt Requested_**

Mr. Joshua Carr
602 N 800 E
Apt 201
Provo, Utah, 84606

> **Re:    Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments
> LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced
> and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced
> and Corrupt Organizations Act, Violations of Georgia Fair Business Practices
> Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of
> Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment,
> Piercing the Corporate Veil, Punitive Damages, Treble Damages and
> Reasonable Attorney's Fees**

Dear Mr. Carr:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin,
LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above
referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid
legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual
capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a
demand for purposes of settlement and compromise only. It shall not be admissible for any purpose
other than establishing notice in the event that we are unable to resolve the case. Please find
attached a copy of the complaint my client intends to file should this demand be rejected or ignored.
If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended
free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax
Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter
Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource
representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an
agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA
retirement account also to be used for purchasing tax liens.

# WEENER NATHAN PHILLIPS

Mr. Joshua Carr
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Mr. Joshua Carr
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Mr. Joshua Carr
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:     Client.

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                          dphillips@wnpllp.com

December 1, 2020

*__Via Certified Mail No.:__ 7020 2450 0001 8957 0941*
*__Return Receipt Requested__*

Keystone Investment Group, LLC
Attn: Edward Stewart
2349 Commerce Street
Alpharetta, GA, 30024

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

## WEENER NATHAN PHILLIPS

Keystone Investment Group, LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group, LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Keystone Investment Group, LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

WEENER NATHAN PHILLIPS, LLP

Devin B. Phillips

Enclosures

cc:     Client.

**WN**P **WEENER NATHAN PHILLIPS** LLP

ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                              dphillips@wnpllp.com

December 1, 2020

*Via Certified Mail No.: 7020 2450 0001 8957 0958*
*Return Receipt Requested*

Man Made LLC
Attn: Silverstrand, LLC
1180 S 400 E
Salt Lake City, Utah, 84111

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

## WEENER NATHAN PHILLIPS

Man Made LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Man Made LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Man Made LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

WEENER NATHAN PHILLIPS, LLP

Devin B. Phillips

Enclosures

cc:      Client.

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                              dphillips@wnpllp.com

December 1, 2020

***<u>Via Certified Mail No.:</u> 7020 2450 0001 8957 0965***
***Return Receipt Requested***

NEFF Companies, Inc.
Attn: Sprout RA Services, LLC
2912 Executive Parkway , Suite 120
Lehi, Utah, 84043

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

## WEENER NATHAN PHILLIPS

NEFF Companies, Inc.
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

NEFF Companies, Inc.
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

NEFF Companies, Inc.
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:     Client.

**WEENER NATHAN PHILLIPS** LLP

ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips

dphillips@wnpllp.com

December 1, 2020

***Via Certified Mail No.:*** *7020 2450 0001 8957 0972*
***Return Receipt Requested***

REI Holdings, LLC
Attn: Sprout RA Services, LLC
2912 Executive Parkway, Suite 120
Lehi, Utah, 84043

      **Re:**    **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

**WEENER NATHAN PHILLIPS**

REI Holdings, LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

REI Holdings, LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

REI Holdings, LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:     Client.

**WEENER NATHAN PHILLIPS** LLP

ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                    dphillips@wnpllp.com

December 1, 2020

***Via Certified Mail No.:*** *7020 2450 0001 8957 0989*
***Return Receipt Requested***

Seed Consulting, LLC
Attn: Marquis Aurbach Coffing
10001 Park Run Drive
Las Vegas, Nevada, 89145

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

Seed Consulting, LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Seed Consulting, LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Seed Consulting, LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:   Client.

# WEENER NATHAN PHILLIPS LLP

### ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips

dphillips@wnpllp.com

December 1, 2020

***Via Certified Mail No.: 7020 2450 0001 8957 0996***
***Return Receipt Requested***

Silverstrand, LLC
Attn: Edward Stewart
1880 S 400 E
Salt Lake City, Utah, 84111

> **Re:   Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

## WEENER NATHAN PHILLIPS

Silverstrand, LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Silverstrand, LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Silverstrand, LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:     Client.

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips

dphillips@wnpllp.com

December 1, 2020

***Via Certified Mail No.: 7020 2450 0001 8957 1009***
***Return Receipt Requested***

Slickrock LLC
Attn: Registered Agents Inc.
401 Ryland Street, Suite 200-A
Reno, Nevada, 89502

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

## WEENER NATHAN PHILLIPS

Slickrock LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Slickrock LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Slickrock LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

WEENER NATHAN PHILLIPS, LLP

Devin B. Phillips

Enclosures

cc:    Client.

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                              dphillips@wnpllp.com

December 1, 2020

***Via Certified Mail No.:*** *7020 2450 0001 8957 1016*
***Return Receipt Requested***

Sprout Financial LLC
Attn: Sprout RA Services LLC
2912 Executive Parkway, Suite 120
Lehi, Utah, 84043

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

## WEENER NATHAN PHILLIPS

Sprout Financial LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Sprout Financial LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Sprout Financial LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:      Client.

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                                dphillips@wnpllp.com

December 1, 2020

*Via Certified Mail No.:* **7020 2450 0001 8957 1023**
*Return Receipt Requested*

Sprout CF Fund, Inc.
Attn: Shumway Van LLC
8 E Broadway ST # 550
Salt Lake City, Utah, 84111

**Re:**   **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

# WEENER NATHAN PHILLIPS

Sprout CF Fund, Inc.
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Sprout CF Fund, Inc.
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Sprout CF Fund, Inc.
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:      Client.

# WNP WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                            dphillips@wnpllp.com

December 1, 2020

*__Via Certified Mail No.:__ 7020 2450 0001 8957 1030*
*__Return Receipt Requested__*

Sprout Investment Partners, LLC
Attn: Shumway Van LLC
8 E Broadway St #550
Salt Lake City, Utah, 84111

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

# WEENER NATHAN PHILLIPS

Sprout Investment Partners, LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Sprout Investment Partners, LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Sprout Investment Partners, LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:    Client.

# WEENER NATHAN PHILLIPS LLP
## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                                          dphillips@wnpllp.com

December 1, 2020

*Via Certified Mail No.:* **7020 2450 0001 8957 1047**
*Return Receipt Requested*

Sprout IRA, LLC
Attn: Sprout RA Services, LLC
2912 Executive Parkway, Suite 120
Lehi, Utah 84043

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

# WEENER NATHAN PHILLIPS

Sprout IRA, LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Sprout IRA, LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Sprout IRA, LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:     Client.

# WN P  WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                        dphillips@wnpllp.com

December 1, 2020

*Via Certified Mail No.: 7020 2450 0001 8957 1054*
*Return Receipt Requested*

Sprout Residential Fund, LLC
Attn: Shumway Van LLC
8 E Broadway St #550
Salt Lake City, Utah 84111

Re:     **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments
        LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced
        and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced
        and Corrupt Organizations Act, Violations of Georgia Fair Business Practices
        Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of
        Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment,
        Piercing the Corporate Veil, Punitive Damages, Treble Damages and
        Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

# WEENER NATHAN PHILLIPS

Sprout Residential Fund, LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Sprout Residential Fund, LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Sprout Residential Fund, LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

WEENER NATHAN PHILLIPS, LLP

Devin B. Phillips

Enclosures

cc:    Client.

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                                 dphillips@wnpllp.com

December 1, 2020

*__Via Certified Mail No.:__ **7020 2450 0001 8957 1061**__*
*__Return Receipt Requested__*

Superstar LLC
Attn: Josh Carr
1155 Park Meadows Drive
Mapleton, Utah, 84664

   **Re:**  **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

  Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

  This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

  On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

## WEENER NATHAN PHILLIPS

Superstar LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Superstar LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Superstar LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:     Client.

# WNP WEENER NATHAN PHILLIPS LLP

### ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                    dphillips@wnpllp.com

December 1, 2020

*Via Certified Mail No.:* **7020 2450 0001 8957 1078**
*Return Receipt Requested*

Ms. Tonya Neff
3291 W Millville Street
South Jordan, Utah 84095

**Re:**   **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

Dear Ms. Neff:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

## WEENER NATHAN PHILLIPS

Ms. Tonya Neff
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Ms. Tonya Neff
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Ms. Tonya Neff
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

WEENER NATHAN PHILLIPS, LLP

Devin B. Phillips

Enclosures

cc:     Client.

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips

dphillips@wnpllp.com

December 1, 2020

***Via Certified Mail No.:*** *7020 2450 0001 8957 1085*
***Return Receipt Requested***

Zulu Marketing, LLC
Attn: Silverstrand, LLC
1180 S 400 E
Salt Lake City, Utah, 84111

> **Re:** **Notice of Representation of Kelvin Graddy, 4K Coin LLC, KVG Investments LLC, and The KD9 Group, LLC; Violations of Federal Racketeer Influenced and Corrupt Organizations Act; Violations of Georgia Racketeer Influenced and Corrupt Organizations Act, Violations of Georgia Fair Business Practices Act; Notice of Intent to File Suit pursuant to O.C.G.A. § 10-1-339; Notice of Legal Claims, Including Breach of Contract, Fraud, Unjust Enrichment, Piercing the Corporate Veil, Punitive Damages, Treble Damages and Reasonable Attorney's Fees**

To whom it may concern:

Please be advised that I serve as legal counsel to Kelvin Graddy, Kavelle Fields, 4K Coin, LLC, KVG Investments LLC, and The KD9 Group, LLC, ("Mr. Graddy") regarding the above referenced matter. The purpose of this correspondence is to provide you the opportunity to avoid legal action against Carnegie Academy, LLC ("ProSource") and its owners in their individual capacities by resolving the above referenced matter immediately.

This letter is being sent to you pursuant to O.C.G.A. § 10-1-399 and is in the nature of a demand for purposes of settlement and compromise only. It shall not be admissible for any purpose other than establishing notice in the event that we are unable to resolve the case. Please find attached a copy of the complaint my client intends to file should this demand be rejected or ignored. If you wish to see the exhibits to the complaint, we will provide upon request.

On or about January 29, 2019, Mr. Graddy and his business partner Kevelle Fields attended free one-day tax lien seminar held by ProSource where they agreed to purchase a three-day Tax Lien Investing Education Course (the "Workshop") being held at the Atlanta Marriot Perimeter Center Hotel from February 8, 2019 to February 10, 2019. At this seminar, ProSource representatives put Mr. Graddy into contact with its affiliate Sprout IRA and he signed an agreement with Sprout IRA to create and register KVG Investments LLC as a self-directed IRA retirement account also to be used for purchasing tax liens.

# WEENER NATHAN PHILLIPS

Zulu Marketing, LLC
December 1, 2020
Page 2

At the February Workshop, ProSource representatives offered Mr. Graddy and Ms. Fields the opportunity to purchase one of its packages for additional training, products, and services. ProSource representatives stated that ProSource would help them obtain a loan/and or financing with 0% interest for a year or longer that would in effect allow them to pay for the price of the package as well as future tax liens to sell before any interest accrued. Acting upon a good faith belief based on ProSource representatives' fraudulent representations, Mr. Graddy and his partner agreed to purchase the Diamond Executive Package ("DEP Agreement") for a sum of $39,994.00. Mr. Graddy paid $30,000 upfront, split between two of his personal credit cards with the remaining balance to be charged later by a ProSource affiliate, Silverstrand LLC. Along with the purchase of the DEP Agreement, ProSource provided Mr. Graddy with a Commitment Guarantee, with no expiration date, expressly providing that ProSource would "continue to help [Mr. Graddy] until [he has] earned at least 100% of [his] investment in [your] program."

Following the Workshop, ProSource's affiliate Seed Consulting, LLC, d/b/a/ Seed Capital Corp., (hereinafter "Seed Capital") contacted Mr. Graddy under the misrepresentation that Seed would help him finance ProSource's training cost by providing him with cash credit lines. Seed Capital opened numerous credit card accounts on Mr. Graddy's behalf to finance the payments for ProSource's DEP Agreement and future tax lien purchases, for which Seed Capital charged Mr. Graddy $2,997.00 on February 22, 2019.

From March 27, 2019 through March 30, 2019, Mr. Graddy attended a ProSource seminar in Orlando, Florida, where ProSource had various speakers make presentations about investing in tax liens before pulling a "bait and switch" and focusing on real estate investing and flipping houses. During this seminar, ProSource speakers and representatives made deceptive, misrepresentative, and fraudulent statements by claiming its affiliate REI Holdings, LLC, had multiple "turn-key" properties available. Several so called "turn-key" properties were displayed in a limited series of binders for attendees to look at while ProSource representatives fraudulently induced attendees to purchase the Tax Lien Investing Program (hereinafter "TLIP Package") which was expressly stated to included additional training, products, and services. On March 15, 2019, Mr. Graddy purchased the TLIP Package for a sum of $21,000.00 Since purchasing the TLIP Package, ProSource, REI Holdings LLC and their affiliates have disappeared, and my clients have been unable to access the properties database, training, products, or services promised.

On March 29, 2019, 4K Coin LLC, entered into a Tax Lien Assignment Agreement, paying $2,244.84, for the assignment of three separate tax liens on vacant residential properties with REI Holdings, LLC, (the "Tax Lien Agreement"). Mr. Graddy, acting as the authorized agent for 4K Coin, signed as the assignee and Edward Stewart, signed on behalf of REI Holdings as the assignor. In addition, relying on ProSource employees' advice, Mr. Graddy purchased multiple additional liens for approximately $18,620.83. Unfortunately, Mr. Graddy learned that ProSource, its representatives, and affiliates' representations regarding the tax liens were false, to wit: ProSource failed to properly disclose the full details of the foreclosure process and that he would be unable to foreclose on the properties and recoup his investment in time before the credit card payments became due.

Zulu Marketing, LLC
December 1, 2020
Page 3

Upon learning of the full foreclosure process and that he would incur substantial interest on the outstanding balance of his cards, Mr. Graddy made several attempts to contact ProSource for help, as was expressly provided for in the DEP Package, Commitment Guarantee, and TLIP. However, ProSource has since stopped answering phone calls and emails and left Mr. Graddy and others to fend for themselves.

Through our investigate efforts and in conjunction with the Georgia Attorney General's Office, it has since been discovered that ProSource, using its affiliated shell entities, Sprout CF Fund Inc., Sprout IRA LLC, Sprout Financial LLC, Sprout Investment Partners LLC, Sprout Residential Fund LLC, Seed Consulting LLC, REI Holdings LLC, Neff Companies Inc., Slickrock LLC, Silverstrand LLC, Zulu Marketing LLC, Superstar LLC, Man Mad LLC, Keystone Investment Group LLC, and their respective managers/owners/executives/directors/founders, Joshua Carr, Edward Stewart, and Tonya Neff have knowingly engaged in a criminal scheme designed to lure unsuspecting consumers into spending thousands on expensive training packages and workshops, purporting to share lucrative secrets but instead fraudulently deceive them and leave them in financial ruin.

ProSource, its affiliates, Joshua Carr, Edward Stewart, and Tonya Neff have not lived up to, nor did they intend to live up, the representations and promises made to unsuspecting consumers of their training, products and services. The aforementioned parties executed and breached several agreements it entered into with Mr. Graddy and/or his various Limited Liability Companies. The aforementioned parties have used their corporate veils to perpetuate fraud, violated Georgia's Fair Business Practices Act, as well as both Georgia's and the Federal Racketeer Influenced and Corrupt Organizations Act, each of which has caused Mr. Graddy to suffer substantial financial injuries.

Based on the above, my clients are entitled to damages. In a good faith effort to resolve this matter short of litigation, my client proposes the following: reimbursement of the full amounts of the Diamond Executive Package, Tax Lien Investing Program, and Tax Lien Assignment, and subsequent tax liens purchased, and in the amount of Eighty-One Thousand Eight Hundred Fifty-Nine and 67/100 ($81,859.67) as well as the additional Four Thousand Three Hundred Eighty Five Dollars and 43/100 ($4,385.43) from the credit card interest and fees.

In addition to the above demand, the above-mentioned parties deceptive and fraudulent practices and general indifference to my client's good faith efforts to resolve these matters short of incurring legal charges have forced my client to hire legal counsel; therefore, Mr. Graddy also demands reimbursement for all legal fees incurred to date in the amount of $12,650.00.

Per O.C.G.A. § 10-1-399, you have thirty (30) days from your receipt of this correspondence to pay the total amount of Ninety-Eight Thousand Eight Hundred Ninety-Five and 10/100 ($98,895.10). I have enclosed my law firm's wiring instructions to facilitate the payment.

This matter can be quickly and amicably resolved. However, should you fail to comply with my client's reasonable demands, my client will not hesitate to file a lawsuit for claims including, but not limited to, breach of contract, breach of implied good faith and fair dealing,

Zulu Marketing, LLC
December 1, 2020
Page 4

fraud, punitive damages in an amount no less than $250,000; treble damages for violations of the Georgia Fair Business Practices Act, violations of Georgia's and Federal Racketeer Influenced and Corrupt Organizations Act, unjust enrichment, and my attorney's fees. Additionally, as Joshua Carr, Edward Stewart, and Tonya Neff, should have known or knowingly participated in the deceptive and fraudulent scheme, and disregarded their respective corporate entities and are utilizing the entities to evade their contractual responsibilities, Mr. Graddy will ask the court to pierce the corporate veil against all defendants.

I trust that the foregoing is clear; however, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPS, LLP**

Devin B. Phillips

Enclosures

cc:    Client.

# EXHIBIT "BB"

# MARQUIS AURBACH COFFING

DIRECT LINE: (702) 942-2136
DIRECT FAX: (702) 382-5816
EMAIL: TCOFFING@MACLAW.COM

ALBERT G. MARQUIS
PHILLIP S. AURBACH
AVECE M. HIGBEE
TERRY A. COFFING
SCOTT A. MARQUIS
JACK CHEN MIN JUAN
CRAIG R. ANDERSON
TERRY A. MOORE
GERALDINE TOMICH
NICHOLAS D. CROSBY
TYE S. HANSEEN
DAVID G. ALLEMAN
CODY S. MOUNTEER
CHAD F. CLEMENT
CHRISTIAN T. BALDUCCI

JARED M. MOSER
MICHAEL D. MAUPIN
KATHLEEN A. WILDE
JACKIE V. NICHOLS
RACHEL S. TYGRET
JORDAN B. PEEL
JAMES A. BECKSTROM
COLLIN M. JAYNE
ALEXANDER K. CALAWAY
SUSAN E. GILLESPIE

JOHN M. SACCO [RET.]
LANCE C. EARL
WILLIAM P. WRIGHT
BRIAN R. HARDY
JENNIFER L. MICHELI
OF COUNSEL

December 17, 2020

**Via Email (dphillips@wnpllp.com)**

Devin B. Phillips, Esq.
5887 Glenridge Drive NE, Ste. 275
Atlanta, GA 30328

Re:     Kelvin Graddy, et al.
        Our Client: Seed Consulting, LLC
        Our File No. 13781-34

Dear Mr. Phillips:

Please be advised that I represent Seed Consulting, LLC in relationship to a letter you wrote regarding your client Kelvin Graddy. I believe your correspondence misstates the facts and refers to Seed as an affiliate of ProSource. Seed is an independent organization with no formal affiliation with any of the parties you identify as defendants. In fact, your letter has scant facts relating to the conduct of Seed versus the conduct of ProSource and the other defendants you name. My client provided a service for a fee that was undeniably accepted by your clients. As part and parcel of the agreement between the parties, your clients executed a contract with Seed that clearly calls for Nevada choice of law and venue.

Absent additional facts, Seed wholeheartedly denies any allegation of any wrongdoing your client may assert.

Aside from the lack of liability, I should advise you that Seed will be ceasing operations in the very near future. Additionally, you should be aware of other lawsuits have been filed against Seed in Washington and in Nevada purporting to be class actions. All of this is in the wake of the FTC's crackdown on the educational seminar business space. I believe Seed would be successful in defending not only the facts you allege but in the other pending lawsuits. However, that will be a moot point if Seed is simply no longer in existence.

Devin B. Phillips, Esq.
December 17, 2020
Page 2

       Based upon the foregoing, Seed respectfully denies the allegations and the thrust of your demand of your letter of December 1, 2020.  Should you wish to discuss further, please do not hesitate to call.

                         Sincerely,

                         MARQUIS AURBACH COFFING

                         Terry A. Coffing, Esq.

TAC:sm
cc: client (via email)
MAC:13781-010 4232314_1 12/17/2020 1:23 PM

# EXHIBIT "CC"

# MOFFITT LAW, LLC

### Jonathan C. Moffitt, Attorney at Law
770 E. Main St., Box 378, Lehi, UT 84043 • (801) 613-2684 – jmoffitt@moffittlaw-utah.com
Licensed to Practice in Utah and Georgia

---

December 23, 2020

Devin B. Phillips, Esq.
Weener Nathan Phillips, LLP
5887 Glenridge Dr. NE, Suite 275
Atlanta, GA 30328

ALSO SENT VIA EMAIL dphillips@wnpllp.com

RE: Kelvin Graddy, Kavelle Fields, et al.

**FOR SETTLEMENT DISCUSSIONS ONLY; NOT ADMISSIBLE AS EVIDENCE**

Dear Mr. Philips:

This letter is in response to your demand that was received on December 10, 2020. For the purposes of this response and in an effort to resolve this matter without litigation, I represent all parties identified in your draft complaint except Seed Consulting, LLC. for reasons discussed below.

Your letter and the accompanying draft complaint are filled with egregiously false accusations and allegations leading to an outrageous demand. It is clear that your clients have failed to inform you of all facts surrounding their purchases. Moreover, attempting to drag in unrelated entities and individuals, such as Tonya Neff and various clothing companies, that have nothing to do with Carnegie Academy ("Carnegie"), ProSource or REI Holdings, LLC ("REI"), ostensibly in an effort to create leverage for settlement, goes beyond zealously advocating for your client and is a violation of the Georgia Bar's Lawyer's Creed to offer fairness, integrity and civility to opposing parties.

First, Carnegie, ProSource and REI take customer complaints seriously. They strive to provide excellent customer service and quality products. They also make it clear that the programs and products they offer are not meant to be a "get-rich-quick" scheme and that work must be done on the part of the customer in addition to any training that is provided to them. They have hundreds, if not thousands, of successful customers that have done well with tax lien and real property investments. When customers are dissatisfied, my clients will examine the facts and determine where the problem lies and will work with customers to remedy the situation in a manner that is fair under the circumstances. Not once in the first 15 months of their professional relationship, did your clients ever request any sort of refund for any of the products or services provided. Your claims that they are conducting an operation designed to defraud unsuspecting victims are baseless and without legal or factual merit. None of these entities promises that money will be made or the timing thereof. In fact, presenters and representatives at events are

# MOFFITT LAW, LLC

### Jonathan C. Moffitt, Attorney at Law

770 E. Main St., Box 378, Lehi, UT 84043 • (801) 613-2684 – jmoffitt@moffittlaw-utah.com
Licensed to Practice in Utah and Georgia

instructed NOT to make such claims. If you have anything to the contrary in writing, please send it for my review.

Second, with respect to the services your clients purchased, Mr. Graddy purchased a Self-Directed IRA limited liability package from Sprout IRA, LLC on January 29, 2019. He received everything associated with purchase, evidenced in part by the existence of KVG Investments, LLC. Not once has he complained about his purchase. None of your clients ever purchased services from Sprout Financial, LLC, Sprout CF Fund, Inc., or Sprout Residential Fund, LLC (each entirely different entities, with different ownership and product/service offerings),

Mr. Graddy and Ms. Fields purchased the Diamond Executive Package from ProSource on or about February 10, 2019. Pursuant to this contract, they purchased the following products and services:

|       |                                                     |
|-------|-----------------------------------------------------|
| i.    | Six-Week Quick Start Webinar Course                 |
| ii.   | Three-Day Advanced Tax Lien Tour                    |
| iii.  | Two-Day Tax Lien Mastery Training                   |
| iv.   | Four-Day Real Estate Summit                         |
| v.    | Two-Day Wholesale Mastery Bootcamp                  |
| vi.   | Two-Day Commercial, Cash Flow, and Multi-Unit Bootcamp |
| vii.  | One-Day Asset Protection Bootcamp                   |
| viii. | Tax Lien & Real Estate Software – Property Edge Pro |
| ix.   | On-Demand Online Tax Lien Training                  |
| x.    | Turnkey Cash Flow Club Membership                   |
| xi.   | Access to tax Lien & Real Estate Hotline            |

The Webinar courses were completed by March 27, 2019. Your clients attended the Tax Lien Tour in April 2019, for which Mr. Graddy gave a completely positive review (enclosed herewith). According to our records one or both also attended the Wholesale Master Bootcamp and the Commercial Cash Flow and Multi-Unit Bootcamp in early 2020. Due to COVID-19, many live events that were scheduled for 2020 could not be held and customers, such as your clients, were sent recordings of previously held events so they could still receive the information they had purchased. If and when live events can be restarted, these customers will be invited to attend.

Additionally, your clients certainly had access to the software and the hotline. ProSource's records show Mr. Graddy called the hotline on November 18, 2019 to discuss with a ProSource representative a turnkey property he had found through the Property Edge Pro Software.

On or about March 15, 2019, Mr. Graddy and Ms. Fields purchased additional services to obtain one-on-one mentoring sessions in tax lien and real estate, as well as access to tax lien and

# MOFFITT LAW, LLC

### Jonathan C. Moffitt, Attorney at Law

770 E. Main St., Box 378, Lehi, UT 84043 • (801) 613-2684 – jmoffitt@moffittlaw-utah.com
Licensed to Practice in Utah and Georgia

property inventory. Between March 20, 2019, and November 8, 2019, they completed six (6) of the ten (10) tax lien coaching sessions with Ms. Erin Bates. Similarly, between April 25, 2019 and September 30, 2109, they completed all 14 real estate coaching sessions with Mr. Karl Benson. Following their last completed coaching session with Ms. Bates, your clients did not reach out to her to schedule further appointments. She is ready, willing and able to complete the remaining four (4) sessions with your clients.

Third, your clients certainly had access to the tax lien and real property inventory. On at least one occasion, he reached out to Ms. Bates to discuss turnkey properties and she presented them with two properties she believed they may want to consider.

They also purchased five (5) tax liens from REI Holdings, LLC. Through 4K Coin, LLC, they purchased three tax liens in Charlotte County, Florida. Through KVG Investments, LLC, they purchased 2 liens in Polk County, Florida. Contrary to your assertions that these tax liens were "false," 4K Coin, LLC successfully foreclosed on two of the tax liens in Charlotte County and now owns the land that it is free to develop. According to public information sources, homes in this area are typically worth $200,000 - $300,000, depending on size and finish qualities. The Polk County liens are still active and do not expire until 2024.

Customers are expected to use the principles taught to them to do their own due diligence on tax liens. Indeed, in their contracts, they represent that they have done such due diligence and they are solely responsible for their purchases. If your clients were not satisfied with their purchase, they could have canceled within the first three (3) days to receive a full refund and within the first thirty (30) days to receive a partial refund.

REI's inventory, both tax liens and real property, constantly changes as inventory portfolios are purchased and sold. Quite often, several customers attending events, especially tour events, show interest in the same properties and tax liens and the most desirable inventory is quickly sold. Neither Carnegie, ProSource, nor REI can control which customers buy which tax liens or properties. Nevertheless, REI currently has hundreds of thousands of dollars' worth of inventory to select from. Your clients have the opportunity to continue to make purchases that he believes will be of benefit to him.

Fourth, if your clients have been unable to reach ProSource, it is not because ProSource has ignored him. Our records show that Mr. Graddy spoke with one employee as recently as April 2020. They also would have had the personal cell numbers of his coaches. Moreover, they have the number for the ProSource "hotline" which is still in use by ProSource. If Mr. Graddy or Ms Fields contacted ProSource and their calls or emails were not returned, it was simply a miscommunication, very likely due to the effects COVID-19 have had on many small businesses around the county, not a grand scheme to deprive your clients of the services ProSource provides.

# MOFFITT LAW, LLC

### Jonathan C. Moffitt, Attorney at Law
**770 E. Main St., Box 378, Lehi, UT 84043 • (801) 613-2684 – jmoffitt@moffittlaw-utah.com**
**Licensed to Practice in Utah and Georgia**

Fifth, pursuant to the contracts your clients signed, any action based on the purchase of tax liens from REI or the Sprout IRA, LLC purchase must be filed in the State of Utah. Similarly, any action based on the ProSource Diamond Elite Package must be brought as arbitration and held in the State of Utah. Actions based on any of the contracts signed are governed by the laws of the State of Utah.

Sixth, Seed Consulting, LLC ("Seed") is a third-party vendor that sold its own products and services at ProSource events. Seed does not have, nor has it ever had any common ownership or management with REI, Carnegie, ProSource, any of the Sprout entities. Neither those entities, nor anyone associated with any of those entities (or any of the other persons or entities which you identified in your draft complaint) received any sort of compensation from Seed for appearing at or selling its products at ProSource events. Seed has its own employees, presenters, and contractors. It uses its own contracts with customers. Any monies financed to customers are paid back directly to Seed. My clients have no control whether or not customers engage with Seed or how any funds they obtain through Seed are used. Any claims your clients may have against Seed must be dealt with separately.

ProSource is happy to continue supporting your clients in their efforts to succeed in purchasing tax liens and real property. It will honor its commitment to do so. Again, Ms. Bates stands by ready to continue with their one-on-one coaching sessions. If they prefer a different mentor, ProSource can reassign them to someone else. If your clients have specific questions about events he attended or received recordings of, ProSource can have the appropriate person contact him to answer such questions. They can always call the hotline numbers at: 844-311-5553 (Real Estate support) and 844-474-4282 (Tax Lien support). Again, when live events are continued, your clients will be invited to attend even though they already received the recordings of the events.

If your client does not want to continue with the ProSource programs, my clients are willing to consider reasonable refund possibilities. Under the circumstances, based on the services that have been provided and the fact that your clients have successfully obtained properties through tax lien foreclosure, my clients do not believe your demand is reasonable.

If your client chooses to go down the path of litigation, the complaint, as presently constituted, will be met with a motion to dismiss the entire action for violation of the jurisdiction and venue clauses, as well as dismissing the parties that have nothing to do with the transactions that occurred, and dismissing any action based off Georgia law and not Utah law, which governs. Furthermore, as appropriate, I will seek our attorney's fees and costs pursuant to OCGA 9-15-14 (or related statutes), for filing in the State of Georgia, naming the irrelevant parties and for any other allegations or causes of action that are frivolous.

# MOFFITT LAW, LLC

**Jonathan C. Moffitt, Attorney at Law**
770 E. Main St., Box 378, Lehi, UT 84043 • (801) 613-2684 – jmoffitt@moffittlaw-utah.com
Licensed to Practice in Utah and Georgia

While my clients prefer to resolve this matter amicably, they will pursue all available remedies available to them in law and equity to protect their interests. Please let me know if you would like to discuss a resolution to this matter. Thank you and I look forward to hearing from you.

Sincerely,

Jonathan Moffitt

Encl.



**SATISFACTION SURVEY**

Name: Kelven Graddy    City: Lawrenceville    State: GA

Were you invited as a guest? _____ Yes    __X__ No (I was the primary attendee)

## General Feedback (Circle yes or no)

- Did you learn new concepts and ideas at this event?   Yes
- Was the information valuable?   Yes  Yes
- Do you feel the event was worthwhile?   Yes
- Did the instructors present concepts in an understandable manner?   Yes
- Was the staff helpful?   Yes

## Please the following 1-5 (5 being the best/strongly agree)

|                                                | 1 | 2 | 3 | 4 | 5 |
|------------------------------------------------|---|---|---|---|---|
| The information presented was valuable         |   |   |   |   | ✓ |
| The instructor(s) was courteous and professional |   |   |   |   | ✓ |
| The staff was courteous and professional       |   |   |   |   | ✓ |
| Rate your overall experience at the event      |   |   |   |   | ✓ |

Favorite Staff Member: Erin Bates

Additional Comments

# EXHIBIT "DD"

# WEENER NATHAN PHILLIPS LLP

## ATTORNEYS AT LAW

5887 GLENRIDGE DRIVE NE
SUITE 275
ATLANTA, GEORGIA 30328
T: (770) 392-9004
F: (770) 522-9004
W: WNLLP.COM

Devin B. Phillips                                                dphillips@wnpllp.com

January 25, 2021

***Via Certified Mail No.: 7020 2450 0001 8957 1160***
***Return Receipt Requested; and***
***Electronic Mail: jmoffitt@moffittlaw-utah.com***

Johnathan C. Moffitt, Esq.
770 E. Main St., Box 378
Lehi, UT 83043

**Re:    Response to December 23, 2020 RE: Kelvin Graddy, Kavelle, Fields, et al.**

Dear Mr. Moffitt:

As you are aware, the undersigned serves as counsel to Kelvin Graddy and Kevelle Fields. I am in receipt of your December 23, 2020 response that you sent on behalf of your clients.

<u>Named Parties and Applicability of Section 1962 of RICO</u>

In your response you indicated that neither Mr. Graddy or Ms. Fields purchased Services from Sprout Financial, LLC, Sprout CF Fund, Inc., or Sprout Residential Fund, LLC, and claim that each are entirely different entities, with different ownership and product/service offerings. You also state the complaint is an attempt to drag in unrelated entities and individuals "in an effort to create leverage for settlement." From our research into the matter, there are facts that support the named Defendants developed and implemented a fraudulent scheme to sell flawed and defective products and services to unsuspecting and credulous consumers. The named Defendants, including Sprout Financial, LLC, Sprout CF Fund, Inc., Sprout Residential Fund, LLC, Tonya Neff, Silverstrand, LLC, and Seed Consulting, LLC, acted in concert, in dependent roles, outside any typical business relationship and with a common purpose to defraud innocent, unsuspecting consumers.

The Defendants employed and organized entities and individuals to execute their preplanned scheme to convince clients to purchase multiple levels of increasingly expensive seminars, trainings, and related products under the guise of becoming successful real estate investors. The Defendants and their co-conspirators used the mail and/or wires to develop, promote, sell, and implement the real estate and tax lien scheme, which was known to be flawed. The named Defendants, acting dependently and in concert within a network of associated limited liability companies, corporations, and individuals engaged in a well-orchestrated scheme to defraud and injure Mr. Graddy, Ms. Fields and other Georgia consumers.

## WEENER NATHAN PHILLIPS

Johnathan C. Moffitt, Esq.
January 25, 2021
Page 2

18 U.S.C. § 1965(d) authorizes national service of process, including summons, and thus personal jurisdiction over any RICO defendant if served in a judicial district in which the defendant "resides, is found, has an agent, or transacts his affairs." Venue for these defendants must be satisfied by the requirements of the general venue statute, 28 U.S.C. § 1391, or 18 U.S.C. § 1965(a). Once a RICO defendant is within a court's jurisdiction and venue, § 1965(b) allows a court to serve process on, and be a proper venue for, any other RICO defendant if the charges against the additional defendants are connected to the case against the first defendant and the case against the first defendant cannot be fully adjudicated without the presence of the additional defendants.

As you noted, Carnegie Academy ("Carnegie"), ProSource, and REI Holdings, LLC ("REI") purposefully availed themselves to the laws and benefits of Georgia and therefore pursuant to the RICO statute, the additional co-defendants connected to the case and necessary for the full adjudication of this matter may be brought before the Georgia court.

### Applicability of the Georgia Long Arm-Statute O.C.G.A. § 9-10-91

Georgia's long-arm statute, O.C.G.A. § 9-10-91, allows a plaintiff to obtain personal jurisdiction in Georgia over a non-resident defendant that lacks a permanent Georgia presence. The long-arm statute applies where the plaintiff can show that his claim relates directly to the defendant's transaction of business with Georgia or where the defendant commits a tortious injury in Georgia caused by an act or omission out-side of Georgia if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Georgia. The defendants have directed their activities at residents of Georgia, including Mr. Graddy and Ms. Fields, as well as other Georgia consumers, and the injuries suffered by Mr. Graddy and Ms. Fields arise out of and relate to your clients' activities.

### Products and Services

A factual dispute exists as to which of the advertised products and services of the Diamond Executive Package that Mr. Graddy and Ms. Fields received, most notably, the Tax Lien & Real Estate Software: TaxLienCloud.com & Property Edge Pro, which was advertised as providing access to tax liens and turnkey properties, but merely list available properties and nothing else. Additionally, Mr. Graddy and Ms. Fields no longer have access to these programs, as well as to the Tax Lien & Real Estate Hotline as their phone calls and emails no longer will go through, despite being advertised as coming with two (2) years of live support. Indeed, the numbers you provided in your letter, 844-311-5553 (Real Estate support) and 844-474-4282 (Tax Lien support) contacts an eye care business while the other plays a prerecorded general response indicating that no support is available at this time, to leave contact information and someone will be in contact, respectively.

Mr. Graddy and Ms. Fields did not receive the full benefit of the lien coaching sessions before Ms. Bates became unresponsive to phone calls and her email came back as undeliverable.

Johnathan C. Moffitt, Esq.
January 25, 2021
Page 3

My clients also did not receive the full benefit of the real estate coaching sessions with Karl Benson before Mr. Benson dropped out of contact and became unreachable.

Carnegie, Prosource, and REI may claim that they take customer complaints very serious and strive to provide excellent customer service and quality products, it would appear that each provide a partial benefit to their consumers, providing some of the promised services, training, and products before disappearing leaving their customers holding high amounts of credit card debt without the support network they were promised, breaching their "Commitment Guarantee" to work with and help Mr. Graddy and Ms. Fields "until [they] have earned at least 100% of [their] investment" in the program.

<u>Tax Liens and Foreclosed Properties</u>

In addition to the failure to provide the fully training, products and other services, the Defendants have engaged in deceptive and fraudulent practices as demonstrated by the sale of the tax liens to Mr. Graddy and Ms. Fields LLC's 4K Coin, LLC, and KVG Investments, LLC, primarily the two (2) liens in Polk County, Florida.

First and foremost, your clients made representations to Mr. Graddy and Ms. Fields that if they were unsatisfied with the purchase of the tax liens, the liens would be purchased back for the full amount paid.

Additionally, while 4K Coin, LLC successfully foreclosed on two of the tax liens in Charlotte County, pursuant to Fla Stat. §§ 95.191, 95.192, the properties are unmarketable for four years. In order for the properties to be sold in the future, Mr. Graddy and Ms. Fields must continue to not only pay the interest on the credit cards used to purchase the liens, despite the statements made at the seminars and during the provided training that the properties could be sold before any interest accrued, Mr. Graddy and Ms. Fields are now required to pay the property taxes until the properties become marketable, effectively rendering the properties worthless.

<u>Arbitration Agreements, Choice of Law, and Forum Selection Clauses</u>

We have amended our Complaint to solely pursue the statutory claims available to my clients. Such claims are not governed by the contractual agreements between the parties. The racketeering activity occurred in the State of Georgia. If we are not able to resolve this matter in short order, we will move forward with filing the Complaint in the State of Georgia.

<u>Conclusion</u>

With the above said, your letter indicates that your clients prefer to resolve this matter amicably, a sentiment that Mr. Graddy and Ms. Fields share. Mr. and Graddy and Ms. Fields have made their demand clear, but I cannot advise them to negotiate against themselves. My clients are willing to forbear filing the Complaint until Monday, February 1, 2021 at 5:00 PM Eastern Time. Should your clients ignore this opportunity to resolve the case or if the offer does not reflect my clients' actual damages, my clients have authorized me to file suit.

Johnathan C. Moffitt, Esq.
January 25, 2021
Page 4

I trust the foregoing is clear, should you have any questions do not hesitate to contact me.

Best Regards,

**WEENER NATHAN PHILLIPSLLP**

Devin B. Phillips

cc:     Clients.

# EXHIBIT "EE"

**From:** jmoffitt@moffittlaw-utah.com <jmoffitt@moffittlaw-utah.com>
**Sent:** Wednesday, January 27, 2021 12:44 PM
**To:** Devin Phillips <dphillips@wnpllp.com>
**Subject:** RE: Kelvin Graddy, Kavelle Fields, et al.

Mr. Phillips:

Thank you for your response. I would like to ask for an extension for the time to respond, as my clients are working to compile some information that I feel would be dispositive to the potential claims your clients intend to assert and would help provide a better perspective for any settlement discussions.  Would you be amenable to extending your deadline until 5:00 p.m. eastern time on Monday, February 8, 2021? Please let me know as soon as possible. Thank you.

Best Regards,

Jonathan Moffitt
770 East Main Street #378
Lehi UT 84043
801-613-2684

CONFIDENTIALITY NOTICE: This e-mail transmission (and/or the attachments accompanying it) may contain confidential information belonging to the sender which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this transmission in error, please promptly notify the sender by reply e-mail, and then destroy all copies of the transmission.