**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| KELVIN GRADDY, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>CARNEGIE ACADEMY, LLC, d/b/a<br>PROSOURCE TAX LIENS, a/d/b/a TAX<br>LIEN TOUR, *et al.*,<br><br>    Defendants. | Civil Action No.<br>1:21-cv-00639-SDG |

**OPINION AND ORDER**

This matter is before the Court on Defendants Carnegie Academy, LLC (ProSource) and REI Holdings, LLC's (REI) motion to transfer or, in the alternative, to stay proceedings and compel arbitration [ECF 39]; Defendants Joshua Carr; Keystone Investment Group, LLC; Man Made LLC; Tonya Neff; Neff Companies Inc.; Silverstrand, LLC; Slickrock, LLC; Sprout CF Fund, Inc.; Sprout Financial, LLC; Sprout IRA, LLC; Sprout Investment Partners, LLC; Sprout Residential Fund, LLC; Edward Stewart; Superstar LLC; and Zulu Marketing's (collectively, the Sprout Defendants) alternative motions to dismiss, to transfer, or to stay proceedings and compel arbitration [ECF 40]; and Plaintiffs Kelvin Graddy; Kavelle Fields; 4K Coin, LLC; KVG Investments LLC; and the KD9 Group, LLC's motion for oral argument [ECF 45].

The Court has carefully considered the parties' briefing and finds that oral argument is unnecessary. The Court **DENIES** Plaintiffs' motion for oral argument; **GRANTS** Defendants' motions to transfer; and **DENIES WITHOUT PREJUDICE** Defendants' remaining motions. This matter will be transferred to the United States District Court for the District of Utah (Central Division).

## I.   BACKGROUND

In early 2019, Plaintiffs Graddy and Fields attended multiple workshops, hosted by ProSource, to learn about investing in tax liens.[1] ProSource claimed to have expertise on tax liens and promised to teach attendees how to earn active and passive income through "flipping" tax liens on real estate.[2] Over the course of three months, Graddy and Fields, independently and as business partners, allegedly paid over $60,000 for different training packages from ProSource.[3]

In addition, Graddy paid Sprout IRA, LLC nearly $1,000 to create and register KVG Investments, LLC as a self-directed IRA retirement account, which he used to purchase tax liens,[4] and 4K Coin LLC, an entity formed by Graddy and

---

[1]   ECF 1, ¶¶ 35, 40–44, 58–62.

[2]   *Id.* ¶ 32.

[3]   *Id.* ¶¶ 35, 45, 65.

[4]   *Id.* ¶ 37.

Fields, purchased tax liens from REI that were advertised at one of the workshops as "turn key" properties.[5] Plaintiffs claim that Defendants encouraged them to incur debt and guaranteed that they would make back at least 100% of their investment by following ProSource's training.[6]

Plaintiffs, allegedly relying on ProSource's training and Defendants' guarantees, purchased multiple tax liens, only to learn that it was more difficult, time consuming, and expensive to "flip" tax liens than promised.[7] Plaintiffs claim that Defendants, acting in concert, created this workshop scheme to defraud customers by falsely promising quick returns, offering ancillary services and products, and encouraging them to incur debt that they would be unable to pay.[8]

Plaintiffs refer to five different contracts in the Complaint, which they allege to be part of the scheme. First, Graddy entered into an agreement with ProSource when he purchased a three-day workshop on January 29, 2019 (the Purchase

---

[5] *Id.* ¶¶ 66–67.

[6] *Id.* ¶¶ 42–45.

[7] *Id.* ¶¶ 69–81.

[8] *Id.* ¶ 154.

Order).[9] The Purchase Order contains a dispute resolution provision which states, in relevant part:

> You and the Company hereby agree that all disputes, controversies or claims that arise between you concerning any aspect of this Purchase Order or the relationship between you, shall be decided exclusively in binding arbitration in a reasonably convenient location . . . provided, however, that before resorting to arbitration, the parties agree to endeavor first to settle the dispute by mediation administered by the AAA.[10]

Second, on the same day, Graddy signed an agreement with Sprout IRA, LLC to assist in the formation of KVG Investments LLC (the IRA Agreement).[11] The IRA Agreement provides, in relevant part:

> This Agreement shall be governed and construed according to the laws of the state of Utah. Any suit or action relating to this Agreement shall be instituted and commenced exclusively in Utah County, state of Utah

---

[9]  *Id.* ¶ 35; ECF 39-1. Defendants filed full copies of the Purchase Order and the Advanced Enrollment Form along with their motions because Plaintiffs failed to attach complete copies to the Complaint. ECF 39-1, ECF 39-2, and ECF 40-1. The copies filed by Plaintiffs omitted the pages containing the arbitration provisions. ECF 1, at 69, 84. Though the omissions are concerning, the Court will not presume deceitful intent. Plaintiffs do not dispute the authenticity of the copies filed by Defendants, and so the Court will refer to the contracts filed by Defendants for purposes of the motions to transfer.

[10]  ECF 39-1, at 3.

[11]  ECF 1, ¶¶ 36–37.

and the Parties submit themselves to the jurisdiction of the State of Utah.[12]

Third, on February 10, 2019, after attending a three-day workshop, Graddy and Fields entered into an agreement with ProSource to enroll in the "Diamond Executive" training program (the Advanced Enrollment Form). The Advanced Enrollment Form provides, in relevant part:

> You and the Company hereby agree that all disputes, controversies, or claims that arise between you concerning any aspect of this Purchase Order or the relationship between you shall be decided exclusively in binding arbitration in Nevada or Clark County, State of Nevada . . . provided, however, that before resorting to arbitration, the parties agree to endeavor first to settle the dispute by mediation in Nevada or Clark County, State of Nevada, administered by the AAA.[13]

The Advanced Enrollment Form also provides that it "shall be the whole agreement between ProSource Tax Liens and the Client."[14]

Fourth, on March 15, 2019, Graddy and Fields entered into a purchase agreement with ProSource for an additional training program (the Enrollment Agreement). The Enrollment Agreement provides, in relevant part:

> In the event of a claim or dispute, you will first negotiate with us in good faith. If a resolution can-not [sic] be

---

[12] *Id.* at 76.

[13] ECF 39-2, at 3.

[14] *Id.*

>achieved, you agree that any court proceedings will take place in Utah County, State of Utah and you agree to jurisdiction of that State. This Agreement is governed by the laws of the State of Utah without regard to principles of conflicts of law.[15]

Finally, on March 29, 2019, 4K Coin LLC entered into a Tax Lien Assignment Agreement with REI (the 4K TLAA). The 4K TLAA provides, in relevant part:

>In the event of a dispute, the Parties submit to the jurisdiction of the State of Utah, waiving any jurisdiction in the State in which the property subject to the Tax Liens is located, and the venue of any proceedings shall be Utah County, State of Utah. The parties agree that Utah law shall govern this Agreement without regard for the principle of conflicts of law.[16]

ProSource and REI note that KVG Investments, LLC entered into a virtually identical contract, with an identical forum selection clause, with REI for purchasing tax liens, and attached this contract to their motion (the KVG TLAA).[17] Plaintiffs did not refer to this contract in the Complaint but do not dispute the authenticity of the contract.[18] The Court will, therefore, consider the forum selection provisions in both the 4K TLAA and the KVG TLAA.

---

[15]  ECF 1, at 105.

[16]  *Id.* at 108.

[17]  ECF 39, at 6; ECF 39-3.

[18]  ECF 41, at 7.

Plaintiffs filed suit on February 12, 2021, naming eighteen entities and individuals as Defendants.[19] Plaintiffs allege that each Defendant participated in the scheme but fail to meaningfully distinguish among them. Defendants ProSource and REI move to transfer the case to Utah or, in the alternative, to stay and compel arbitration in Nevada.[20] The Sprout Defendants move to dismiss for lack of personal jurisdiction and failure to state a claim, to dismiss or transfer for improper venue, or to stay or dismiss and compel arbitration.[21] Plaintiffs oppose both motions, arguing that this is an exceptional case that warrants disregarding the forum selection provisions;[22] that arbitration cannot be compelled because the mandatory mediation condition precedent was not met;[23] that the Court has personal jurisdiction over all Defendants;[24] and that Plaintiffs have stated a claim for relief.[25] Only the Sprout Defendants filed a reply in support of their motion.[26]

---

[19] *See generally* ECF 1. Plaintiffs voluntarily dismissed their claims against Defendant Seed Consulting, LLC. ECF 44.

[20] ECF 39.

[21] ECF 40.

[22] ECF 41, at 8–13.

[23] *Id.* at 13–19.

[24] ECF 42, at 4–14.

[25] *Id.* at 14–17.

[26] ECF 43.

## II. DISCUSSION

Defendants present multiple threshold issues for the Court's consideration. In this situation, a federal court "has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). A district court may, therefore, "bypass[ ] questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant," and, for example, decide "that the merits should be adjudicated elsewhere." *Id.* at 432 (district court was not required to establish jurisdiction before dismissing on *forum non conveniens* grounds). "The underlying principle is that 'jurisdiction is vital only if the court proposes to issue a judgment on the merits.'" *A.W. v. Tuscaloosa City Sch. Bd. of Educ.*, 744 F. App'x 668, 671 (11th Cir. 2018) (quoting *Sinochem Int'l Co.*, 549 U.S. at 431).

Considering the multiple forum selection clauses and dispute resolution provisions, it is abundantly clear that the merits of this case should be adjudicated elsewhere. Given Defendants' preference that the Court transfer this case rather

than stay proceedings and compel arbitration,[27] the Court begins and ends its analysis with Defendants' motions to transfer.

### A.     The Forum Selection Clauses Are Valid.

Graddy, Fields, 4K Coin LLC, and KVG Investments, LLC each signed a contract with one or more Defendants containing forum selection clauses.[28] The IRA Agreement between Graddy and Sprout IRA, LLC provides that "[a]ny suit or action relating to this agreement shall be instituted and commenced exclusively in Utah County, State of Utah."[29] The Enrollment Agreement between Graddy, Fields, and ProSource provides that "any court proceeding will take place in Utah County, Utah."[30] Finally, the 4K TLAA and the KVG TLAA provide that "[i]n the event of a dispute . . . the venue of any proceedings shall be Utah County, State of Utah."[31] The Court interprets from the words "shall" and "will" that these forum

---

[27] ProSource and REI's motion is styled as a motion to transfer or, *in the alternative*, a motion to compel arbitration and stay proceedings. ECF 39. The Sprout Defendants' motion requests dismissal or transfer or *alternatively* to compel arbitration. ECF 40.

[28] The only Plaintiff that did not sign a contract containing a forum selection clause is KD9 Group, LLC, but it is unclear from the Complaint what claims this Plaintiff is bringing and its relationship to this litigation.

[29] ECF 1, at 76.

[30] *Id.* at 105.

[31] *Id.* at 108; ECF 39-3.

selection clauses are mandatory. *See Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (recognizing that the use of the term "shall" in a forum selection clause reflects a requirement).

The Court applies federal law in determining whether to enforce a forum selection clause. *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009). And "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013).

Plaintiffs do not dispute the validity of the forum selection clauses. Though they reference the unremarkable principle that contract validity is a matter of law for the Court to decide,[32] they do not offer any reason for the Court to find that the clauses are invalid as a matter of law. Nor do Plaintiffs argue that their claims are outside the scope of the forum selection clauses. Rather, Plaintiffs argue that it would be unfair to transfer this case because the clauses are inconsistent;[33]

---

[32] ECF 41, at 6–7.

[33] *Id.* at 7–10.

Defendants failed to negotiate in good faith pursuant to the Enrollment Agreement;[34] and that public policy favors keeping the case in this district.[35]

### B. The Forum Selection Clauses Are Consistent.

Plaintiffs first argue that the clauses are inconsistent and, therefore, the Court should decline to enforce them.[36] Indeed, district courts have declined to enforce multiple, conflicting forum selection clauses "because of the waste of judicial and party resources" involved. *Fortune-Johnson, Inc. v. Master Woodcraft Cabinetry, LLC*, No. 1:15-CV-4123-SCJ, 2016 WL 3128536, at *3 (N.D. Ga. Feb. 3, 2016). The forum selection clauses at issue here are consistent, however, because they all provide that Utah County, Utah is the proper venue.[37]

Plaintiffs argue that the Enrollment Agreement is inconsistent with the other contracts because it requires that the parties negotiate in good faith before initiating a court proceeding,[38] but requiring good faith negotiation prior to initiating legal action does not conflict with a requirement that any such legal action take place in Utah. The Enrollment Agreement's forum selection clause is

---

[34] *Id.* at 7–9.

[35] *Id.* at 10–12.

[36] *Id.* at 9.

[37] ECF 1, at 76, 105, 108; ECF 39-3.

[38] ECF 1, at 105.

also consistent with the various arbitration agreements. The arbitration agreement between Graddy, Fields, and ProSource requires that arbitration take place in Nevada. The forum selection clause in the Enrollment Agreement between Graddy, Fields, and ProSource provides "that ***any court proceeding*** will take place in Utah County, State of Utah."[39] "[T]here is nothing inconsistent between [an] arbitration obligation and [a] forum selection clause. Both can be given effect [because arbitration awards] may only be enforced by subsequent judicial action. Thus, even if arbitration is completed, the forum selection clause would appear to dictate the location of any action to enforce the award." *Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987), *abrogated on other grounds by Gulfstream Aerospace Corp v. Mavacamas Corp.*, 485 U.S. 271, 287 (1988)). Finding that an arbitration provision and a forum selection clause are not mutually exclusive "is the consensus approach across jurisdictions." *Bush v. Nationwide Mut. Ins. Co.*, No. 4:20-CV-219, 2021 WL 3711183, at *4 (S.D. Ga. Aug. 20, 2021) (collecting cases).

Nor does the parties' alleged failure to engage in a good faith negotiation prior to instituting a legal action prevent the Court from enforcing the forum

---

[39]   *Id.* (emphasis added).

selection clauses. First, as the Sprout Defendants noted, there is evidence in the record, by virtue of the Verified Complaint, that the parties negotiated in good faith prior to Plaintiffs filing suit.[40] More importantly, however, the good faith negotiation requirement in the Enrollment Agreement is, at most, a condition precedent to filing suit, not to the action being adjudicated in Utah. The provision states that, "in the event of a claim or dispute," Graddy and Fields must first negotiate in good faith and, if parties cannot reach a resolution, "any court proceedings will take place in Utah."[41] Reading this provision, as Plaintiffs do, to allow venue elsewhere if the parties *do not* negotiate in good faith would turn this contractual obligation on its head. The Court declines to do so.

### C. The Forum Selection Clauses Are Enforceable.

"Forum selection clauses are properly enforced through motions to transfer venue under 28 U.S.C. § 1404(a) when they point to federal districts and through the doctrine of *forum non conveniens* when they point to state or foreign forums." *Se. Power Grp., Inc. v. Vision 33, Inc.*, 855 F. App'x 531, 533 n.5 (11th Cir. May 6, 2021) (citing *Atl. Marine Const. Co.*, 571 U.S. at 59–60). ProSource and REI moved for transfer pursuant to § 1404(a) and, though the Sprout Defendants primarily

---

40    ECF 43, at 10–11; ECF 1, at 222–34.

41    ECF 1, at 105.

seek dismissal, the Court finds that transfer is the more appropriate vehicle because the forum selection clauses "point to a particular federal district," the District of Utah (Central Division), which encompasses Utah County. *Atl. Marine Const. Co.*, 571 U.S. at 59. *Compare Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 703 (11th Cir. 2018) (dismissal on *forum non conveniens* grounds, rather than transfer pursuant to § 1404(a), was appropriate where forum selection clause did not point to a particular federal district and enforcing party did not seek transfer).

Typically, "a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co.*, 571 U.S. at 62. In the Eleventh Circuit, specifically, courts consider nine private and public interest factors in evaluating a motion to transfer under § 1404(a). *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). However, "[t]he presence of a valid forum selection clause" changes the § 1404(a) analysis in three important ways. *Atl. Marine Const.*, 571 U.S. at 63.

"First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63–64. Second, the Court does not consider "the parties' private interests." *Id.* at

64. This means that the Court does not give any weight to any apparent inconveniences to the parties to litigate in the selected forum. *Id.* "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* Accordingly, on a § 1404(a) motion to transfer based on a valid forum selection clause, the Court is limited to considering public interest factors. *Id.* "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

Plaintiffs argue this is an unusual case and that public policy demands that the case remain in this district because the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.*, expresses a strong state interest in protecting Georgia consumers from unfair or deceptive trade practices; because Plaintiffs reside in Georgia; and because the fraudulent scheme largely took place in Georgia.[42] Because Plaintiffs contractually agreed to Utah as the forum, however, the Court will not consider the inconvenience to them to litigate in Utah. *Id.* ("When parties

---

[42] ECF 41, at 11–12.

agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.").

That the alleged scheme took place in Georgia and that Georgia has an interest in protecting its consumers are not exceptional factors that warrant disregarding the valid forum selection clauses. Plaintiffs have not suggested that the public interest in protecting consumers would be lost by transferring this case to the District of Utah, that Utah does not have an independent interest in protecting consumers from unfair practices, or that the District of Utah could not apply Georgia's deceptive trade practices statute where applicable. The Court will not deprive Plaintiffs of their day in Court by transferring to Utah, and the relevant public interest factors do not amount to the "extraordinary circumstances" needed to overcome valid forum selection clauses.

Given the interwoven nature of Plaintiffs' claims against all Defendants, the entire case will be transferred to the District of Utah, Central Division. The Court declines to reach Defendants' alternative motions to compel arbitration, for dismissal for lack of personal jurisdiction, and for dismissal for failure to state a claim. In consideration of its colleagues in the District of Utah, and to not burden

their dockets with these long-pending motions, the Court denies these alternative motions without prejudice.

## III.   CONCLUSION

Plaintiffs' motion for oral argument [ECF 45] is **DENIED**. ProSource and REI's motion to transfer or, in the alternative, to stay proceedings and compel arbitration [ECF 39] is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE**. The Court grants the motion to transfer and denies without prejudice the motion to stay and compel arbitration. The Sprout Defendants' motion to dismiss for lack of personal jurisdiction, to dismiss for failure to state a claim, to dismiss or transfer for improper venue or, in the alternative, to dismiss or stay proceedings and compel arbitration [ECF 40] is **GRANTED IN PART** and **DENIED IN PART WITHOUT PREJUDICE.** The Court grants the motion to transfer and denies without prejudice the remaining motions. Defendants may renew the denied motions, if they so choose, after transfer.

The Clerk is **DIRECTED** to transfer this case to the District of Utah (Central Division).

**SO ORDERED** this 28th day of March, 2022.

Steven D. Grimberg
United States District Court Judge